IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW H. WARREN,

                    Plaintiff,                    Civil Action No.

v.

RON DESANTIS, individually and in his official
capacity as Governor of the State of Florida,

                    Defendant.

_____

# COMPLAINT

Plaintiff Andrew Warren ("Plaintiff" or "Warren") files this Complaint for Injunctive and Declaratory Relief against Defendant Ron DeSantis, individually and in his official capacity as the Governor of Florida ("Defendant" or "DeSantis"). Plaintiff alleges the following:

## NATURE OF THE CASE

1.      The First Amendment to the United States Constitution requires that elected officials "be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966).

2.      Reaffirming that truth, the U.S. Supreme Court recently explained that the First Amendment "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston*

*Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259, 212 L. Ed. 2d 303 (2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)).

3.    The Florida Constitution creates the office of State Attorney to which Warren has been twice elected and from which Warren has been recently suspended by DeSantis.

4.    The State Attorney, with limited exceptions, "shall be the prosecuting officer of all trial courts in [his or her circuit]." Fla. Const. art. V, § 17.

5.    The Florida Supreme Court has made clear that the State Attorney is a constitutional officer who, as an elected official, "is responsible to the electorate of [the] circuit, this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused." *Austin v. State ex rel. Christian*, 310 So. 2d 289, 293 (Fla. 1975).

6.    And while the Florida Constitution sets forth limited, enumerated circumstances under which the Governor may suspend from office certain state officers including elected State Attorneys, "this removal power applies only in extraordinary circumstances." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1307 (11th Cir. 2005).

7.    Those "extraordinary circumstances" are spelled out in the Florida Constitution, and "it is the exclusive province of the judiciary to interpret terms in a constitution and to define those terms." *In re Senate Joint Resol. of Legis. Apportionment 1176*, 83 So. 3d 597, 631–32 (Fla. 2012); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

8.     Warren brings this lawsuit to confirm that the First Amendment still applies even though DeSantis is the Governor of Florida and that the Constitution of the State of Florida means what the courts say it means, not whatever DeSantis needs it to mean to silence his critics, promote his loyalists, and subvert the will of the voters.

## JURISDICTION AND VENUE

9.     Plaintiff brings Claim I below under 42 U.S.C. §§ 1983 and 1988, and *Ex parte Young*, 209 U.S. 123 (1908), to redress the deprivation under the color of state law of rights secured by the U.S. Constitution.

10.     This Court has jurisdiction to hear Claim I pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1357.

11.     Plaintiff also brings Claim II below under Florida law for a writ of quo warranto.

12.     This Court has jurisdiction to hear Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a) because it arises out of the same occurrence and common nucleus of operative facts as Plaintiff's claim under federal law and will involve the same or similar evidence.

13.     This Court has jurisdiction over Defendant, as he is sued individually and in his official capacity as an elected official in Florida. Further, Defendant works or resides in the State of Florida.

14.     Venue in this district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

15.    This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Further, this Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure.

## PARTIES

16.    Plaintiff Andrew Warren is the elected State Attorney for the 13th Judicial Circuit of the State of Florida. State Attorneys are "the prosecuting officer[s] of all trial courts in th[eir] circuit and shall perform other duties prescribed by general law." Fla. Const. art. V, § 17. Warren is not subject to impeachment. *Id.* art. III, § 17.

17.    Defendant Ron DeSantis is the Governor of Florida and is sued individually and in his official capacity. Article IV of the Florida Constitution provides that the "supreme executive power shall be vested in a governor." *Id.* art. IV, § 1(a). Further, the Florida Constitution provides that "[b]y executive order stating the grounds and filed with the custodian of state records, the governor may suspend from office any state officer not subject to impeachment . . . for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension." *Id.* § 7(a). The Florida Constitution further provides that "[t]he suspended officer may at any time before removal be reinstated by the governor." *Id.*

18.    By Executive Order signed on August 4, 2022, DeSantis suspended Warren from office. *See* State of Florida, Office of the Governor, *Executive Order*

*Number 22-176 (Executive Order of Suspension)* (Aug. 4, 2022), attached as Ex. 1 (the "Order" or "EO").

