# Exhibit 2



Andrew H. Warren
Office of the State Attorney
13th Judicial Circuit

December 14, 2021

MEMORANDUM

TO: Assistant State Attorneys

FROM: Andrew H. Warren
State Attorney

SUBJECT: **Prosecutorial Discretion and the Mission of Criminal Justice**

This memorandum provides guidance for how Assistant State Attorneys should exercise discretion, and how the appropriate exercise of prosecutorial discretion is critical to furthering the mission of the State Attorney's Office and the criminal justice system.

**Our Mission**

In 2017, we drafted a mission statement to succinctly define our office's collective purpose:

> *Our mission is to build a safer community while promoting justice and fairness for everyone in Hillsborough County. Our office is committed to making our county a safer place to live, work, and raise a family. It is our privilege and honor to serve this community*.

The goals of the criminal justice system can be categorized and summarized as (1) punishing and holding offenders accountable; (2) preventing crime; (3) rehabilitating offenders; and (4) seeking justice for crime victims.[1] The efficient and successful operation of our system requires balancing these objectives. Achieving that balance is extremely difficult, especially when these goals are not perfectly aligned. Filing charges, securing convictions, and imposing appropriate sanctions constitute the traditional method of achieving accountability and punishment, but diversion programs, specialty courts, and restorative justice models have shown that traditional prosecution is not the only method. Specific and general deterrence resulting from traditional prosecution prevents crime, but crime reduction strategies outside of the criminal justice system such as community-based intervention and mentorship programs are generally more effective and less expensive. Also, contact with the criminal justice system, including incarceration, often increases the likelihood of recidivism—a nuance that can undermine the specific deterrence sought through traditional prosecution. Additionally, embracing victims' importance in the process requires valuing their input and balancing that input along with the other goals while also promoting consistency in the handling of similar cases.

---

[1] These goals are sometimes abbreviated as the four "Rs": retribution, recidivism, rehabilitation, and restitution.

Arguably, over the past generation the system became too focused on punishing offenders, to the detriment of the other goals. This punishment-centered approach is often short-sighted. Overlooking strategies to prevent crime, reduce recidivism, and rehabilitate offenders has perpetuated the revolving door nature of our system, which undermines long-term public safety. These long-term goals often require solutions at a macro, systemic level that go beyond a prosecutor's decision in any individual case. Nevertheless, in handling individual cases, prosecutors must focus on both the short-term and long-term goals—addressing any immediate public safety risk that a defendant poses while also evaluating how best to minimize the likelihood of that defendant reoffending.

Former Supreme Court Justice and United States Attorney General Robert H. Jackson said, "The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous." Prosecutors wield tremendous influence within the system through charging decisions, plea negotiations, and sentencing recommendations. Conventional wisdom incorrectly views prosecutors and defense attorneys as having opposing roles in the system with judges as neutral arbiters of the law. However, a prosecutor's duties go beyond merely prosecuting. As our ethical rules dictate, "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."[2] As ministers of justice, prosecutors must exercise their discretion to further all the goals of the system. And as representatives of this office and public servants, Assistant State Attorneys must exercise their discretion to further the mission of this office while efficiently using limited public resources and taxpayer dollars.

**General Principles of Prosecutorial Discretion**

*Exercise Discretion at Every Stage*

There is no simple formula that yields the right prosecutorial outcome. Case-specific review is a hallmark of our criminal justice system. In every case, ASAs must exercise discretion based on the facts of that case—the nature and circumstances of the offense, the defendant's criminal history (or lack thereof), victim input, and other factors. ASAs must exercise that discretion at every stage—from charging through plea negotiation, trial, and sentencing. Additionally, ASAs must continually exercise discretion throughout the pendency of a case beyond those key decision-points. The facts and circumstances may change and consequently warrant re-evaluating a decision that has already been made.

As in any prosecutor's office, there are common practices for handling cases, which ASAs consider to be unwritten "policy." These practices are based on generally applicable approaches but are not absolutes; they are not policy and should not be treated as such. Instead, ASAs should consider the reasons underlying the practice and exercise discretion as to whether the practice should be followed in each individual case.

