UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ANDREW H. WARREN,

      Plaintiff,

v.                                                  Case No. 4:22cv302-RH-MAF

RON DESANTIS, individually and in
his official capacity as Governor of the
State of Florida


      Defendant.

_____


**BRIEF OF *AMICUS CURIAE* FORMER PROSECUTORS, ATTORNEYS GENERAL, JUDGES, UNITED STATES ATTORNEYS AND FEDERAL OFFICIALS, AND CURRENT AND FORMER LAW ENFORCEMENT OFFICIALS AND LEADERS IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION AND ANY FUTURE DISPOSITIVE MOTIONS</u>**

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF INTEREST OF *AMICI CURIAE*................................................1

ARGUMENT.......................................................................................................3

   I.     Prosecutorial Discretion is Well-Settled ....................................................3

      A.    Prosecutors are both quasi-judicial officers and advocates for the pursuit of justice in their communities ...............................................................3

      B.    Prosecutors must use their inherently limited resources judiciously .......4

      C.    The public benefits from prosecutors' transparent disclosure of positions and priorities ...........................................................................................6

   II.    Governor DeSantis' Order Undermines the Will of Voters and Erodes Confidence in the Administration of Justice .............................................7

      A.    The Order usurps the right of Florida citizens to elect their State Attorney ................................................................................................8

      B.    The Order will erode transparency, Florida voters' trust in elections, and the integrity of the rule of law .............................................................12

CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Austin v. State ex rel. Christian*,
   310 So. 2d 289 (Fla. 1975).................................................................9

*Berger v. United States*,
   295 U.S. 78 (1935)........................................................................3

*Cleveland v. State*,
   417 So. 2d 653 (Fla. 1982)................................................................4

*Reynolds v. Sims*,
   377 U.S. 533 (1964)...................................................................9, 11

*Rolle v. State*,
   268 So. 2d 541 (Fla. 3d DCA 1972)......................................................3

*State v. Bloom*,
   497 So. 2d 2 (Fla. 1986)..................................................................4

*State v. Cain*,
   381 So. 2d 1361 (Fla. 1980)..............................................................4

*United States v. Agurs*,
   427 U.S. 97 (1976).........................................................................3

## Constitutional Provisions, Statutes, Bills & Orders

Fla. Const. Art. I § 1 ...........................................................................9

Fla. Const. Art. IV § 1.........................................................................9

Fla. Const. Art. IV § 7(a) ...................................................................11

Fla. Const. Art. V § 17.........................................................................9

Fla. Const. Art. VI § 2........................................................................11

Fla. Exec. Order No. 22-176 (Aug. 2, 2022) ....................................10, 13

Fla. SB 1812 (2022) ................................................................11

Fla. Stat. § 798.01 ...................................................................5

Fla. Stat. § 800.02 ...................................................................5

**Other Authorities**

*ABA Criminal Justice Standards for the Prosecution Function* (4th ed. 2017) ....3, 5

Gerard E. Lynch, *Prosecution: Prosecutorial Discretion*, *in* 3 Encyclopedia of Crime & Justice 1246 (Joshua Dressler ed., 2d ed. 2002) .............................7

Marc A. Levin & Khalil A. Cumberbatch, *Don't Abort Local Prosecutors' Discretion*, Washington Monthly, August 11, 2022 ..........................................5

R. Michael Cassidy, *(Ad)ministering Justice: A Prosecutor's Ethical Duty to Support Sentencing Reform*, 45 Loyola Univ. of Chicago L.J. 981 (2014) ........4

Robert L. Misner, *Recasting Prosecutorial Discretion*, 86 J. Crim. L. & Criminology 717 (1996)......................................................................6

Tom R. Tyler & Jeffrey Fagan, *Legitimacy and Cooperation: Why Do People Help the Police Fight Crime in Their Communities?,* 6 Ohio St. J. Crim. L. 231 (2008) ................................................................13

### STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici curiae* are former prosecutors, Attorneys General, judges, United States Attorneys and federal officials, and current and former law enforcement officials and leaders who are committed to protecting the integrity of our justice system.  A full list of *Amici* is attached as Appendix A.

