# EXHIBIT A

UNTED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW H. WARREN,

      Plaintiff,

v.                                    Case No. 4:22-cv-302-RH-MAF

RON DESANTIS, individually and in
his official capacity as Governor of the
State of Florida,


      Defendant.

_____


**LEGAL SCHOLARS' *AMICUS CURIAE* BRIEF
IN SUPPORT OF ANDREW H. WARREN**

## <u>TABLE OF CONTENTS</u>

INTEREST AND IDENTITY OF *AMICI CURIAE*...................................................1

INTRODUCTION ........................................................................................2

I.    FACTUAL BACKGROUND...........................................................3

II.   ARGUMENT.................................................................................5

      A.    State Attorney Warren's Transparency as to His Policy Views
           Properly Promotes Electoral Accountability Consistent with
           Ethical and Professional Standards...........................................6

      B.    Presumptive Non-Prosecution Policies Like Those Implemented
           by State Attorney Warren Are an Accepted Use of Prosecutorial
           Discretion Consistent with Ethical and Professional Standards..............9

      C.    Suspending State Attorney Warren for Expressing Policy Views
           and Establishing Priorities Undermines Both Prosecutorial
           Independence and Discretion...............................................11

CONCLUSION ........................................................................................14

8402899.1

# TABLE OF AUTHORITIES

**Cases**

*Austin v. State ex rel. Christian*, 310 So. 2d 289 (Fla. 1975) .................................15

*Ayala v. Scott*, 224 So. 3d 755 (2017) ....................................................................10

*Bond v. Floyd*, 385 U.S. 116 (1966) ..........................................................................8

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ................................9

*Whiley v. Scott*, 79 So. 3d 702 (Fla. 2011)...............................................................16

**Other Authorities**

American Bar Association Criminal Justice Standards for the Prosecution
    Function ...................................................................................................... passim

Bruce A. Green, *Developing Standards of Conduct for Prosecutors and
    Criminal Defense Lawyers*, 62 Hastings L.J. 1093 (2011) ...............................6, 7

Ellen S. Podgor, Department of Justice Guidelines: Balancing "Discretionary
    Justice," 13 Cornell J. L. & Pub. Pol'y 167 (2004)............................................11

*In Virginia and Elsewhere, 2nd Amendment "Sanctuary" Movement Aims
    to Defy New Gun Laws*, L.A. Times (Dec. 21, 2019) ...........................................9

National District Attorneys Association National Prosecution Standards,
    Third Edition..........................................................................................................6

R. Jackson, <u>The Federal Prosecutor</u>, Address Delivered at the Second
    Annual Conference of United States Attorneys, April 1, 1940, 24 J. Am.
    Jud. Soc'y 18 (1940), 31 J. Crim. L. 3 (1940)......................................................6

Rachel E. Barkow, *Federalism and Criminal Law: What the Feds Can
    Learn from the States*, 109 Mich. L. Rev. 519 (2011) ........................................14

Robert L. Misner, *Recasting Prosecutorial Discretion*, 86 J. Crim. L. &
    Criminology 717 (1996) ......................................................................................15

Ronald F. Wright, *Prosecutors and Their State and Local Polities*, 110 J. CRIM. L. & CRIMINOLOGY 823 (2020) .................................................. 10, 15

Schuyler C. Wallace, *Nullification: A Process of Government*, Political Science Quarterly, Vol. 45, No. 3 (Sept. 1930) ................................................... 13

Shawn E. Fields, *Second Amendment Sanctuaries*, 115 Nw. U. L. Rev. 437 (2020)............................................................................................................9

U.S. Department of Justice Manual § 9-41.120, FCPA Corporate Enforcement Policy ...................................................................................................11

U.S. Department of Justice, United States Attorneys' Written Guidelines for the Declination of Alleged Violations of Federal Criminal Laws: A Report to the United States Congress (1981) .......................................................11

Wayne R. LaFave et al., *Checking the Prosecutor's Discretion*, 4 Crim. Proc. § 13.2(g) (4th ed. 2016)..................................................................14

William T. Pizzi, *Understanding Prosecutorial Discretion in the United States: The Limits of Comparative Criminal Procedure as an Instrument of Reform*, 54 Ohio St. L.J. 1325 (1993) ............................................................15

**Rules**

Rules Regulating The Florida Bar, Comment to Rule 4-3.8 ....................................7

**Constitutional Provisions**

Fla. Const. Art. IV, § 7(a) .....................................................................................4

Fla. Const. Art. V, § 17...........................................................................................14

8402899.1

## INTEREST AND IDENTITY OF *AMICI CURIAE*

*Amici* are 115 legal scholars whose scholarship, teaching, and professional service focus on legal ethics, professional responsibility, and/or criminal procedure. Collectively, *amici* have authored hundreds of articles and other writings, including casebooks, on these subjects. Their academic work addresses the professional norms and expectations governing prosecutors, including those relating to prosecutorial discretion and accountability, as well as the mechanisms by which prosecutors are regulated to ensure accountability while preserving prosecutorial independence. Some of the *amici* have also participated in developing or revising the American Bar Association Criminal Justice Standards, Prosecution Function, which have guided prosecutorial discretion and standards of conduct for more than fifty years.