19.    Warren has not been removed from office. *See* Fla. Const. art. IV, § 7(b).

## STATEMENT OF FACTS

### Warren is an Elected Constitutional Officer Who Is Obligated by Law to Exercise Independence and Discretion

20.    Warren is a native Floridian, husband, father, and career prosecutor. After growing up in Gainesville, Warren studied law at Columbia Law School and was admitted to the Florida Bar in 2003.

21.    For eight years Warren was a prosecutor for the U.S. Department of Justice. As a federal prosecutor he prosecuted matters including street and violent crimes in Washington, D.C., as well as complex fraud cases across the country. During his tenure with the Justice Department, Warren earned multiple accolades and awards, including the 2013 Attorney General Award for Trial Litigation. Warren also served as an instructor at the Justice Department's national training center.

22.    In November 2016, Warren was elected State Attorney for Florida's 13th Judicial Circuit. He took his oath of office and began service as State Attorney on January 3, 2017.

23.    In 2020, Warren was reelected to his office, with 369,129 people choosing him to continue to lead the office of approximately 300 prosecutors, investigators, and other professional staff.

24.    Warren was elected and re-elected after making and keeping numerous promises to voters about how he would perform the duties of the office he sought and to which he was twice elected.

25.    For example, Warren has consistently promised to focus on targeting violent criminals, serious fraudsters, and serial recidivists, while utilizing smart and innovative reforms, including mental health courts and civil citations for low-level offenders, to hold others accountable and save taxpayer resources.

26.    Warren has also been clear with voters that he will not blindly prosecute to obtain convictions wherever possible and instead exercises his discretion and pursues common-sense solutions that further the ultimate goal and job of every prosecutor: seeking justice.

27.    The State Attorney serves a "unique role" "both as quasi-judicial and quasi-executive." *Valdes v. State*, 728 So. 2d 736, 739 (Fla. 1999). His or her discretion "in deciding whether and how to prosecute" is "absolute." *McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles*, 438 F. App'x 754, 757 (11th Cir. 2011) (per curiam) (quoting *State v. Cain*, 381 So. 2d 1361, 1367 (Fla. 1980), *superseded by statute on other grounds as stated in Banks v. State*, 520 So. 2d 43, 46 (Fla. 1st DCA 1987)).

28.    The Florida Constitution requires, among other things, that the State Attorney "shall be and have been a member of the bar of Florida for the preceding five years." Fla. Const. art. V, § 17.

29.    Among other obligations, as a member of the Bar and a prosecutor, the State Attorney must "reflect a scrupulous adherence to the highest standards of

professional conduct," including "the responsibility of a minister of justice and not simply that of an advocate." *The Fla. Bar v. Cox*, 794 So. 2d 1278, 1285, 1286 (Fla. 2001) (citations omitted).

30.     The State Attorney is also "required to exercise sound discretion and independent judgment in the performance of the prosecution function." ABA Criminal Justice Standards for the Prosecution Function 3-1.2(a); Fla. Bar R. 4-3.8, cmt. (noting Florida's adoption of the American Bar Association Standards of Criminal Justice Relating to Prosecution Function after "careful deliberation by lawyers experienced in criminal prosecution and defense").

31.     Warren has fulfilled these and all the obligations of his office at all times.

## While In Office Warren Has Spoken Out on Controversial Issues Affecting His Office and the Criminal Justice System

32.     While State Attorney, Warren has also stated his positions and values on matters of public importance impacting the criminal justice system.

33.     In June 2021, for example, Warren co-signed a Joint Statement with other elected prosecutors that, in part, called "on policymakers to . . . leave healthcare decisions to patients, families, and medical providers." [*See* Fair and Just Prosecution, *Joint Statement from Elected Prosecutors and Law Enforcement Leaders Condemning the Criminalization of Transgender People and Gender-Affirming Healthcare* (June 2021), attached to EO as "Exhibit A" (hereafter, "Gender Statement")] In this Joint Statement, the signatories went on to "pledge to

use [their] discretion and not promote the criminalization of gender-affirming healthcare or transgender people." [*Id.*]