Supervisors play a pivotal role in guiding ASAs' exercise of discretion. The assigned ASA best knows the facts of each case and should be candid with his/her assessment for decision

---

[2] American Bar Association Model Rule of Professional Conduct 3.8; Florida Rule of Professional Conduct 4-3.8.

involving that case. However, supervisors can provide additional insight and promote consistency with similarly situated cases. Accordingly, the assigned ASA should consult with the appropriate supervisor(s) on all critical decisions. Disagreement between an ASA's recommendation and a supervisor's decision is inevitable, and in the small subset of those disagreements where appropriate, ASAs are encouraged to consult with the Chief Assistant for the Bureau for further evaluation of a particular case and to promote consistency across similarly situated cases.

*Solve the Problem*

In every case, ASAs should exercise their discretion to further the four goals of accountability & punishment, prevention, rehabilitation, and justice for victims. ASAs should view each case as a problem to be solved rather than simply a person to be prosecuted. For certain types of offenses and offenders, especially violent crime and major fraud, the solution is usually straightforward: traditional prosecution resulting in incarceration neutralizes the offender to ensure that s/he does not harm additional innocent victims. For a defendant who is addicted to drugs or suffering from mental illness, treatment may be the best solution. Often the solution is neither readily apparent nor simple; it requires critical evaluation of all the relevant circumstances and a combination of punitive and rehabilitative sanctions.

*Triage*

Different crimes and different criminals represent different threats to public safety. ASAs should view a crime not simply as the violation of a written law but in terms of the harm to the victim and the threat of future harm. This perspective reinforces the aforementioned problem-solving approach. Cases in which the defendant poses a greater threat to public safety are more likely to justify traditional prosecution and more prosecutorial resources. On the other hand, cases in which the defendant poses a minimal threat to public safety are more likely to justify alternative methods of prosecution and fewer prosecutorial resources.

*Charging Requires Discretion*

Charging a person with a crime is a serious and consequential decision. Although our system professes innocent until proven guilty, being charged (without being convicted) can have negative and far-reaching impact on a person's family, employment, and finances. For suspects who have not been arrested for the crime, the charge may result in an arrest, which carries its own consequences. Even for suspects who have already been arrested, the formal filing of charges is consequential. ASAs' expectation in filing a charge is that it will result in a conviction or diversion.

ASAs must exercise discretion in filing charges. Charging is not an academic question of which statutes have been violated but rather a judgment decision based on the law, facts, evidence, and expected outcome that appropriately considers the severity of the offense and the suspect's criminal history. The idea that prosecutors should always charge every offense committed and later determine the "appropriate" outcome through sentencing or sanctions is misguided. This approach can undermine the goals of the system; it ignores the use of pre-file

3

diversion programs and civil enforcement that are commonly used as an alternative to criminal charges; it assumes that all laws on the books are equally enforced[3]; and it disregards the existence of overlapping and duplicative statutes. Laws as written do not—and cannot— contemplate every scenario involving countless combinations of defendants, fact patterns, victims, and likely outcomes. By enacting criminal statutes, the legislature gives prosecutors the tools to serve the public interest of justice, but prosecutors must decide how to wield those tools to advance the goals of the system.

ASAs must follow their ethical obligations in making filing decisions. In addition to considering the factors above, prosecutors should only file criminal charges if: (1) the prosecutor reasonably believes the charges are supported by probable cause; (2) admissible evidence is sufficient to support a conviction beyond a reasonable doubt; and (3) charging is in the interest of justice.[4] This is the minimum requirement for filing *and maintaining* criminal charges. Additionally, the governing ethical rules expressly provide that a prosecutor "is not obliged to file or maintain all criminal charges which the evidence may support" and should consider, among other factors, the extent of harm, the potential for punishment disproportionate to the offense, victim input, efficient use of limited prosecutorial resources, and the adequacy of civil remedies.[5]

*Embracing Diversion and Alternatives to Prosecution*

ASAs must consider and utilize diversion and other alternatives to traditional prosecution. Our office offers a wide variety of diversion programs, including misdemeanor and felony intervention, substance-abuse rehabilitation, and specialty courts such as mental health, drug, and veterans treatment. ASAs need to be familiar with the purposes and eligibility requirements of these programs to be able to identify and refer appropriate cases.