Prosecutorial independence—the authority to decide whom and what to charge and how to use inherently limited resources—is a hallmark of our legal system and the pursuit of justice.  No prosecutor has the resources to pursue every violation of the law, nor should they endeavor to do so.  In carrying out those weighty decisions around the use of limited resources, elected prosecutors are ethically bound to pursue just results, protect fundamental rights, and serve as ministers of justice in their communities.

Elected prosecutors wield significant power in the criminal justice system in determining how cases are initiated and resolved on a day-to-day basis through charging decisions and recommendations on bail, detention, and sentencing, to name a few.  They are thus uniquely positioned to not only influence the justice system, but also to directly impact the lives of the residents in the communities they represent, through their decision-making.

Voters elect these leaders based in part on the candidate's priorities and vision for pursuing justice and promoting public safety.  It is therefore critical for elected

prosecutors to be transparent in their views and actions, as they implement the agenda and values they articulate to the voters who elect (and reelect) them.

Governors do not have the authority to disregard the autonomy and independence of prosecutors, nor are they entitled to undermine the will of the voters by removing a prosecutor simply because he exercises the discretion vested in him to make charging decisions or expresses his views regarding appropriate priorities of the justice system. Allowing governors to do so would upset the careful balance of roles and responsibilities delegated to local as well as state actors by state constitutions, delegitimize our justice system, and erode public confidence in the operation of government and the integrity of the election process. Here, 13th Judicial Circuit State Attorney Andrew Warren's suspension is an executive overreach by the Governor that intrudes on prosecutorial independence and autonomy, supplanting the local community's public safety priorities that State Attorney Warren was elected to protect and represent.

This case presents issues of national importance. *Amici*, who bring decades of experience from judicial, law enforcement, and criminal justice leadership roles, recognize the critical role of preserving prosecutorial discretion and the need to insulate prosecutors from improper outside political pressures. The ripple effects of this action—and the potential chilling effect on other elected prosecutors who seek to carry out their ethical and professional duties and be transparent about how they

do so—are of interest to all who care about the integrity of our justice system nationwide.

## **ARGUMENT**

### I.    **Prosecutorial Discretion is Well-Settled**

#### A.  *Prosecutors are both quasi-judicial officers and advocates for the pursuit of justice in their communities*

"The prosecutor is an administrator of justice, a zealous advocate, and an officer of the court." *ABA Criminal Justice Standards for the Prosecution Function* § 3-1.2(a) (4th ed. 2017) (*ABA Criminal Justice Standards*).   Throughout a prosecutor's performance of his duties, "he must always be faithful to his client's overriding interest that 'justice shall be done.'" *See United States v. Agurs*, 427 U.S. 97, 110-11 (1976) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)); *Rolle v. State*, 268 So. 2d 541, 542 (Fla. 3d DCA 1972).  Thus, the prosecutor serves the public interest and increases public safety "by pursuing appropriate criminal charges of appropriate severity, and by exercising discretion to not pursue criminal charges in appropriate circumstances." *See ABA Criminal Justice Standards* § 3.12(b).

The exercise of "sound discretion and independent judgment" is critical to the performance of the prosecutorial function.  *See id.* § 3.12(a). The Florida Supreme Court has recognized that "[u]nder Florida's constitution, the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute." *State v. Bloom*, 497 So. 2d 2,

3 (Fla. 1986); *see also State v. Cain*, 381 So. 2d 1361, 1367 & n.8 (Fla. 1980) ("[T]he discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice."); *Cleveland v. State*, 417 So. 2d 653, 654 (Fla. 1982) ("The state attorney has complete discretion in making the decision to charge and prosecute."). This decision to prosecute—or not prosecute—certain conduct is a duty that prosecutors must carry out daily. However, what justice looks like in a given case is not always clear, and prosecutors must utilize their discretion to craft resolutions according to their policies, values, and goals, which are necessarily guided by the voters who elected them.