Drawing on their expertise, *amici,* who join in their independent capacity and are listed in Appendix A to the Brief, offer a perspective which is broader than the parties regarding the extent to which the conduct in this case comports with relevant professional standards and democratic mechanisms.

*Amici* submit State Attorney Warren's transparent statements of policy and prosecutorial priorities are consistent with professional standards of conduct. *Amici* further submit that suspending State Attorney Warren for establishing priorities and expressing views threatens the very principles prosecutors vow to uphold, including prosecutorial independence.

# INTRODUCTION

Andrew H. Warren, twice-elected State Attorney of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, was summarily suspended by Florida Governor Ron DeSantis on August 4, 2022, on the grounds that he was incompetent and neglected his duty because he affixed his name to two public statements on hot-button issues and he promulgated presumptive non-prosecution policies to guide the discretion to be exercised by the 130 Assistant State Attorneys who reported to him. Far from evidencing "incompetence" or "neglect of duty," *amici* submit that Mr. Warren's transparent statements concerning his and his office's prosecutorial priorities are consistent with his professional and ethical duties as an elected prosecutor who answers to the community that elected him.

Further, while no specific exercise of State Attorney Warren's prosecutorial discretion is at issue (rendering the Governor's action even more extraordinary), his implementation of presumptive non-prosecution policies developed collaboratively with law enforcement and the local community is eminently consistent with the relevant professional standards of conduct.

Governor DeSantis's suspension of State Attorney Warren is a deeply concerning effort to control local prosecutorial discretion, thereby undermining the fundamental separation of powers established in the Florida Constitution and the prosecutorial independence vital to fulfilling the state attorney's role.

2

# I.     FACTUAL BACKGROUND

Andrew H. Warren was first elected in November 2016 and re-elected in November 2020, with 369,129 people residing in Hillsborough County choosing him as their State Attorney.  In that role, Warren led an office of approximately 130 prosecutors and 300 total employees.  *See* Compl. ¶ 23, 36, ECF No. 1.   During his tenure, Warren has "been clear with voters that he will … exercise[] his discretion and pursue[] common-sense solutions that further the ultimate goal and job of every prosecutor: seeking justice." *Id*. at ¶ 26.

To that end, beyond more general policies on prosecutorial discretion, Warren implemented specific policies to guide his Assistant State Attorneys' ("ASAs") discretion in particular kinds of cases.  *Id*. at ¶ 38.  Two such policies establish a "presumption of non-prosecution" for certain non-violent crimes, such as unregistered motor vehicle, expired driver's license, failure to notify DMV of address change, disorderly conduct, and panhandling, among others (the "March 2021 Policy") and also in cases "where the initial encounter between law enforcement and the defendant results from a non-criminal violation in connection with riding a bicycle or pedestrian violation" (the "Bike Stop Policy") (jointly, the "Presumptive Non-Prosecution Policies").  *Id*. at ¶ 39, Exhs. 3 & 4. These policies were not developed on a whim, but involved collaboration with law enforcement and community leaders, amid analyses of resources and outcomes.  By their terms, the

3

Presumptive Non-Prosecution Policies commit to the exercise of discretion, permitting the ASAs to deviate from the presumption of non-prosecution if the facts and circumstances merit prosecution.

As an elected official, State Attorney Warren has also consistently stated his positions and values on matters of public importance impacting the criminal justice system. Compl. ¶ 32. In June 2021, Warren co-signed a Joint Statement with other elected prosecutors whose signatories pledged to use their discretion in a manner that would not promote the criminalization of gender-affirming healthcare for transgender people. *Id.* at ¶ 33, (the "Gender Statement"). And on June 24, 2022, Warren co-signed a second Joint Statement with other elected prosecutors expressing the signatories' view that it is the proper exercise of prosecutorial discretion to refrain from prosecuting those who provide or support abortions. *Id.* at ¶ 35, (the "Abortion Statement").

Six weeks later, on August 4, 2022, Florida Governor Ron DeSantis held a press conference in the Hillsborough County Sheriff's Office to announce his issuance of Executive Order 22-176 ("EO") ECF No. 1-1, suspending State Attorney Andrew H. Warren immediately and indefinitely under Florida Constitution Article IV, § 7(a), for "neglect of duty" and "incompetence."