34.    More recently, in the wake of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), Warren co-signed a similar Joint Statement stating the signatories' opinion that, among other things, "[c]riminalizing and prosecuting individuals who . . . provide abortion care makes a mockery of justice; prosecutors should not be part of that." [*See* Fair and Just Prosecution, *Joint Statement from Elected Prosecutors* (June 2022) (updated July 25, 2022), attached to EO as "Exhibit B" (hereafter, "Abortion Statement") (together with the Gender Statement, the "Joint Statements")]

35.    This Abortion Statement also stated that signatories would "exercise [their] well-settled discretion and refrain from prosecuting those who seek, provide or support abortions." [*Id.*] And it stated that "legislatures may decide to criminalize personal healthcare decisions, but *we* remain obligated to prosecute only those cases that serve the interests of justice and the people." [*Id.*]

### While In Office Warren Has Specifically Guided the Exercise of Discretion by His Assistant State Attorneys Through Certain Policies

36.    In carrying out his constitutionally and ethically required duties, Warren has maintained numerous policies providing guidance and executive direction to the approximately 130 Assistant State Attorneys ("ASAs") under his command.

37.    Among other things, some such policies speak generally to the importance of exercising discretion in every case and every stage of every case. [*See*

Memorandum from Andrew H. Warren, State Attorney 13th Judicial Circuit, to Assistant State Attorneys, regarding *Prosecutorial Discretion and the Mission of Criminal Justice*, at 2 (Dec. 14, 2021) ("In every case, ASAs must exercise discretion based on the facts of that case—the nature and circumstances of the offense, the defendant's criminal history (or lack thereof), victim input, and other factors. ASAs must exercise that discretion at every stage . . . ."), attached as Ex. 2]

38.     Other policies are more specific, providing principles to guide prosecutorial discretion in particular kinds of cases.

39.     Two such policies guide the discretion of ASAs by establishing a "[p]resumption of [n]on-[p]rosecution" "for certain criminal violations, including trespassing at a business location" and "disorderly conduct" (the "March 2021 Policy") and in cases "where the initial encounter between law enforcement and the defendant results from a non-criminal violation in connection with riding a bicycle or a pedestrian violation" (the "Bike Stop Policy") (collectively, the "Presumptive Non-Prosecution Policies"). [*See* EO at 3–4]

40.     The Presumptive Non-Prosecution Policies speak for themselves and are not absolute. By their terms, both policies state presumptions, but in all cases covered by these policies (indeed in all cases within the State Attorney's Office) ASAs are bound by ethics and by policy to apply their judgment and discretion to the individual case before them. [Presumption of Non-Prosecution Policy (Mar. 9, 2021) ("March 2021 Policy"), attached as Ex. 3; Policy Regarding Prosecution of Cases Based on Pedestrian and Bicycle Violations ("Bike Stop Policy"), attached as Ex. 4]

41.     The Bike Stop Policy explains, among other things, that it followed meetings with community members "to discuss specific prosecutorial issues, analyze criminal justice data, and examine actual cases, resulting in a series of policy proposals for consideration." [Ex. 4 at 1] The Bike Stop Policy explains that for "any case referred to our office arising out of a stop exclusively for a bicycle or pedestrian violation, there is a presumption that our office will not file charges against the defendant." [*Id.* at 2]

42.     The Bike Stop Policy also is explicit that the presumption is just that— a presumption. It is not a universal or "blanket" policy.

43.     Specifically, it instructs ASAs that if "based on the facts and circumstances of the case, the public safety needs of the community outweigh the presumption to not file the case, the charge may be filed with the approval of a supervisor." [*Id.*]

44.     The March 2021 Policy is functionally identical. It lists certain offenses including "Expired drivers license," "Violation of nonresident restriction," "Trespass at [a] business location," and "Disorderly intoxication" as "carry[ing] a presumption of no file." [Ex. 3 at 1]

45.     It also says that the "no file" "presumption may be overcome by significant public safety concerns, such as pending felony charges." [*Id.*]

46.     Nowhere in either of the Presumptive Non-Prosecution Policies is there a blanket, no discretion rule. Both explicitly acknowledge that exceptions to the presumptions exist.

## Warren is a Critic and Political Rival of DeSantis

47.    DeSantis has spoken out frequently opposing Warren and Warren's views, including specifically on the subjects of criminal justice administration, abortion, and the rights of transgender people.