Additionally, ASAs are encouraged to think outside the box in terms of finding innovative ways to further criminal justice goals in a particular case. For example, in cases where the victims have expressed a desire for reconciliation with the defendant, ASAs should consider a restorative justice approach— an approach that emphasizes repairing the harm caused by the criminal behavior more than punishing the offender. This type of approach seeks direct accountability by having the offender accept responsibility and fix the damage caused, while giving the victim a more active role in the process. ASAs should not feel bound by doing what has "always" been done, nor should they be reluctant to explore atypical case resolutions, so long as the resolution furthers the criminal justice goals. Consultation with a supervisor is especially important in a situation where an ASA is seeking an atypical resolution.

*Sentencing Requires Discretion*

Discretion is imperative with respect to sentencing. Prosecutors do not impose sentences but wield significant influence through how they advocate for sentences. ASAs should seek

---

[3] For example, adultery remains a second-degree misdemeanor in Florida but is rarely, if ever, enforced.

[4] American Bar Association Rule 3-4.3.

[5] American Bar Association Rule 3-4.4.

sentences that further the criminal justice goals while factoring in the nature and circumstances of the offense, the defendant's criminal history (or lack thereof), victim input, and other factors. There is a wide range of available sanctions, including incarceration, probation, treatment, and restitution to accomplish the goals of accountability, punishment, deterrence, and rehabilitation. Also, ASAs should advocate for sentences that are consistent with similarly situated defendants.

Determining the appropriate sentence is not simply a math problem dictated by the Criminal Punishment Code. The Code expressly contemplates a range of aggravating and mitigating factors that warrant departures, but the sentencing calculation alone does not quantify the mitigation. Statutory mitigators include the extent of the defendant's participation, the need for specialized mental health treatment, whether the crime was an isolated incident, and the defendant's remorse.[6] ASAs must evaluate all mitigating and aggravating factors, as well as the strengths and weaknesses of each case, in advocating for a sentence. Additionally, ASAs are responsible for obtaining mitigation that they know or should reasonably know to exist. ASAs should not use prosecutorial or investigative resources to obtain mitigation and therefore usually have to rely on defense counsel to provide it. However, when the presence of mitigation is readily apparent, e.g., it is documented in the police report, ASAs should seek it out rather than waiting for defense counsel to raise the issue and provide the mitigation.

Incarceration should generally be reserved for when the defendant is a danger to the community. Whether the defendant poses a danger is evaluated based on the circumstances of the crime and the criminal history. Generally, for violent crimes, especially for offenders with a criminal history, incarceration is warranted. However, a defendant with minimal or no criminal history engaged in an isolated incident of violence may not warrant prison. The defendant's intent also factors into the danger posed. For example, a defendant who intended to seriously injure the victim but did not (e.g., repeated blows to the face that resulted in bruising) likely poses a greater danger than a defendant who did not intend to seriously injury the victim but did (e.g., pushing a victim who falls and breaks a bone).

Using a problem-solving approach requires considering the defendant's motivation in committing the crime. Defendants who are intent on harming innocent members of the community warrant different sentences than defendants who have committed a crime because of addiction or mental illness, or an otherwise law-abiding citizen whose crime was isolated and out of character.

Probation can be an effective intermediate sanction between incarceration and freedom. Probation, however, is not a universal solution, and when overused it can undermine long-term public safety at a significant monetary cost to society. Therefore, it is important that ASAs utilize probation—whether following or in place of incarceration—specifically to further the goals of accountability, punishment, or deterrence, rather than automatically seeking probation

---

[6] F.S. 921.0026(2).

in every case. In every case, ASAs should consider both whether probation is appropriate and, if so, the appropriate length of probation.

ASAs must exercise discretion in utilizing sentencing enhancements—including minimum mandatories such as HFO, HVO, PRR, and VCC. ASAs have discretion to file enhancements when (1) the legal requirements are met and (2) the heightened sentence *may be* warranted. ASAs, however, are not bound to seek enhancements at sentencing (or through negotiated guilty pleas) simply because the enhancement had been filed earlier in the case.