### B. Prosecutors must use their inherently limited resources judiciously

No prosecutor has the resources and ability to prosecute every violation of the law—nor would doing so promote public safety or be an effective use of public resources. *See* R. Michael Cassidy, *(Ad)ministering Justice: A Prosecutor's Ethical Duty to Support Sentencing Reform*, 45 Loyola Univ. of Chicago L.J. 981, 1007 (2014) (positing that "prosecutors must construe their roles broadly to include crime prevention, detection and enforcement," and should use resources judiciously to effectuate "the most effective balance of all three of these important functions."). Instead, elected prosecutors—empowered by their community to carry out the duties of the job—are ethically bound to make decisions every day about where and how limited resources are best expended, what cases merit entry into the justice system,

and what charges and penalties to seek when a case does warrant criminal prosecution. That is the essence of prosecutorial guidelines and discretion.[1]

A prosecutor's job is "not merely to convict," but rather to "act with integrity and balanced judgment to increase public safety both by pursuing appropriate criminal charges of appropriate severity, and by exercising discretion to not pursue criminal charges in appropriate circumstances." *ABA Criminal Justice Standards* § 3-1.2(b). Florida still has a number of laws on the books that no prosecutor would today view as a wise use of limited resources. *See, e.g.*, Fla. Stat. § 798.01 ("Whoever lives in an open state of adultery shall be guilty of a misdemeanor of the second degree"); Fla. Stat. § 800.02 (classifying, among other things, same-sex activity as a second degree misdemeanor). Other states similarly have laws that would be deeply troubling to see prosecuted. *See, e.g.*, Marc A. Levin & Khalil A. Cumberbatch, *Don't Abort Local Prosecutors' Discretion*, Washington Monthly, August 11, 2022, https://washingtonmonthly.com/2022/08/11/dont-abort-local-prosecutors-discretion ("Prosecutors regularly disregard countless obscure state laws covering ordinary business and recreational activities, including banning work on Sundays in South Carolina, transporting a Christmas tree without a bill of sale in

---

[1] This is not merely a hallmark of local prosecution, but is also the standard practice of federal prosecution. Every day, United States Attorneys around the country craft guidelines governing where and how limited resources will be used and what cases or violations of the law warrant their focus.

Michigan, and thrashing a neighbor's pecan tree in Texas."). Prosecuting cases such as these simply does not align with the best use of limited resources and public safety. Indeed, the justice system would not be able to function if elected prosecutors were forced to prosecute *every* case without applying discretion in a manner that best maximizes resources to keep their communities safe.

### C. The public benefits from prosecutors' transparent disclosure of positions and priorities

State Attorney Warren's public statements about public safety priorities are part of the elected prosecutor's duty to set priorities consistent with the vision of justice that voters elected him to implement. State Attorney Warren's transparency about his priorities is also consistent with his role as an elected leader who is responsive to the needs of the community that elected him. *See* Robert L. Misner, *Recasting Prosecutorial Discretion*, 86 J. Crim. L. & Criminology 717, 731 (1996) ("The history of the development of the office of prosecutor has the clear theme . . . of 'local representation applying local standards to the enforcement of essentially local laws.'"). Indeed, we should encourage this type of open and clear articulation of priorities, not penalize a leader for his transparency. And sanctioning the removal from office of elected prosecutors who engage in the very transparency that our communities deserve, and that should be integral to how government operates, will chill future elected leaders from embracing and implementing such transparency.

It is also the job of elected prosecutors to set and define office policy in an

6

effort to ensure that critical charging decisions are not driven by the whim or fortuity of an individual line-level prosecutor, but rather guided by a thoughtful and consistent approach established by the elected leader of the office.  *See* Gerard E. Lynch, *Prosecution: Prosecutorial Discretion*, *in* 3 Encyclopedia of Crime & Justice 1246, 1247 (Joshua Dressler ed., 2d ed. 2002) ("The prosecutor is thus not merely a barrister, exercising technical skill to advocate positions decided by someone else, but a significant public official, exercising political authority on behalf of the state to determine its substantive position. Consequently, the prosecutor is normally a politically responsible actor.").  That is the essence of prosecutorial guidelines and policies—and they have been integral to the smooth functioning of prosecutor offices for decades. These are practices that should be encouraged, not penalized.

II.    **Governor DeSantis' Order Undermines the Will of Voters and Erodes Confidence in the Administration of Justice**

Deciding where and how to use resources to promote public safety, serving as a leader on criminal justice issues, and protecting the constitutional rights of members of their community is the essence of the job of an elected prosecutor.  If these actions serve as the basis for the removal of State Attorney Warren, then the job stability of any and all State Attorneys—and their ability to implement what voters elected them to carry out—is on precarious ground.