By way of evidence to support this extraordinary action, the Executive Order proffered three reasons:

(1)     Warren's signature on the Gender Statement "prove[s] that Warren thinks he has authority to defy the Florida Legislature and nullify in his jurisdiction criminal laws with which he disagrees" even though the Florida Legislature has not enacted *any* criminal laws concerning transgender people or gender-affirming healthcare, *see* EO at 3, ECF No. 1-1;

(2)     the Presumptive Non-Prosecution Policies "are not a proper exercise of prosecutorial discretion" and "have the effect of usurping the province of the Florida Legislature to define criminal conduct …" *see* EO at 4, ECF No. 1-1; and

(3)     by signing the Abortion Statement, Warren has "declared intent" not to prosecute abortion crimes and thus "there is no reason to believe that Warren will faithfully enforce the abortion laws of this State and properly exercise his prosecutorial discretion on a 'case-specific' and 'individualized' basis." *See* EO at 7, ECF No. 1-1.

The Executive Order does not, however, point to any specific case State Attorney Warren declined to charge; nor does it seriously contend State Attorney Warren issued a blanket, categorical refusal to charge a particular kind of case. On these grounds, Governor DeSantis summarily suspended State Attorney Warren indefinitely from his elected Office and appointed a new State Attorney of his choosing.

## II.     ARGUMENT

For nearly fifty years, the qualities of a good prosecutor – oft-described as "elusive"[1] – have been crystallized and distilled into professional standards,

---

[1]     R. Jackson, <u>The Federal Prosecutor</u>, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940, 24 J. Am. Jud. Soc'y 18 (1940), 31 J. Crim. L. 3 (1940).

including the American Bar Association Criminal Justice Standards for the Prosecution Function, and the National District Attorneys Association National Prosecution Standards, among others. While these standards do not possess the force of law unless courts adopt them, they exemplify best practices for any prosecutor. Bruce A. Green, *Developing Standards of Conduct for Prosecutors and Criminal Defense Lawyers*, 62 Hastings L.J. 1093, 1103-04 (2011). The ABA's Standards, in particular, embody a consensus view of the entire criminal justice community – prosecutors, defense lawyers, judges, and academics – about what good, professional practice is and should be. *Id*. at 1099. The Florida Bar has adopted these standards after "prolonged and careful deliberation." *See* Rules Regulating The Florida Bar, Comment to Rule 4-3.8.

As other *amici* have persuasively and cogently explained, the key attribute of a prosecutor's roles as zealous advocate, administrator of justice, and officer of the court is the exercise of discretion. The ABA Standards guide a prosecutor's conduct and the exercise of his or her discretion, and counsel that a prosecutor's independence from outside influence is paramount. Where, as here, a prosecutor's conduct satisfies these standards and comport with other professional norms he cannot be considered derelict in his duty.

> **A. State Attorney Warren's Transparency as to His Policy Views Properly Promotes Electoral Accountability Consistent with Ethical and Professional Standards.**

6

Elected officials, such as the State Attorney, "have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office." *Bond v. Floyd*, 385 U.S. 116, 136-37 (1966). Beyond this, "the prosecutor should seek to reform and improve the administration of criminal justice, and when inadequacies or injustices in the substantive or procedural law come to the prosecutor's attention, [he or she] should stimulate and support efforts for remedial action." ABA Standard 3-1.2(f); National Prosecution Standards 1-1.2 ("A prosecutor should seek to reform criminal laws whenever it is appropriate and necessary to do so.").

Affixing his signature to the two Joint Statements, policy papers intended to express a point of view and not supplant discretion in individual cases, was thus consistent with State Attorney Warren's professional duty to actively participate in efforts which he believes stimulate reform or improvement of the criminal justice system. Of course, improvement in one person's mind may equate to destruction in another. For instance, some prosecutors in Virginia and elsewhere declared their counties to be "Second Amendment Sanctuaries," in which their offices would not file criminal charges under proposed gun control laws being debated in their state legislatures because, in their view, the bills violated the constitutional right to bear

7

arms.[2]  Had State Attorney Warren expressed a strong view opposed to gun control laws, would he have been suspended from office?