48.    For instance, in 2019 Florida voters passed Amendment 4, amending the Florida Constitution to restore voting rights to numerous ex-offenders. Warren openly and strongly supported Amendment 4 and the policy choices behind it.

49.    On the other hand, DeSantis vigorously opposed Amendment 4 and, even after it was passed, signed controversial laws limiting the reach of Amendment 4 despite it having garnered 64.5% of the vote.

50.    In 2020, Warren appeared with law enforcement supporting the arrest and prosecution of a church pastor who held packed services amidst the spreading pandemic.

51.    Shortly after the arrest, DeSantis intervened, criticizing Warren and signing an executive order retroactively authorizing the services.

52.    Warren called the DeSantis move undermining law enforcement "weak" and "spineless."

53.    More recently, in April 2021, DeSantis held a media ceremony trumpeting his signature of "HB 1," also known as the "anti-rioting" bill. DeSantis considered HB 1 a "top priority."

54.    Meanwhile, Warren was vocal in opposition to HB 1, criticizing it as, among other things, a solution in search of a problem and as "undermin[ing] 1st Am freedoms of speech and assembly." Andrew Warren (@AndrewWarrenFL), Twitter

(Mar.          10,          2021,          7:27          AM)

https://twitter.com/AndrewWarrenFL/status/1369656091131412482?s=20&t=G_E
hyRohc6vtUCFYSLIUNQ.

55.     More recently, Warren and DeSantis have clashed publicly over their conflicting views on privacy and abortion.

56.     Warren is an outspoken supporter of women's privacy and right to choose; DeSantis is opposed to abortion in almost all instances.

### DeSantis Suspends Warren from Office for Speaking Out on Issues and for Maintaining Policies that DeSantis Opposes

57.     Of course, DeSantis is free to express his views and his disagreements with Warren as often as he likes. Indeed, the Federal Constitution ensures that he is.

58.     But on Thursday August 4, 2022, DeSantis went too far. Employing the powers of his esteemed office as a weapon to suppress criticism and promote cronyism, DeSantis promulgated Executive Order 22-176 suspending Warren from his duly elected office.

59.     After being given an incomplete copy of the Order, Warren was physically escorted from his office by an armed deputy.

60.     The Order claims that Warren is "incompetent" to hold his office and has demonstrated "neglect of duty" while in office.

61.     Both in his Order and in the rally-like media event he conducted to announce it, DeSantis said over and again that he was suspending Warren for what he said in the Joint Statements that he co-signed.

62.    The evening before DeSantis announced Warren's suspension, DeSantis's official spokesperson had touted that a "MAJOR announcement" was coming and bragged that it would cause the "liberal media" to "meltdown":



Christina Pushaw (@ChristinaPushaw), Twitter (Aug. 3, 2022, 6:32 PM) https://twitter.com/ChristinaPushaw/status/1555003744781230080?s=20&t=obr8H qKrqjAzd3aWng-W4A.

63.    Standing in the Hillsborough County Sheriff's Office, flanked by a phalanx of armed, uniformed law enforcement officers, and to the cheers of a room of supporters, DeSantis made clear that he was suspending Warren because of the statements he made in the Gender Statement and in the Abortion Statement signed by Warren "after *Dobbs*." *See* YouTube, *Gov. DeSantis' Reasoning for suspending State Attorney Andrew Warren*, at 44:30 (Aug. 4, 2022), https://youtu.be/2oZ5Xy55OHw?t=27.

64.     In his media blitz, DeSantis also, for instance, told Fox News's Tucker Carlson that he was suspending Warren because "he actually signed letters saying he wouldn't enforce laws against transgender surgeries . . . laws protecting the right to life." *See* Ron DeSantis (@GovRonDeSantis), Twitter, at 0:54 (Aug. 5, 2022, 7:48 AM) https://twitter.com/GovRonDeSantis/status/1555566375661408256.

65.     Florida has no law regarding "transgender surgeries," whatever that means.

66.     And at no time while in office has Warren ever been referred a case involving a request to prosecute abortion-related crimes.

67.     As a result of Warren's decision to continue to speak out on issues his constituents elected him to pursue, DeSantis suspended Warren from his elected office and has deprived Warren of the ability to perform his duties, of his income, and of the benefits associated with the job.