ASAs should consider the consequences of the sanctions we seek to impose. Incarceration as well as lesser sanctions can impact a defendant's job, future employment opportunities, or immigration status. Incarcerating parents has a hidden impact on children, often destabilizing a home environment and potentially increasing the likelihood of criminal activity by the child. Additionally, as mentioned above, sanctions that are warranted from a punishment and accountability perspective may undermine rehabilitation and therefore increase recidivism. Prosecutors are not responsible for navigating all the collateral consequences of conviction and sentences—nor can they be—but ASAs should be aware of these consequences and consider them in advocating for appropriate sentences.

ASAs should be mindful of the monetary cost of sanctions. For example, the cost in Florida for incarceration is approximately $24,265 per year for an adult and as high as $90,000 per year for a juvenile[7]. Although prosecutors are not tasked with saving taxpayer dollars when it comes to sentencing, ASAs should not close their eyes to the cost of the sanctions sought in relation to how effective they believe the sanctions will be in achieving the criminal justice goals in a particular case.

<u>Negotiate Reasonably & Fairly</u>

Plea negotiations involve advocating for a specific sentence, and therefore prosecutors should follow a similar approach for plea negotiations as they do for sentencing. In conducting plea negotiations, prosecutors must evaluate all mitigating and aggravating factors, as well as the strength and weaknesses of each case. As with sentencing, a prosecutor's role in making plea offers is not simply a question of arithmetic; making offers requires more than calculating the bottom of the sentencing guidelines of the Criminal Punishment Code. Pleas should be made in good faith towards resolving cases through the defendant's acceptance of responsibility, and the plea offer should aim to further the criminal justice goals while promoting consistency with similarly situated defendants. In addition to the statutory mitigators referenced above, the first mitigator listed in the statute is that the case resolved from a plea.[8] Accordingly, in all guilty pleas a mitigator is present that may justify a departure from the bottom of the guideline sentence.

---

[7] Adult cost is based on OPPAGA cost of $66.48 per day for Fiscal Year 2019-20. Juvenile cost is based on Justice Policy Institute's July 2020 report, "Sticker Shock 2020: The Cost of Youth Incarceration."

[8] F.S. 921.0026(2)(a).

6

In making plea offers, ASAs should consider the sentence that the ASA would seek if the defendant were to be convicted at trial. Generally, the plea offer should be below such a sentence to account for the defendant's acceptance of responsibility, the certainty and finality a plea provides to the victim, and the elimination of trial and appellate risk accomplished through the plea. Generally, stronger cases involve less of a reduction from the appropriate post-trial sentence, whereas weaker cases unfortunately necessitate a greater reduction because of greater trial risk. Furthermore, although it is impossible to predict with accuracy what sentence a judge would impose, it is permissible for ASAs to adjust the plea offer to reflect the expected sentence.

There is a tendency among prosecutors and defense attorneys to want the other side to initiate plea discussions. Whereas a defense attorney's goal may be to minimize the sentence, prosecutors should seek the appropriate sentence, not simply the maximum that they can negotiate. Accordingly, ASAs should not avoid initiating plea discussions. ASAs should make reasonable plea offers and be open to negotiating an appropriate resolution. In most cases, ASAs should make an offer by arraignment[9] and be open to further negotiations based on the relevant factors as they learn more about the case. In certain situations, especially those involving more serious crimes where there is a more active dialogue with defense counsel farther in advance of trial, it is appropriate for ASAs to discuss a general range of likely plea offers rather than making a specific, binding offer. This process will help determine the likelihood of a resolution. For example, in situations where a resolution is highly unlikely because the two sides are too far apart, or because the appropriate sentence is so high that the defendant will choose to go to trial, plea negotiations may be unproductive and therefore unnecessary.

A prosecutor's role as a minister of justice applies to plea negotiations as it applies to all other aspects of prosecution. Accordingly, prosecutors must conduct plea negotiations fairly. Although prosecutors can condition plea offers on waiving sentencing enhancements that are appropriate—including capital punishment, mandatory minimums, or the adult prosecution of juveniles—they must not make empty threats regarding enhancements to coerce a plea. It is acceptable for prosecutors to set reasonable deadlines before trial or hearings for acceptance of offers but should not condition pleas on defendants waiving credible allegations of constitutional violations. Appropriate situations for conditional revocation of an offer may include involvement of a vulnerable witness/victim, confidential informants, or other cases where there is a specific justification for withdrawing a plea offer prior to a particular pre-trial event occurring.