Allowing a governor to remove a prosecutor for expressing his views on where and how priorities around prosecution should be set would *de facto* strip

7

prosecutors of the ability to carry out the integral elements of their job.  Indeed, if the actions at issue here are deemed to be a permissible basis for removal, then in any case where a prosecutor's decision to prosecute differs from the governor's priorities, the prosecutor elected by his community to make these exact discretionary decisions would need to choose whether to act in accordance with the governor's (and not his own) views or face suspension.  This does not constitute the exercise of true prosecutorial discretion by local prosecutors put in office by their community. Moreover, by divesting a State Attorney of his discretion and ability to run his office, Governor DeSantis's Order deprives Florida voters of the ability to elect their own State Attorney and erodes trust in the fair and appropriate operation of our prosecutorial system.

### A. *The Order usurps the right of Florida citizens to elect their State Attorney*

Voters have the right to choose their elected representatives—a right that is fundamental to United States and Florida law.  *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society[.]"); *see also* Fla. Const. Art. I § 1 ("All political power is inherent in the people.").  Pursuant to the Florida Constitution, citizens of Florida elect State Attorneys for their respective judicial circuits to execute the duties of this office, including serving as the prosecuting officer of all trial courts in the applicable circuit and performing other duties prescribed by general law.  *See* Fla.

Const. Art. V § 17.  As observed by the Florida Supreme Court, as "an elected official[,] [the State Attorney] is responsible to the electorate of his [or her] circuit, this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused."  *Austin v. State ex rel. Christian*, 310 So. 2d 289, 293 (Fla. 1975).  Citizens of Florida separately elect a governor to execute the duties of that office, including, among others, transacting necessary business with the officers of government and taking responsibility for the planning and budgeting for the state.  *See* Fla. Const. Art. IV § 1.

In 2016, the citizens of Hillsborough County exercised their constitutional right to elect the State Attorney for the 13th Judicial Circuit, and chose Andrew Warren.  State Attorney Warren is a prosecutor committed to evidence-based criminal justice reforms, transparency, and using data to invest in prevention and diversion for low level offenses and minimize racial and socioeconomic disparities in the justice system—all initiatives well within the bounds of prosecutorial discretion and aimed at promoting public safety and the interests of the community that elected him.  After State Attorney Warren served his first four-year term in office, which gave the residents of the county the opportunity to evaluate his actions and public safety priorities, voters again elected Andrew Warren to serve as their State Attorney in 2020.

However, on August 4, 2022, Governor DeSantis undermined the right of Hillsborough County voters to select the State Attorney of their choice pursuant to the Florida Constitution, by suspending a duly elected prosecutor on the basis of makeweight allegations of "incompetence and willful defiance of his duties."  *See* Fla. Exec. Order No. 22-176 (Aug. 2, 2022) at 3 (the "Order").  As the predicate for that extraordinary removal of an elected official, Governor DeSantis pointed to State Attorney Warren's public expression of prosecutorial and enforcement priorities, and a presumptive policy aimed at guiding attorneys in the office in their handling of certain low level cases.  *See* Order at 3.  Governor DeSantis then proceeded to appoint as State Attorney an unelected lawyer holding views divergent from those of State Attorney Warren, thereby supplanting local control over the community's vision for promoting public safety.[2]

This replacement of an elected official in no way aligns with the authority granted to the governor via the Florida Constitution, which does not allow the governor to suspend elected prosecutors for articulating public safety priorities or

---

[2] The Florida Constitution provides that citizens "shall be an elector of the county where registered."   Art. VI § 2.  Governor DeSantis's overreach has, in effect, misappropriated that right from Hillsborough County and impermissibly allowed Floridians outside the county to dilute Hillsborough County voters' right to elect their own State Attorney. *See Reynolds*, 377 U.S. at 568  ("An individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living on other parts of the State.").

exercising their discretion in this manner.  *See* Fla. Const. Art. IV § 7(a).  Recently, the Florida legislature specifically decided not to revise Florida law regarding State Attorneys' prosecutorial discretion.  On January 7, 2022, Florida State Senator Diaz introduced a bill "[p]roviding that a state attorney's neglect of duty may serve as a basis for an investigation, a case, or a matter to be reassigned to another judicial circuit" and "providing that a state attorney adopting certain blanket policies constitutes a failure to execute his or her duty[.]"  *See* Fla. SB 1812 (2022), https://www.flsenate.gov/Session/Bill/2022/1812/ByCategory.   However, this bill was withdrawn from consideration in March 2022 and has not been enacted by the Senate.  The fact that the Florida legislature did not, in fact, enact this bill—and the assumption that a change of law was needed to include failures to prosecute within the definition of neglect of duty—underscores the fact that even if State Attorney Warren had implemented "blanket policies," which he did not, this would not constitute a failure to execute the duties of his office under *current* Florida law.