Elected prosecutors' public statements on controversial questions of criminal law or procedure are not unethical or unprofessional but fulfill their professional obligation to promote law reform while enabling constituents to assess their views on policy relevant to their work. Such broad policy expressions do not dictate how a prosecutor will exercise his or her discretion in an individual case.  Both the Gender Statement and Abortion Statement are clear that they do not supplant the individual exercise of discretion – nor prejudge the merit of a specific case – even while they indicate that the signatories believe that criminalizing transgender healthcare and abortion is unjust.[3]  The Joint Statements are thus in nature and kind entirely distinct from a categorical refusal to prosecute, like the statement at issue in *Ayala v. Scott*, 224 So. 3d 755, 758-59 (2017) (state attorney announcement that she will not seek the death penalty in the cases handled in her office, even where an individual

---

[2]     *See* Shawn E. Fields, *Second Amendment Sanctuaries*, 115 Nw. U. L. Rev. 437, 496-97 (2020); *In Virginia and Elsewhere, 2nd Amendment "Sanctuary" Movement Aims to Defy New Gun Laws*, L.A. Times (Dec. 21, 2019), available at: https://www.latimes.com/world-nation/story/2019-12-21/second-amendment-sanctuary-push-aims-to-defy-new-gun-laws (last accessed August 27, 2022). At least one Florida Sheriff has expressed a similar view.  *See* Pl. Memo. ISO Prelim. Inj., ECF No. 3-1, at 15.

[3]     Although it appears that this case is analogous to *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) (Scalia, J.), in which the Supreme Court held that it was unconstitutional to muzzle judicial candidates, *amici* express no view on the First Amendment issue.

"absolutely deserves the death penalty" abdicates the responsibility to exercise discretion). The voters are entitled to know who they are electing, and his or her priorities.[4]

**B.** **Presumptive Non-Prosecution Policies Like Those Implemented by State Attorney Warren Are an Accepted Use of Prosecutorial Discretion Consistent with Ethical and Professional Standards**.

A prosecutor cannot pursue each violation of the criminal code – there are simply not enough resources, at any level of government, to do so. He or she must exercise discretion and establish priorities. The chief prosecutor, such as the State Attorney, also cannot make every decision in every case brought to his or her office. It is thus natural and expected, consistent with professional standards, that he or she will promulgate policies to guide the line prosecutor's exercise of discretion. *See* ABA Standard 3-2.4(a) ("Each prosecutor's office should seek to develop general policies to guide the exercise of prosecutorial discretion, and standard operating procedures for the office. The objectives of such policies and procedures should be to achieve fair, efficient, and effective enforcement of the criminal law within the prosecutor's jurisdiction.").

---

[4]    Recently, in response to the changing politics of crime in the United States, more prosecutors have gone public with their enforcement priorities and often campaign on them.  There are prosecutors who campaign on the promise to decline most or all charges for possession of small amounts of marijuana, or for jumping turnstiles to ride the subway, or for violating social-distancing laws designed to prevent the spread of COVID-19. *See* Ronald F. Wright, *Prosecutors and Their State and Local Polities*, 110 J. CRIM. L. & CRIMINOLOGY 823, 831 (2020).

Such policies governing discretion and establishing priorities for enforcement are common at all levels of government.[5] It is thus legitimate – indeed, laudatory – to adopt internal policies guiding the exercise of discretion, in part to ensure that similarly-situated cases are treated similarly in a large office where the elected prosecutor cannot make all the decisions, but also to embody the elected prosecutor's priorities and criminal justice philosophy. Astonishingly, State Attorney Warren has now been penalized for adopting presumptive policies to guide his line prosecutors' discretion that not only demonstrate his criminal justice philosophy but also account for the priorities of the community he served and the resources at his disposal. [6]

Furthermore, publishing such policies is also appropriate and ethical. *See* ABA Prosecution Function Standard 3-2.4(c) ("Prosecution office policies and procedures whose disclosure would not adversely affect the prosecution function should be made available to the public."). There are societal benefits to doing so.

---

[5]    *See* Ellen S. Podgor, Department of Justice Guidelines: Balancing "Discretionary Justice," 13 Cornell J. L. & Pub. Pol'y 167, 170-75 (2004) (describing provisions of U.S. Attorneys' Manual, including those that "provide guidance in a wide array of areas such as charging"); U.S. Dep't of Just., United States Attorneys' Written Guidelines for the Declination of Alleged Violations of Federal Criminal Laws: A Report to the United States Congress (1981). More recently, DOJ has implemented a presumptive declination policy for Foreign Corrupt Practices Act violations in cases that meet certain criteria (prompt self-disclosure and full remediation). *See* Justice Manual § 9-41.120, FCPA Corporate Enforcement Policy.

[6]    Though the Governor's Executive Order characterizes State Attorney Warren's policies as categorical refusals to prosecute certain criminal statutes, EO at 4, ECF No. 1, this is mere pretext belied by the policies' clear terms.

8402899.1

Aside from fostering trust in the fairness and justice of prosecutorial decision-making, by announcing his or her enforcement priorities and policies, the chief prosecutor sparks a debate among the community and other actors within the criminal justice system about the wisdom of those choices – and faces electoral accountability for them.  As one early 20th century prosecutor put it, when admitting he never enforced the liquor possession law, "we do not think of enforcing this law, and if we did, we would not get enough votes at the ensuing election to tell of the existence of the franchise." *See* Schuyler C. Wallace, *Nullification: A Process of Government*, Political Science Quarterly, Vol. 45, No. 3 (Sept. 1930), pp. 347-358 at 355.