68.     DeSantis's conduct—which has deprived Warren of his job, his income, and the prestigious title he was elected to hold—"would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

69.     DeSantis's Executive Order openly admits that he suspended Warren because Warren "signed" the Joint Statements. [*See* EO at 3, 6] Indeed, DeSantis even attaches copies of the Joint Statements to his Order and quotes specific opinions and views expressed in the Joint Statements with which DeSantis disagrees. [*See id.*]

### DeSantis Immediately Appointed a Long-time Ally to Warren's Elected Post

70.    In the same media event at which he announced Warren's suspension, DeSantis appointed Susan Lopez to be the new State Attorney for the 13th Judicial District.

71.    According to DeSantis's official spokesperson, Warren's "'suspension' . . . is not like paid administrative leave or whatever. Andrew Warren is no longer the Hillsborough state attorney. We have a new Hillsborough state attorney sworn in today to replace him: Susan Lopez."



Christina  Pushaw  (@ChristinaPushaw),  Twitter  (Aug.  4,  2022,  5:40  PM) https://twitter.com/ChristinaPushaw/status/1555353085207347203.

72.    Ms. Lopez has already begun making changes to the office that Warren has been elected to hold. She "plans to roll back" the policies enacted by Warren and opposed  by  DeSantis.  *See*  Gloria  Gomez,  *'Back  to  Basics':  Newly-appointed*

*Hillsborough State Attorney Sets New Tone with Policy Rollbacks Coming Soon*, Fox News (Aug. 9, 2022, 4:58 PM), https://www.fox13news.com/news/back-to-basics-newly-appointed-hillsborough-state-attorney-sets-new-tone-with-policy-rollbacks-coming-soon.

73.     She has added her name as "The State Attorney" to the office's website without any mention of the supposedly temporary nature of her power. Office of the State Attorney 13th Judicial Circuit, https://www.sao13th.com/ (last visited Aug. 15, 2022).

74.     And she has posted a self-promotional video on that website in which she claims "the previous state attorney lost the confidence of law enforcement" and in which she says "thank you to the Governor" for her job. Office of the State Attorney 13th Judicial Circuit, *State Attorney Susan Lopez, 13th Judicial Circuit*, at 1:46, 1:54, YouTube (Aug. 5, 2022), https://youtu.be/s4lBNh13T5Q.

75.     She has also reversed a previous decision by Warren not to pursue the death penalty in a pending case, proclaiming in a media release that "Susan S. Lopez, State Attorney, for the 13th Judicial Circuit in and for Hillsborough County, filed notice that her office will seek the death penalty for Defendant Mathew Terry." Press Release, Office of the State Attorney 13th Judicial Circuit, *State Attorney Susan S. Lopez Seeking Death Penalty in Brutal Murder Case* (Aug. 8, 2022), https://www.sao13th.com/2022/08/state-attorney-susan-s-lopez-seeks-death-penalty-in-brutal-murder-case/.

76.     After Warren's suspension, the Chief Communications Officer of his office was "told she had to report to Fred Piccolo, a former Communications

Director for the governor," and then "given an ultimatum" to "either resign and get paid through the end of the month or . . . be fired on the spot." *See* Justin Schecker, *Chief Communications Officer for Hillsborough County State Attorney Terminated From Her Job*, News Channel 8 (Aug. 15, 2022), https://www.wfla.com/news/hillsborough-county/chief-communications-officer-for-hillsborough-county-state-attorney-terminated-from-her-job/. She refused and was terminated. *Id.*

## CLAIM I

### Violation of First Amendment

### U.S. Const. Amend. I

### 42 U.S.C. § 1983, *Ex parte Young*, 28 U.S.C. §§ 2201, 2202

77.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs in the claims below as though fully set forth herein.

78.     Under the First Amendment, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

79.     The First Amendment applies to states through the Fourteenth Amendment. *Cooper v. Dillon*, 403 F.3d 1208, 1213 (11th Cir. 2005).

80.     The First Amendment generally "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll.*, 142 S. Ct. at 1259, 212 L. Ed. 2d 303 (quoting *Nieves*, 139 S. Ct. at 1722, 204 L. Ed. 2d 1).