*Constitutional Violations*

As ministers of justice, prosecutors are obligated to identify Constitutional violations as well as any other police or prosecutorial misconduct. In addition to always complying with discovery and disclosure obligations, ASAs should exercise discretion in terms of prosecuting a case when faced with Constitutional problems or misconduct. Whereas defense attorneys are obligated to

---

[9] Administrative Order 2021-44, ¶ 15.

litigate any tenable violation, prosecutors are not merely advocates on behalf of the government. Accordingly, if an ASA believes that a violation occurred that warrants dismissal, s/he should not proceed with the case. Similarly, if an ASA believes that a law enforcement officer has provided misleading testimony or information—even if it falls short of a Constitutional violation warranting dismissal—the ASA should, immediately notify the Chief Assistant pursuant to our office's Law Enforcement Disclosure Policy.

**Examples**

Case-specific decisions must be made according to the unique facts and circumstances of the case. Therefore, it is impossible to provide examples that dictate the appropriate decision in every situation across a category of cases. The examples below are intended to provide guidance for certain issues in terms of evaluating charging decisions but are not mandatory charging policies that must be followed in every situation.

- Homeless defendants who are sleeping in a business's parking lot generally should not be charged with trespass because the prosecution is not going to solve the underlying problem in terms of the trespass or the homelessness. The arrest itself addresses the short-term issue of the trespass, but the subsequent prosecution does not further any goal.

- ASAs generally should dismiss a case against a defendant charged with driving on a suspended license who is subsequently able to get his/her license reinstated, as the underlying problem has often been solved, thereby furthering the goal of traffic safety.

- Where a person has committed a public order offense such as making a false 911 call or disorderly conduct, and the police report indicates that the person was suffering from mental health issues or was Baker Acted at the scene, it may be appropriate to no-file the charges if the person is receiving treatment, especially if the prosecution risks undermining the success of the treatment.

- Where a defendant committed petit theft but paid restitution to the victim's satisfaction, the defendant's criminal history is instructive. In these situations, defendants with a limited criminal record may not warrant prosecution if the expected outcome is court costs, whereas defendants with a more significant criminal history may warrant prosecution if sanctions beyond courts costs are appropriate and expected.

- For bringing a firearm into an airport or a courthouse, the decision to charge should depend largely on the suspect's intent. There is a significant difference in the threat to public safety between a person who tries to sneak a firearm into a secure location for ostensibly nefarious purposes, versus an otherwise law-abiding gun owner who merely forgets to remove the firearm from his/her luggage.

- The armed burglary statute applies to situations where the offender is armed prior to the burglary and where the offender becomes armed during the burglary. However, a defendant who arms himself either before or during a burglary to confront the victim of the burglary, e.g., carrying a gun when breaking into a person's home, poses a different

public safety threat than a defendant who steals a weapon as the object of the burglary, e.g., opening an empty, unlocked car and stealing a gun. In general, the former should be charged as armed burglary whereas the latter should not.

- The burglary with assault or battery statute applies to (1) situations where the offender breaks into a person's home in the middle of the night and physically attacks the homeowner and (2) to situations in which the offender reaches across the threshold of a rolled-down car window and threatens the driver. There is a significant difference between these two crimes in terms of the threat to public safety and the harm caused to the victim. In general, the former should be charged as burglary with assault or battery whereas the latter is should be charged as a misdemeanor assault, with the possibility of adding the charge of burglary of a conveyance.

- In deciding whether to charge drug trafficking, ASAs must look at factors other than the amount of drugs sold. There is a significant difference in the threat to public safety and the degree of culpability between the kingpin and the mule, even though both may be caught selling the same amount of drugs. Similarly, there is a significant different between a person selling prescription drugs as an organized criminal business versus someone selling his/her own prescribed drugs to afford the medication that s/he needs for legitimate medical use.

- For certain crimes, individual acts that are part of the overall crime may constitute a separate charge, e.g., wire fraud, identity theft, possession of child pornography, unlicensed practice of law, et al. Often in these situations, it is possible to charge dozens or hundreds of counts. For these crimes, ASAs should not file every possible count but rather should strategically charge a number of representative counts to achieve the appropriate sanctions while simplifying the burden of proof at trial.