By improperly expanding the governor's ability to suspend State Attorneys to include situations in which these elected prosecutors articulate views different from those of the Governor or exercise their well-settled discretion to guide the handling of cases in their office, the Order, if left intact, would create the risk that any State Attorney can be suspended whenever a governor disagrees with the prosecutor's— and, necessarily, the voters'—policy priorities. The Order will thus have a chilling

11

effect on the exercise of independent and settled discretion by other state attorneys and also strip communities of their prerogative to select prosecutorial leaders who make judgment calls and exercise discretion in a manner they support.

### B. The Order will erode transparency, Florida voters' trust in elections, and the integrity of the rule of law

Transparency through public statements about public safety priorities provides voters with critical information enabling them to choose a State Attorney who best represents their interests and aligns with their vision for how prosecutorial authority should be exercised. Such statements, and the enactment of office policies that align with the stated priorities, also provide guidance to the entire prosecutor's office and help ensure consistent decisions as prosecutorial discretion is exercised across the office.

In disregarding the will of the voters and interfering with State Attorney Warren's prosecutorial autonomy, Governor DeSantis' improper suspension of State Attorney Warren will erode not just voters' ability to elect prosecutors of their choice, but also their trust in the rule of law and the proper operation of our justice system. Floridians' right to elect State Attorneys should not be subject to potential gubernatorial veto based on political differences. Further, communities will suffer if their electoral decisions are not respected. When individuals have less confidence in legal authorities and view the police, the courts, and the law as illegitimate, they are less likely to report crimes, cooperate as witnesses, and accept police and judicial

12

system authority.  *See* Tom R. Tyler & Jeffrey Fagan, *Legitimacy and Cooperation: Why Do People Help the Police Fight Crime in Their Communities?*, 6 Ohio St. J. Crim. L. 231, 263 (2008).  This erosion of trust that Executive Order No. 22-176 has created, and will continue to create, should be of great concern to all who value a system where roles of elected officials are clearly defined and free from inappropriate interference.

The proper way for the Governor to express a disagreement with State Attorney Warren's exercise of discretion and public safety priorities is to ask voters to support a new State Attorney in the next election—not by divesting voters of their most important and solemn obligation in a democracy: their participation in free and fair elections to choose who represents and serves them.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should find that Governor DeSantis exceeded his authority in suspending Andrew Warren as State Attorney for the 13th Judicial Circuit and grant the injunctive and other relief requested by duly elected State Attorney Andrew Warren.

Dated:      August 26, 2022

Respectfully submitted,

/s/ Jeffrey W. Warren
Jeffrey W. Warren (Fla. Bar 150024)
Bryan D. Hull (Fla. Bar 20969)
Howell "Web" Melton, III (Fla. Bar 37703)
BUSH ROSS, P.A.
1801 N. Highland Ave.
Tampa, Florida 33602
(813) 224-9255
jwarren@bushross.com
bhull@bushross.com
wmelton@bushross.com

and

Steven A. Newborn*
Lauren Bernstein*
Tania C. Matsuoka*
Sarah Schnorrenberg*
Adam King*
Sherry Safavi*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
steven.newborn@weil.com
lauren.bernstein@weil.com
tania.matsuoka@weil.com
sarah.schnorrenberg@weil.com
adam.king@weil.com
sherry.safavi@weil.com

*pro hac vice application forthcoming

*Attorneys for Amici Curiae*

14

## **LOCAL RULE 7.1 CERTIFICATE**

I hereby certify that the foregoing brief contains 3,270 words, excluding the items listed in Local Rule 7.1(F).

By: /s/ Jeffrey W. Warren
Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of August, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida through the CM/ECF system, which will serve a true and correct copy on all counsel of record who have consented to electronic service.