A chief prosecutor's publication of the rules that will guide the exercise of discretion by the prosecutors under her or his supervision promotes greater accountability to the voters who elected him, and who, should they disagree with such policies, have the power not to retain him in office in the next election.

### C. Suspending State Attorney Warren for Expressing Policy Views and Establishing Priorities Undermines Both Prosecutorial Independence and Discretion.

"The prosecutor generally serves the public and not any particular government agency [or executive], law enforcement officer or unit, witness or victim." *See* ABA Standard 3-1.3. In this regard, "[t]he public's interests and views should be determined by the chief prosecutor and designated assistants in the jurisdiction." *Id*.

11

In Florida, the chief local prosecutor is the state attorney, who shall: "be elected for a term of four years;" "reside in the territorial jurisdiction of the circuit;" and "be the prosecuting officer of all trial courts in [his] circuit, [e]xcept as otherwise provided in this constitution." Art. V, § 17, Fla. Const.

Elected state attorneys do not answer to the governor or to any other state executive. Rachel E. Barkow, *Federalism and Criminal Law: What the Feds Can Learn from the States*, 109 Mich. L. Rev. 519, 556 (2011) ("In most states, the relationship between state-level and local prosecutors is coordinate, not hierarchical, with the exception of appellate jurisdiction."); *see also* Wayne R. LaFave et al., *Checking the Prosecutor's Discretion*, 4 Crim. Proc. § 13.2(g) (4th ed. 2016) ("The prosecution function has traditionally been decentralized, so that state attorneys-general exercise no effective control over local prosecutors.")

Rather, these officials, State Attorney Warren among them, are accountable to the local electorate, "this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused." *Austin v. State ex rel. Christian*, 310 So. 2d 289, 293-94 (Fla. 1975). Indeed, it is the local populace "who most immediately feel[s] the effects of [a local prosecutor's] work to promote public safety." *See* Wright, 110 Crim. L. & Criminology at 826-827. Prosecutors elected locally are better able to make decisions that take into account how the community and constituents generally believe justice is served. *See* Robert L.

12

Misner, *Recasting Prosecutorial Discretion*, 86 J. Crim. L. & Criminology 717, 731 (1996) ("The history of the development of the office of prosecutor has the clear theme … of 'local representation applying local standards to the enforcement of essentially local laws.'"); William T. Pizzi, *Understanding Prosecutorial Discretion in the United States: The Limits of Comparative Criminal Procedure as an Instrument of Reform*, 54 Ohio St. L.J. 1325, 1342 (1993) ("[P]rosecutorial discretion in the American legal system must be seen as part of a political tradition that is built on a preference for *local control* over political power and on an aversion to strong centralized governmental authority and power."). (emphasis in original)

Nonetheless, Florida Governor Ron DeSantis has indefinitely suspended twice-elected State Attorney Andrew Warren for "neglect of duty" and "incompetence" for making statements about his policy views (with which the Governor disagrees) and establishing priorities in a manner consistent with his ethical and professional duties as state attorney. Even more remarkable, no specific exercise of State Attorney Warren's discretion – or refusal to exercise such discretion – is at issue. Instead, it appears the Governor has confused the power to remove with the power to control. *See Whiley v. Scott*, 79 So. 3d 702, 715 (Fla. 2011) ("The power to remove is not analogous to the power to control."). Suspending State Attorney Warren for what can only be characterized as purely partisan reasons – that is, as punishment for publicly expressing public policy positions with which the

13

Governor disagrees – runs counter to professional standards of conduct, *see* ABA Standard 3-2.5(c) ("suspension or substitution of a prosecutor should not be permitted for improper or irrelevant partisan or personal reasons"), usurps the will and power of the electorate, and eviscerates the carefully crafted separation of powers erected in the Florida Constitution.

## CONCLUSION

On August 4, 2022, Florida Governor Ron DeSantis mounted a disturbing attack on democracy and the rule of law when he suspended State Attorney Warren for political reasons after Warren co-signed public Joint Statements on questions of criminal justice policy that did not bind him to make any specific decision in future cases. The Governor's suspension of Warren cannot plausibly be predicated on Warren's "neglect of duty" or "incompetence," but can only be understood as a reaction against public policy positions that Warren publicly expressed as Hillsborough County's elected chief prosecutor.