81.   As the governor of the state of Florida, DeSantis is a governmental official constrained by the First Amendment.

82.   Warren is an elected official.

83.   As an elected official, Warren enjoys the "right to speak freely on questions of government policy," *id.* at 1261, 212 L. Ed. 2d 303, and "to enter the field of political controversy," *Wood v. Georgia*, 370 U.S. 375, 394 (1962); *see also Bond*, 385 U.S. at 135–36 ("The manifest function of the First Amendment in a representative government requires that [elected officials] be given the widest latitude to express their views on issues of policy.").

84.   In June 2021, Warren co-signed a Joint Statement with 73 other American chief prosecutors opposing the criminalization of gender-affirming healthcare. A copy of the Gender Statement was attached to DeSantis's Order as "Exhibit A."

85.   In June 2022, Warren co-signed another Joint Statement, again with many other American chief prosecutors, opposing the criminalization of abortion. A copy of this Abortion Statement was attached to DeSantis's Order as "Exhibit B."

86.   Both Joint Statements express Warren's views and opinions on controversial issues that are currently the subject of extensive public debate.

87.   For example, in the Joint Statements, Warren expressed the following views and opinions, among others:

   a.   "Abortion bans will . . . disproportionately harm victims of sexual abuse, rape, incest, human trafficking, and domestic violence." [Abortion Statement]

b. "Enforcing abortion bans runs counter to the obligations and interests we are sworn to uphold [as prosecutors]." [*Id.*]

c. "We are horrified that some states have failed to carve out exceptions for victims of sexual violence and incest in their abortion restrictions; this is unconscionable." [*Id.*]

d. "Criminalizing and prosecuting individuals who seek or provide abortion care makes a mockery of justice; prosecutors should not be part of that." [*Id.*]

e. "Bills that criminalize safe and crucial medical treatments or the mere public existence of trans people do not promote public safety, community trust, or fiscal responsibility. They serve no legitimate purpose." [Gender Statement]

f. "[W]e do not support the use of scarce criminal justice and law enforcement resources on criminalization of doctors who offer medically necessary, safe gender-affirming care to trans youth, parents who safeguard their child's health and wellbeing by seeking out such treatments, or any individuals who use facilities aligned with their gender identity." [*Id.*]

g. "[W]e urge other policymakers to join us in standing up and standing together on this important issue." [*Id.*]

88. Neither Joint Statement mentions any specific Florida law.

89.     Neither Joint Statement mentions Warren (other than by including his name on the signature pages) or any specific case presented to or pending before Warren.

90.     Both Joint Statements explicitly affirm that the signatories will exercise the discretion inherent in the role of prosecutors in pursuing the policies and views expressed therein.

91.     On August 4, 2022, DeSantis issued the Order purporting to suspend Warren from the office he was elected to hold.

92.     DeSantis ordered, among other things, that "Andrew Warren is hereby prohibited from performing any official act, duty, or function of public office; from receiving any pay or allowance; from being entitled to any of the emoluments or privileges of public office during the period of this suspension, which period shall be from the effective date hereof, until a further executive order is issued, or as otherwise provided by law." [EO at 9]

93.     DeSantis also appointed Susan Lopez, effective immediately, "to fill the position of State Attorney for the 13th Judicial Circuit of Florida . . . for the duration of the suspension." [*Id.* at 9–10]

94.     DeSantis's Order explicitly states that DeSantis is suspending Warren because he "signed" the Joint Statements. [*See id.* at 3, 6]

95.     DeSantis's Order criticizes and opposes the viewpoints and opinions Warren expressed in the Joint Statements.

96.     DeSantis's Order does not identify any actual conduct by Warren related to his official duties involving alleged criminal activity for seeking gender-affirming healthcare or abortion.

97.     DeSantis's Order does not identify any other conduct by Warren or other reason sufficient to justify a suspension under Article IV, section 7(a) of the Florida Constitution.

98.     DeSantis has repeatedly and openly expressed his own views and opinions on transgender rights and abortion rights, which conflict with Warren's views on those issues, as expressed in the Joint Statements.