By: /s/ Jeffrey W. Warren
Attorney

# APPENDIX A
# LIST OF *AMICI*

**Harry Lee Anstead**
Former Chief Justice, Supreme Court, Florida
Former Chief Judge, Fourth District Court of Appeal, Florida

**Barbara Pariente**
Former Chief Justice, Supreme Court, Florida
Former Judge, Fourth District Court of Appeal, Florida

**Peggy Quince**
Chief Justice (Ret.), Supreme Court, Florida
Former Judge, Second District Court of Appeal, Florida

**A. Lee Bentley III**
Former U.S. Attorney, Middle District of Florida
Former Assistant U.S. Attorney, Middle District of Florida
Former Special Assistant U.S. Attorney, Southern District of Florida
Former Attorney Advisor, Office of Legal Counsel, U.S. Department of Justice

**E.J. Salcines**
Former Judge, Second District Court of Appeal, Florida
Former Assistant U.S. Attorney and Criminal Division Chief, Middle District of Florida
Former State Attorney, 13th Judicial Circuit (Hillsborough County), Florida
Former President, Florida Prosecuting Attorneys Association
Former Vice President, National District Attorneys Association

**Neal R. Sonnett**
Former Assistant U.S. Attorney and Criminal Division Chief, Southern District of Florida
Former Chair, ABA Criminal Justice Section
Former President, American Judicature Society

**O.H. Eaton Jr.**
Former Chief Judge, 18th Judicial Circuit Court, Florida
Former Chair, Criminal Justice Section, Florida Conference of Circuit Judges
Former Chair, The Florida Bar Criminal Procedure Rules Committee
Former Chair, Supreme Court of Florida Criminal Court Steering Committee

16

**Manuel Menendez, Jr.**
Former Chief Judge, 13th Judicial Circuit (Hillsborough County), Florida
Former Chief Assistant U.S. Attorney, Middle District of Florida

**Herbert M. Berkowitz**
Judge (Ret.), 13th Judicial Circuit (Hillsborough County), Florida
Former Assistant U.S. Attorney, Northern District of Ohio

**William P. Levens**
Judge (Ret.), 13th Judicial Circuit (Hillsborough County), Florida

**Harry L. Shorstein**
Former State Attorney, 4th Judicial Circuit (Jacksonville), Florida

**Shay Bilchik**
Former Chief Assistant State Attorney, Miami-Dade County, Florida
Former Associate Deputy Attorney General, U.S. Department of Justice
Former Administrator, Office of Juvenile Justice and Delinquency Prevention, U.S.
Department of Justice

**Melba Pearson**
Former Assistant State Attorney, Miami-Dade County, Florida
Former President, National Black Prosecutors Association

**Roy L. Austin, Jr.**
Former Deputy Assistant Attorney General, Civil Rights Division, U.S.
Department of Justice
Former Deputy Assistant to President Obama for the Office of Urban Affairs,
Justice, and Opportunity (White House Domestic Policy Council)

**Larry Boone**
Former Chief, Norfolk Police Department, Virginia

**RaShall Brackney, Ph.D.**
Former Chief, Charlottesville Police Department, Virginia

**Joseph Brann**
Former Chief, Hayward Police Department, California
Former Director, Office of Community Oriented Policing Services, U.S.
Department of Justice

17

**Bobbe J. Bridge**
Former Justice, Supreme Court, Washington

**Jim Bueermann**
Former Chief, Redlands Police Department, California
Former President, National Police Foundation

**Chris Burbank**
Former Chief, Salt Lake City Police Department, Utah
Director, Law Enforcement Strategy, Center for Policing Equity

**Andrea J. Cabral**
Former Assistant Attorney General, Massachusetts
Former Sheriff, Suffolk County, Massachusetts
Former President, Massachusetts Sheriffs Association
Former Assistant District Attorney, Suffolk County, Massachusetts
Former Assistant District Attorney, Middlesex County, Massachusetts

**Doug Chin**
Former Lieutenant Governor, Hawaii
Former Attorney General, Hawaii

**Jerry Clayton**
Sheriff, Washtenaw County (Ann Arbor), Michigan

**Brendan Cox**
Former Chief, Albany Police Department, New York

**Neill Franklin**
Former Major, Baltimore Police Department
Former Major, Maryland State Police
Former Executive Director, Law Enforcement Action Partnership (LEAP)