Date: August 30, 2022                    Respectfully submitted,

                                         /s/ *Sara Alpert Lawson*
                                         Sara Alpert Lawson
                                         Morris "Sandy" Weinberg, Jr.
                                         ZUCKERMAN SPAEDER LLP
                                         101 E. Kennedy Blvd., Suite 1200
                                         Tampa, Florida 33602
                                         Tel.: 813-221-1010
                                         Fax: 813-223-7961

8402899.1

slawson@zuckerman.com
sweinberg@zuckerman.com

*Attorneys for Amici Curiae*

/s/ *Ellen Yaroshefsky*
Ellen Yaroshefsky
Howard Lichtenstein Prof. of Legal Ethics
Director-Monroe Freedman Institute for the
Study of Legal Ethics
Maurice A. Deane School of Law
Hofstra University
121 Hofstra Boulevard
Hempstead, New York, NY 11549
Tel.: 516-463-5882
Yaroshef@hofstra.edu

/s/ *Bruce A. Green*
Bruce A. Green
*Louis Stein Chair*
*Director, Louis Stein Center for Law and*
*Ethics*
Fordham University School of Law
150 West 62nd Street
New York, NY 10023
Tel.: 212- 636-6851
bgreen@law.fordham.edu

*Lead Amici Curiae*

## LOCAL RULE 7.1 CERTIFICATE

I hereby certify that the foregoing brief contains 3,987 words, excluding the

items listed in Local Rule. 7.1(F).

By:  /s/ *Sara Alpert Lawson*
Sara Alpert Lawson

8402899.1

## CERTIFICATE OF SERVICE

I hereby certified that on this 30th day of August, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida through CM/ECF systems, which will serve a true and correct copy on all counsel of record who have consented to electronic service.

By: _/s/ Sara Alpert Lawson_
Sara Alpert Lawson

8402899.1

# APPENDIX A

## LEAD *AMICI*:

**Bruce Green**
Louis Stein Chair of Law and Director, Stein Center
Fordham University School of Law

**Ellen Yaroshefsky**
Howard Lichtenstein Professor of Legal Ethics
Director-Monroe Freedman Institute for the Study of Legal Ethics
Maurice A. Deane School of Law at Hofstra University

## LIST OF *AMICI*

**Richard Abel**
Connell Distinguished Professor of Law Emeritus and Distinguished Research Professor
UCLA School of Law

**Anthony Alfieri**
Dean's Distinguished Scholar and Director-Center for Ethics and Public Service
University of Miami School of Law

**Peter Arenella**
Emeritus Professor of Law
UCLA School of Law

**David Ball**
Professor of Law
Santa Clara School of Law

**Susan Bandes**
Centennial Professor of Law Emeritus
DePaul University College of Law

**Paul Bennett**
Charles E. Ares Professor of Law and Director, Child and Family Law Clinic
University of Arizona-James E. Rogers College of Law

**Michael Benza**
Senior Instructor of Law
Case Western Reserve University School of Law

**Alberto Bernabe**
Professor of Law
University of Illinois Chicago School of Law

**Anita Bernstein**
Stuart Subotnick Professor of Law
Brooklyn Law School

**Bobbi Jo Boyd**
Associate Professor of Law
Campbell Law School

**Bruce Boyer**
Curt and Linda Rodin Professor of Law and Social Justice, Director-Loyola
ChildLaw Clinic Loyola University Chicago School of Law

**Katherine Broderick**
Dean Emerita
University of the District of Columbia David A. Clarke School of Law

**Carol Buckler**
Emerita Professor of Law
New York Law School

**Sande Buhai**
Clinical Professor and Director, Public Interest Law Dept.
Loyola Law School, Los Angeles

**John Burkoff**
Professor of Law Emeritus
University of Pittsburgh School of Law

**Jay Carlisle**
Professor of Law Emeritus
Elisabeth Haub School of Law at Pace University

8402899.1

**Michael Cassidy**
Professor and Dean's Distinguished Scholar
Boston College Law School

**Christine Cerniglia**
Associate Professor, Director of Clinical and Experiential Education
Stetson University College of Law

**Gabriel Chin**
Edward L. Barrett Jr. Chair & Martin Luther King Jr. Professor of Law
Director of Clinical Legal Education
University of California Davis School of Law

**Donna Kay Coker**
Professor of Law
University of Miami School of Law

**Doug Colbert**
Professor of Law
University of Maryland School of Law

**Liz Ryan Cole**
Professor of Law Emerita
Vermont Law School

**Benjamin Cooper**
Senior Associate Dean and Frank Montague, Jr. Professor of Legal Studies and
Professionalism University of Mississippi School of Law

**Scott Cummings**
Visiting Professor of Law
University of California Hastings College of Law

**Angela Davis**
Distinguished Professor of Law
American University Washington College of Law

**Brittany Deitch**
Assistant Professor of Law
Capital University Law School

**Anthony Dillof**
Professor of Law
Wayne State University Law School

**Joshua Dressler**
Distinguished University Professor Emeritus
Michael E. Moritz College of Law, The Ohio State University