99.     By signing the Joint Statements, which expressed Warren's views and opinions on matters of public concern, Warren engaged in protected speech under the First Amendment. *See, e.g.*, *Bond*, 385 U.S. at 136–37.

100.    Among other obvious and important reasons why elected officials must be free to state their values on controversial questions like abortion or the rights of transgender Floridians, is that such officials "have an obligation to take positions on controversial political questions so that their constitu[]ents can be fully informed by them, and be better able to assess their qualifications for office." *Id.* at 136.

101.    DeSantis took adverse action against Warren when he issued an executive order that barred Warren from "performing any official act, duty, or function of public office; from receiving any pay or allowance; from being entitled to any of the emoluments or privileges of public office." [EO at 9]

102.    Such action "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254.

103.   DeSantis suspended Warren from his elected office because Warren signed the Joint Statements.

104.   DeSantis violated Warren's rights under the First and Fourteenth Amendments by issuing his August 4, 2022 Order suspending Warren in retaliation for exercising his First Amendment rights.

## CLAIM II

### Quo Warranto under Florida State Law

### Fla. Const. art. IV, § 7(a)

### 28 U.S.C. §§ 2201, 2202

105.   Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

106.   "Quo warranto is used 'to determine whether a state officer or agency has improperly *exercised* a power or right derived from the State.'" *Israel v. DeSantis*, 269 So. 3d 491, 494 (Fla. 2019) (quoting *League of Women Voters of Fla. v. Scott*, 232 So. 3d 264, 265 (Fla. 2017)). And because "[t]he Governor is a state officer[,]" quo warranto may be used to confirm whether he exercised his powers unlawfully. *Id.* (citation omitted).

107.   This claim is related to the other claim in this Complaint; both claims arise out of a common nucleus of operative facts—namely the facts and circumstances of and relating to DeSantis's unlawful suspension of Warren.

108.   Article IV, section 7(a) of the Florida Constitution provides that the Governor "may suspend from office any state officer not subject to impeachment . . . for malfeasance, misfeasance, neglect of duty, drunkenness,

incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension."

109.   The Governor also has the power to reinstate a suspended officer "at any time before removal." Fla. Const. art. IV, § 7(a).

110.   By his Order, the Governor has suspended Warren for alleged "incompetence" and "neglect of duty." *Id.*

111.   These terms have plain meanings that the courts have defined and that are not malleable at the whim of DeSantis.

112.   "Neglect of duty" is having "reference to the neglect or failure on the part of a public officer to do and perform some duty or duties laid on him as such by virtue of his office or which is required of him by law." *Israel*, 269 So. 3d at 496 (quoting *State ex rel. Hardie v. Coleman*, 155 So. 129, 132 (Fla. 1934)).

113.   "Incompetency" refers "to any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office." *Id.* (quoting *Hardie*, 155 So. at 133).

114.   "Incompetency" "'has reference to any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office' and 'may arise from gross ignorance of official duties or gross carelessness in the discharge of them . . . [or] from lack of judgment and discretion.'" *Id.* (quoting *Hardie*, 155 So. at 133) (alterations in original).

115.   A difference of opinion is not "incompetency" as defined by the Florida Constitution. Neither is the exercise of ethically and constitutionally required prosecutorial discretion.

116.   The Governor's Order claims that three separate policy statements by Warren demonstrate his "incompetence" and "neglect of duty."

117.   The Order, however, on its face does not set forth allegations of fact reasonably related to either constitutionally enumerated ground of suspension.

118.   As a first basis for suspension, the Order cites to Warren's signature of the Gender Statement, condemning the proposed criminalization of transgender people and gender-affirming healthcare. The Gender Statement nowhere contained a statement that Warren categorically planned not to enforce any specific law. Indeed, Florida has no such law.

119.   Warren's signature on the Gender Statement does not relate to "any physical, moral, or intellectual quality" that Warren is lacking that incapacitates him from performing the duties of his office. *Israel*, 269 So. 3d at 496 (quoting *Hardie*, 155 So. at 133).

120.   Similarly, his signature on this letter does not relate to neglect of duty, or the failure "to do and perform some duty or duties laid on him as such by virtue of his office or which is required of him by law," *id.* (quoting *Hardie*, 155 So. at 133), as none of the clauses in the Order set forth any allegation that Warren has refused to enforce any specific law.