**William Royal Furgeson, Jr.**
Former Judge, U.S. District Court, Western District of Texas

**Gil Garcetti**
Former District Attorney, Los Angeles County, California

18

**Stan Garnett**
Former District Attorney, 20th Judicial District (Boulder), Colorado

**Nancy Gertner**
Former Judge, U.S. District Court, District of Massachusetts

**Ronald Goldstock**
Former Director, New York State Organized Crime Task Force, New York State Attorney General's Office
Former Inspector General, U.S. Department of Labor
Former Chief, Rackets Bureau, New York County District Attorney's Office
Former Chair, ABA Criminal Justice Section
Former Co-Chair, ABA Criminal Justice Section Ethics 2000 Committee
Former Chair, ABA Criminal Justice Standards Committee
Former Chair, ABA Criminal Justice Standards Committee, Investigative Function of the Prosecutor Task Force

**Christian Gossett**
Former District Attorney, Winnebago County, Wisconsin

**Kristin Graziano**
Sheriff, Charleston County, South Carolina

**Joseph R. Grodin**
Former Associate Justice, Supreme Court, California

**Scott Harshbarger**
Former Attorney General, Massachusetts
Former District Attorney, Middlesex County, Massachusetts

**Ilene Jaroslaw**
Former Assistant U.S. Attorney and General Crimes Chief, Eastern District of New York
Council Member, ABA Criminal Justice Section
Co-Chair, ABA Women in White Collar Committee

**Justin F. Kollar**
Former Prosecuting Attorney, County of Kaua'i, Hawaii

19

**Scott Lassar**
Former U.S. Attorney, Northern District of Illinois

**Timothy K. Lewis**
Former Judge, U.S. Court of Appeals, Third Circuit
Former Judge, U.S. District Court, Western District of Pennsylvania

**Robert L. Listenbee**
Former Administrator, Office of Juvenile Justice and Delinquency Prevention
(OJJDP), U.S. Department of Justice

**Patricia A. Madrid**
Former Attorney General, New Mexico

**Garry L. McFadden**
Sheriff, Mecklenburg County (Charlotte), North Carolina

**Michol O'Connor**
Former Justice, First Judicial District Court of Appeals, Texas
Former Assistant U.S. Attorney, Southern District of Texas

**Jerome O'Neill**
Former U.S. Attorney, District of Vermont
Former Assistant U.S. Attorney, District of Vermont

**Carmen M. Ortiz**
Former U.S. Attorney, District of Massachusetts
Former Assistant U.S. Attorney, District of Massachusetts
Former Assistant District Attorney, Middlesex County, Massachusetts

**Channing Phillips**
Former U.S. Attorney, District of Columbia

**Abdul D. Pridgen**
Chief, San Leandro Police Department, California
Former Chief, Seaside Police Department, California

**Ira Reiner**
Former District Attorney, Los Angeles County, California
Former City Attorney, Los Angeles, California

20

**Stephen Rosenthal**
Former Attorney General, Virginia

**Stephen Saltzburg**
Former Deputy Assistant Attorney General, Criminal Division, U.S. Department of Justice

**Shira A. Scheindlin**
Former Judge, U.S. District Court, Southern District of New York

**Robert J. Spagnoletti**
Former Attorney General, District of Columbia

**Norm Stamper**
Former Police Chief, Seattle Police Department, Washington

**Darrel Stephens**
Former Chief, Charlotte-Mecklenburg Police Department, North Carolina
Former Executive Director, Major City Chiefs Association

**Tom Synan**
Chief, Newton Police Department, Ohio

**James Tierney**
Former Attorney General, Maine

**Laurence H. Tribe**
Former Senior Counselor, Office of Access to Justice, U.S. Department of Justice

**Anthony F. Troy**
Former Attorney General, Virginia

**Cyrus R. Vance**
Former District Attorney, New York County (Manhattan), New York

**John Walsh**
Former U.S. Attorney, District of Colorado
Former Chair, Attorneys General's Advisory Committee of U.S. Attorneys

**Seth Waxman**
Former Solicitor General, U.S. Department of Justice

**Ronald Weich**
Former Assistant District Attorney, New York County (Manhattan), New York
Former Special Counsel, United States Sentencing Commission, U.S. Department of Justice
Former Assistant Attorney General, Office of Legislative Affairs, U.S. Department of Justice