**Jules Epstein**
Edward D. Ohlbaum Endowed Term Professor and Director of Advocacy Programs
Temple Beasley School of Law

**Charles Ewing**
SUNY Distinguished Service Professor and Professor of Law Emeritus
State University of New York

**Jeffrey Fagan**
Isidor and Seville Sulzbacher Professor of Law
Columbia Law School

**Heidi Li Feldman**
Professor of Law
Georgetown University Law Center

**Shawn Fields**
Assistant Professor of Law
Campbell Law School

**Roberta Flowers**
Professor of Law and Director, Center for Excellence in Elder Law
Stetson University College of Law

**Stephen Galoob**
Chapman Professor of Law
University of Tulsa College of Law

**Michael Gentithes**
Associate Dean of Academic Affairs
University of Akron School of Law

8402899.1

**Cynthia Godsoe**
Professor of Law
Brooklyn Law School

**Arthur Greenbaum**
James W. Shocknessy Professor of Law
Michael E. Moritz College of Law, The Ohio State University

**Lissa Griffin**
Professor of Law
Elisabeth Haub School of Law at Pace University

**Catherine Grosso**
Professor of Law
Michigan State University College of Law

**Jennifer Gundlach**
Emily and Stephen Mendel Distinguished Professor of Law and Clinical Professor of Law
Maurice A. Deane School of Law at Hofstra University

**David Harris**
Sally Ann Semenko Endowed Chair, Professor of Law
University of Pittsburgh School of Law

**Lawrence Hellman**
Professor Emeritus and Dean Emeritus
Oklahoma City University School of Law

**Carissa Byrne Hessick**
Anne Shea Ransdell and William Garland "Buck" Ransdell, Jr. Distinguished Professor of Law University of North Carolina School of Law

**Alexis Hoag-Fordjour**
Assistant Professor of Law
Brooklyn Law School

**Babe Howell**
Professor of Law
City University of New York School of Law

8402899.1

**Daniel Kobil**
Professor of Law
Capital University Law School

**Katie Kronick**
Assistant Professor of Law, Director-Criminal Defense and Advocacy Clinic
University of Baltimore School of Law

**Katherine R. Kruse**
Professor of Law
Mitchell Hamline School of Law

**Jennifer Laurin**
Wright C. Morrow Professor of Law
University of Texas School of Law

**Laurie Levenson**
Professor of Law and David W. Burcham Chair in Ethical Advocacy
Loyola Law School

**Kay Levine**
Professor of Law
Emory Law School

**Rory Little**
Joseph W. Cotchett Professor of Law
University of California Hastings College of Law

**Steven Lubet**
Williams Memorial Professor Emeritus
Northwestern University Pritzker School of Law

**Peter Margulies**
Professor of Law
Roger Williams University School of Law

**Milan Markovic**
Professor of Law & Presidential Impact Fellow
Texas A&M University School of Law

8402899.1

**Lynn Mather**
Distinguished Service Professor Emerita
University at Buffalo School of Law

**Kevin McMunigal**
Krupansky & Vargo Professor of Law
Case Western Reserve University School of Law

**Daniel Medwed**
University Distinguished Professor
Northeastern University School of Law

**Carrie Menkel-Meadow**
Distinguished Professor of Law (and Political Science)
University of California, Irvine Law School

**Pamela Metzger**
Professor of Law and Director-Deason Criminal Justice Reform Center
SMU Dedman School of Law

**Eric Miller**
Professor and Leo J. O'Brien Fellow, Director-Loyola Anti-Racism Center
Loyola Law School, Loyola Marymount University

**Michael Millemann**
Jacob A. France Professor of Law
University of Maryland School of Law

**Ronald Minkoff**
Partner, Litigation Group and Chair, Professional Responsibility Group
Frankfurt Kurnit Klien & Selz PC

**Caren Myers Morrison**
Associate Professor
Georgia State University College of Law

**Carol Needham**
Emanuel Myers Professor of Law
Saint Louis University School of Law

8402899.1

**Jerry Norton**
Professor Emeritus
Loyola University Chicago School of Law

**Kenneth Nunn**
Professor of Law and
Dr. Patricia Hilliard-Nunn Memorial Racial Justice Term Professor (2021-22)
University of Florida Levin College of Law

**Timothy O'Neill**
Professor Emeritus
University of Illinois Chicago School of Law

**Aviva Anne Orenstein**
Professor of Law
Indiana University Maurer School of Law

**Lauren Ouziel**
Professor of Law
Temple University Beasley School of Law

**Russell Pearce**
Edward & Marilyn Bellet Chair in Legal Ethics, Morality and Religion
Fordham University School of Law

**Michael Perlin**
Professor Emeritus of Law and Founding Director,
International Mental Disability Law Reform Project and
Co-Founder, Mental Disability Law and Policy Associates
New York Law School