121.   As a second basis for suspension, the Order cites Warren's two policies of presumptive non-prosecution for certain crimes. These Presumptive Non-Prosecution Policies are described in Paragraphs 39 through 46 above.

122.   As the Order concedes, State Attorneys have complete discretion in making the decision to prosecute a particular defendant.

123.  As State Attorney, Warren rightfully exercised his prosecutorial discretion in setting guidelines for his office when charging cases. Those guidelines are presumptive only and require prosecutors to consider each case individually on a case-by-case basis.

124.  Warren's exercise of discretion under the Presumptive Non-Prosecution Policies is consistent with his duties and categorically does not relate to incompetence, or "any physical, moral, or intellectual quality" that Warren is lacking. *Id.* (quoting *Hardie*, 155 So. at 133).

125.  For the same reasons, Warren's exercise of discretion under the Presumptive Non-Prosecution Policies does not relate to a neglect of duty.

126.  As a third and final basis for suspension, the Order sets forth facts relating to Warren's signature on the Abortion Statement, condemning the criminalization of abortion. [*See* EO at 5–7]

127.  Warren's signature on the Abortion Statement also cannot relate to "incompetence," or "any physical, moral, or intellectual quality" that Warren is lacking that "incapacitates" him from performing the duties of his office. *Israel*, 269 So. 3d at 496 (quoting *Hardie*, 155 So. at 133).

128.  No decision on any case ever considered by Warren while in office was impacted by these statements. Statements of opinion on matters of public debate do not relate to incompetence within the meaning of the Florida Constitution.

129.  Further, as DeSantis must and does admit, "state attorneys have complete discretion in making . . . decision[s] to prosecute a particular defendant." [EO at 2] The Joint Statements are explicit in invoking the exercise of discretion as

their foundation. Warren's discretion-based statement condemning the criminalization of abortion is entirely consistent with the obligations of his office to exercise discretion about whether to prosecute a particular defendant and do not relate to any ignorance.

130. The abortion-related allegations in the Order thus also do not relate to neglect of duty. In exercising his discretion in considering which cases to prosecute, Warren is doing what is constitutionally required.

131. The Order's cited justifications for Warren's suspension are facially insufficient under Florida law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment:

A. Declaring that the Order is unconstitutional pursuant to the First and Fourteenth Amendments of the United States Constitution;

B. Declaring that the Order was issued in excess of the powers granted to DeSantis under the Florida Constitution;

C. Ordering DeSantis to rescind the Order on these grounds;

D. Ordering DeSantis to reinstate Warren as State Attorney for Florida's 13th Judicial Circuit;

E. Preliminarily and permanently enjoining DeSantis from retaliating against Warren for the statements and policies identified in the Order;

F. Granting the writ of quo warranto;

G. Awarding Plaintiff his costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

H.    Granting such other and further relief as the Court deems just and proper.

Dated:  August 17, 2022

By: */s/ David B. Singer*
David B. Singer
Florida Bar No. 72823
Matthew T. Newton
Florida Bar No. 111679
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
dsinger@shumaker.com
mnewton@shumaker.com

**AND PERKINS COIE LLP**

Jean-Jacques Cabou (AZ #022835)*
Alexis E. Danneman (AZ #030478)*
Matthew R. Koerner (AZ #035018)*
Margo R. Casselman (AZ #034963)*
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
JCabou@perkinscioe.com
ADanneman@perkinscoie.com
MKoerner@perkinscoie.com
MCasselman@perkinscoie.com
DocketPHX@perkinscoie.com
602.351.8000

**Pro Hac Vice* pending

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION UNDER 28 U.S.C. § 1746

I, Andrew H. Warren, state as follows:

1. I am the elected State Attorney for Florida's 13th Judicial Circuit and the Plaintiff in this case. Florida Governor Ron DeSantis recently issued an Executive Order suspending me from that office.

2. I have read the foregoing Complaint, and I am acquainted with and/or have personal knowledge of the facts stated therein.

3. To the best of my knowledge and recollection, the facts set forth in the foregoing Complaint are true and accurate.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of August 2022.

/s/ _____

Andrew H. Warren

157944172.6