**Ellen S. Podgor**
Gary R. Trombley Family White-Collar Crime Research Professor
Stetson University College of Law

**Burnele Powell**
Distinguished Professor Emeritus,
Miles and Ann Loadholt Chair of Law Emeritus
University of South Carolina School of Law

8

**Albert T. Quick**
Dean and Professor of Law Emeritus
University of Toledo College of Law

**Brenda Quick**
Professor of Law
Michigan State University College of Law

**Nancy Rapoport**
Distinguished Professor and Garman Turner Gordon Professor of Law
William S. Boyd School of Law, University of Nevada Las Vegas

**Teresa Jean Reid**
Emeritus Master Legal Skills Professor and Emeritus Assistant Director, Criminal
Justice Center University of Florida Levin College of Law

**Kim D. Ricardo**
Professor of Law and Director, Lawyering Skills Program
University of Illinois College of Law

**Ira Robbins**
Barnard T. Welsh Scholar and Professor of Law
American University Washington College of Law

**Jenny Roberts**
Professor of Law and Co-Director, Criminal Justice Clinic
American University Washington College of Law

**Andra Robertson**
John Deaver Drinko-BakerHostetler Professor of Law and Director,
Center for Professional Ethics
Case Western Reserve University School of Law

**Robert Rosen**
Professor of Law
University of Miami School of Law

**Josephine Ross**
Professor of Law
Howard University School of Law

8402899.1

**David Rossman**
Professor of Law
Boston University Law School

**Susan Rozelle**
Professor of Law
Stetson University College of Law

**David Rudovsky**
Senior Fellow
University of Pennsylvania Law School

**Natsu Saito**
Regents' Professor Emerita
Georgia State University College of Law

**Stephen A. Saltzburg**
Wallace and Beverley Woodbury University Professor
The George Washington University Law School

**Jack Sammons**
Griffin B. Bell Professor of Law Emeritus
Mercer Law School

**Paula Schaefer**
Associate Dean for Academic Affairs,
Art Stolnitz Professor of Law
University of Tennessee College of Law

**David Siegel**
Professor of Law, Director-Center for Law and Social Responsibility
New England Law

**David A. Singleton**
Professor of Law and Director, Constitutional Litigation Clinic
Northern Kentucky University Chase College of Law

**Cliff Sloan**
Distinguished Visitor from Practice
Georgetown University Law Center

8402899.1

**Abbe Smith**
Scott A. Ginsburg Professor of Law and Director, Criminal Defense & Prisoner
Advocacy Clinic and Co-Director, E. Barrett Prettyman Fellowship Program
Georgetown University Law Center

**Vincent Southerland**
Assistant Professor of Clinical Law, Director-Criminal Defense and Reentry Clinic
Co-Faculty Director, Center on Race, Inequality and the Law
New York University School of Law

**Hugh D. Spitzer**
Professor of Law
University of Washington School of Law

**Jeff Stempel**
Doris S. & Theodore B. Lee Professor of Law
William S. Boyd School of Law, University of Nevada Las Vegas

**John Strait**
Professor Emeritus
Seattle University School of Law

**Dean Strang**
Distinguished Professor in Residence
Loyola University Chicago School of Law

**Ron Sullivan**
Jesse Climenko Clinical Professor of Law and Director,
Criminal Justice Institute and Director, Trial Advocacy Workshop
Harvard Law School

**Cara Suvall**
Associate Clinical Professor of Law
Vanderbilt University Law School

**Elizabeth Tanaka**
Visiting Assistant Professor of Law
Quinnipiac University School of Law

11

**Lance Tibbles**
Professor of Law Emeritus
Capital University Law School

**Paul Tremblay**
Clinical Professor of Law and Director, Community Enterprise Clinic
Boston College Law School

**Rodney Uphoff**
Elwood Thomas Missouri Endowed Professor Emeritus of Law
University of Missouri School of Law

**Benjamin Varadi**
Assistant Professor
Vermont Law School

**Jonathan A. Weiss**
Director, Judicial Ethics Research and Development, Inc.

**Jodi Wilson**
Associate Dean of Academic Affairs, Associate Professor of Law
The University of Memphis-Cecil C. Humphreys School of Law

**Jordan Blair Woods**
Professor of Law
University of Arizona-James E. Rogers College of Law

**Ron Wright**
Needham Y. Gulley Professor of Criminal Law,
Associate Dean for Research and Academic Programs
Wake Forest University School of Law

**Richard Zitrin**
Lecturer in Law
University of California Hastings College of Law

8402899.1