# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW H. WARREN,

    Plaintiff,

v.                                          Case No. 4:22cv302-RH-MAF

RON DESANTIS, individually and in
his official capacity as Governor of the
State of Florida

    Defendant.

**BRIEF OF *AMICUS CURIAE* CONSTITUTION REVISION COMMISSION MEMBERS AND STATE CONSTITUTIONAL LAW SCHOLARS IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION AND ANY FUTURE DISPOSITIVE MOTIONS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF INTEREST OF *AMICI CURIAE* ...................................................................1

ARGUMENT .........................................................................................................................2

I.  "Neglect of Duty" and "Incompetence" Have Well-Established Meanings in the Context of State Officer Suspension and Removal. .............................................2

    A.  These Concepts Have Been Part of Florida's Constitutional Fabric for More Than 150 Years. ...................................................................................2

    B.  "Neglect of Duty" and "Incompetence" Have Long Been Understood to Concern Mandatory Responsibilities of Public Office. ..........................................3

II. Governor DeSantis's Executive Order Does Not Describe Actions That Constitute "Neglect of Duty" or "Incompetence." ...............................................................5

    A.  The Executive Order's Allegations Do Not Relate to Any Mandatory Responsibility of the Office of State Attorney. .......................................................5

    B.  Constitutional Avoidance Principles Confirm that the Grounds for Warren's Suspension Do Not Qualify as "Neglect of Duty" or "Incompetence." ..................8

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*In re Advisory Opinion to the Governor*, 213 So. 2d 716 (Fla. 1968) ............................................. 4

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ................................................. 8

*Bond v. Floyd*, 385 U.S. 116 (1966) ............................................................................................... 10

*Crowder v. State ex rel. Baker*, 285 So. 2d 33 (4th DCA 1973) ....................................................... 4

*Franklin v. State*, 887 So. 2d 1063 (Fla. 2004) ................................................................................. 8

*Hiers v. Mitchell*, 116 So. 81 (Fla. 1928) .......................................................................................... 8

*Houston Community College System v. Wilson*, 142 S. Ct. 1253 (2022) ....................................... 10

*Israel v. DeSantis*, 269 So. 3d 491 (Fla. 2019) ......................................................................... 4, 5, 7

*Reynolds v. Sims*, 377 U.S. 533 (1964) ............................................................................................. 1

*State ex rel. Hardee v. Allen*, 172 So. 222 (Fla. 1937) ..................................................................... 7

*State ex rel. Hardie v. Coleman*, 155 So. 129 (Fla. 1934) ..................................................... 1, 3, 4, 7

*State v. Presidential Women's Center*, 937 So. 2d 114 (Fla. 2006) ............................................. 8, 9

*Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008) ............................................ 1

**CONSTITUTIONAL PROVISIONS**

Fla. Const. art. IV, § 7(a) (1968) ....................................................................................................... 2

Fla. Const. art. IV, § 15 (1885) ......................................................................................................... 2

Fla. Const. art. IV, § 22 (1865) ......................................................................................................... 2

Fla. Const. art. IV, § 26 (1861) ......................................................................................................... 2

Fla. Const. art. V, § 19 (1868) .......................................................................................................... 2

**OTHER AUTHORITIES**

1984 Fla. Op. Att'y Gen. 43 (1984) ................................................................................................... 4

*ABA Criminal Justice Standards* § 3.1.2(b) (4th ed. 2017) .............................................................. 6

10 Fla. Jur 2d Constitutional Law § 38, Westlaw (2d ed., database updated June
   2022) ............................................................................................................................................. 8

ii

10 Fla. Jur 2d Constitutional Law § 58, Westlaw (2d ed., database updated June 2022) ............................................................................................................................. 10

Fla. Const. Rev. Comm'n, *Analysis of the Revisions for the November 1998 Ballot*, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/tabloid.html (last visited Aug. 30, 2022) ................................................................ 3

Fla. Const. Rev. Comm'n, *Florida's Constitutions: The Documentary History*, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/conhist/contents.html (last visited Aug. 30, 2022) ........................................................... 3

Fla. Const. Rev. Comm'n, *Meeting Proceedings for January 28, 1998*, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/minutes/crcminutes012898.html (last visited Aug. 30, 2022) ..................................................... 3, 9

*Webster's Seventh New Collegiate Dictionary* 424 (1967) ............................................................. 5

Joseph E. Worcester, *A Dictionary of the English Language* 456 (1860) ...................................... 3

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici curiae* are members of Florida's 1997-1998 Constitution Revision Commission and state constitutional law scholars.[1] *Amici*'s participation in the Constitution Revision Commission that most recently amended the relevant state constitutional provision and *Amici*'s expertise in state constitutional interpretation enable them to bring broader perspectives than those of the parties regarding the application of Article 4, § 7(a) to the facts alleged in Governor DeSantis's executive order ("the Order") suspending Andrew Warren from elected office.

In deciding whether Andrew Warren is "likely to succeed on the merits" of his quo warranto claim, *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008), this Court must determine whether the "allegations of fact" set forth in Governor DeSantis's executive order are likely "sufficient to constitute" "neglect of duty" or "incompetenc[e]" under the Florida Constitution, *State ex rel. Hardie v. Coleman*, 155 So. 129, 133 (Fla. 1934). In *Amici*'s opinions, the Governor's allegations are nowhere near sufficient.

As the Florida Supreme Court made clear nearly a century ago, the Governor's suspension power "is not an arbitrary one"; it is "guarded by constitutional limitations which should be strictly followed." *Id.* at 135. *Amici* recognize the role of these constitutional limitations as critical safeguards of the stability and endurance of Florida's democratic system of government. Democracy requires that the will of the people as expressed in elections be respected. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society[.]"). If Governors were permitted to suspend State Attorneys because of their prosecutorial priorities and replace them with attorneys whose priorities mirror

---

[1] A full list of *Amici* is attached as Appendix A.

their own, Florida's electoral process for the office of State Attorney—and potentially all elected state officers—would be virtually meaningless.

## ARGUMENT

I. **"Neglect of Duty" and "Incompetence" Have Well-Established Meanings in the Context of State Officer Suspension and Removal.**

   A. *These Concepts Have Been Part of Florida's Constitutional Fabric for More Than 150 Years.*

The grounds Governor DeSantis invoked for suspending Andrew Warren are deeply rooted in Florida's constitutional history. The earliest iteration of these grounds appears in Florida's 1861 Constitution, which provided that "[o]fficers shall be removed from office for incapacity, misconduct, or neglect of duty." Fla. Const. art. IV, § 26 (1861). Every subsequent iteration of the Florida Constitution limits the Governor's authority to suspend or remove state officers to a similar set of enumerated grounds. *See* Fla. Const. art IV, § 22 (1865) ("incapacity, misconduct or neglect of duty"); Fla. Const. art. V, § 19 (1868) ("wil[l]ful neglect of duty, or a violation of the criminal laws of the State, or for incompetency"); Fla. Const. art. IV, § 15 (1885) ("malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency").

Florida's 1968 constitution introduced the grounds for suspension that remain in force today: "malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony." Fla. Const. art. IV, § 7(a) (1968). This provision was amended most recently in 1998, following a comprehensive review of the Florida Constitution by a 37-member Commission whose members include multiple *Amici*. The Commission traveled the State over a yearlong period, meeting dozens of times to examine and propose constitutional amendments—including amendments to Article IV, § 7(a). The amendments ultimately proposed by the Commission and approved by the voters were "technical"

rather than substantive. Fla. Const. Rev. Comm'n, *Florida's Constitutions: The Documentary History*, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/conhist/contents.html (last visited Aug. 30, 2022).[2] The Commission did not alter the longstanding scope of the Governor's suspension authority—including the "terms of art that have been used in connection with executive suspensions forever, throughout Florida history." Fla. Const. Rev. Comm'n, *Meeting Proceedings for January 28, 1998* at 35:14–16, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/minutes/crcminutes012898.html (last visited Aug. 30, 2022).

### B.     *"Neglect of Duty" and "Incompetence" Have Long Been Understood to Concern Mandatory Responsibilities of Public Office.*

"Neglect of duty" as used in the Florida Constitution's officer suspension provision means—and has meant for generations—a failure to satisfy a requirement of public office. At the time "neglect of duty" made its first appearance in the State's constitution, "duty" was defined as an "obligation," or something a person is "bound to do, to or refrain from doing." Joseph E. Worcester, *A Dictionary of the English Language* 456 (1860). In 1934, the Florida Supreme Court explained that the term "has reference to the neglect or failure on the part of a public officer to do and perform some duty or duties laid on him as such by virtue of his office or which is required of him by law." *Hardie*, 155 So. at 132.

Florida courts' understanding of "duty" as concerning a mandatory obligation has not changed. *See Israel v. DeSantis*, 269 So. 3d 491, 496 (Fla. 2019) (quoting *Hardie*, 155 So. at 132); *see also* 1984 Fla. Op. Att'y Gen. 43 n.1 (1984) (explaining that "cases decided under [the 1885]

---

[2] Section 7(a) was revised in 1998 only to remove the "gender-specific reference[]" to state officeholders and to require filing of the executive order with "the custodian of state records" rather than the "secretary of state." Fla. Const. Rev. Comm'n, *Analysis of the Revisions for the November 1998 Ballot*, FSU Law Library, http://library.law.fsu.edu/Digital-Collections/CRC/CRC-1998/tabloid.html (last visited Aug. 30, 2022).

3

version of the suspension power are useful precedents for the current § 7(a), Art. IV"); *Crowder v. State ex rel. Baker*, 285 So. 2d 33, 34 (4th DCA 1973) (same). The Florida Supreme Court's most recent analysis of § 7(a) further expounded on the term "neglect of duty" with the aid of a dictionary definition that emphasized the mandatory nature of the obligation at issue. Specifically, the Court looked to *Webster's Seventh New Collegiate Dictionary*, which defined "duty" "in part as 'the action *required* by one's position or occupation,'" as well as the *American Heritage Dictionary*'s definition of "duty" as "[a]n act or a course of action that is *required* of one by position, social custom, law, or religion." *Israel*, 269 So. 3d at 496 (quoting *Webster's Seventh New Collegiate Dictionary* 259 (1967) and *American Heritage Dictionary* 573 (3d ed. 1992) (emphasis added)).

"Incompetence" as a ground for officer suspension likewise concerns requirements of public office. Florida courts have long described the term as "refer[ring] to any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the *duties* of his office." *Hardie*, 155 So. at 133 (emphasis added); *see Israel*, 213 So. 3d at 496 (same); *In re Advisory Opinion to the Governor*, 213 So. 2d 716, 718 (Fla. 1968) (same). The Florida Supreme Court has also favorably cited the Supreme Court of Alabama's conclusion that the term stands for "little, if anything, … other than mere incapacity for the performance of *duties* devolved by law on the official in respect of the particular office he fills." *In re Advisory Opinion to the Governor*, 213 So. 2d at 720 ((emphasis added) quoting *State ex rel. Brickell v. Martin*, 61 So. 491, 494 (Ala. 1913)). The dictionary on which the Florida Supreme Court relied in *Israel* similarly defines "incompetence" with reference to mandatory requirements: "lacking the qualities *necessary* to effective independent action." *Webster's Seventh New Collegiate Dictionary* 424 (1967) (emphasis added).

## II. Governor DeSantis's Executive Order Does Not Describe Actions That Constitute "Neglect of Duty" or "Incompetence."

The question for this Court is "whether the executive order, on its face, sets forth allegations of fact relating to" "neglect of duty" or "incompetence" as defined above. *Israel*, 269 So. 3d at 495-96. *Amici* respectfully submit that the answer is no. Andrew Warren exercised his First Amendment right to state opinions that are contrary to the Governor's opinions on several policy issues. The Order does not even allege that Warren has acted on those opinions. Without such action, he cannot have committed one of the sins that would authorize the Governor to suspend him under settled Florida constitutional law.

### A. *The Executive Order's Allegations Do Not Relate to Any Mandatory Responsibility of the Office of State Attorney.*

The factual allegations in Governor DeSantis's executive order point to the following "actions and omissions" as constituting "'neglect of duty' and 'incompetence' for the purposes of Article IV, section 7 of the Florida Constitution." ECF No. 3-4 at 9.

- Andrew Warren "signed a 'Joint Statement' with other elected prosecutors in support of gender-transition treatments for children and bathroom usage based on gender identity," pledging "to use our discretion and not promote the criminalization of gender-affirming healthcare." *Id*. at 3. (Gender-affirming healthcare has not been criminalized in Florida. *Id*.)

- Andrew Warren "signed a 'Joint Statement … with other elected prosecutors" in opposition to "[c]riminalizing and prosecuting individuals who … provide abortion care," pledging to "exercise [his] well-settled discretion" accordingly. *Id*. at 6. (Florida law criminalizes some but not all abortions. *Id.* at 5.)

- Andrew Warren instituted policies of "presumptive non-prosecution" for certain violations, such as disorderly conduct and disorderly intoxication. *Id*. at 3–4.

5

None of these allegations concerns decisions Andrew Warren has made regarding whether to prosecute any particular instance of criminal activity. While the Order makes the point that "'blanket refusal' to enforce a criminal law is not an exercise of prosecutorial discretion," it identifies no "blanket refusal" that has occurred. *Id*. at 2. Indeed, the Order's conclusions regarding Andrew Warren's exercise of his duties as State Attorney are phrased in the future tense. The Order predicts that Warren "*will* not prosecute violations of Florida criminal laws that prohibit providers from performing certain abortions"; it asserts that "there is no reason to believe that Warren *will* faithfully execute the abortion laws of this State"; and it claims that Warren "*will* exercise no discretion at all in entire categories of criminal cases." *Id*. at 6–8 (emphasis added).

Governor DeSantis's executive order does not come close to describing "neglect of duty" or "incompetence" within the meaning of § 7(a) because the Order does not accuse Andrew Warren of conduct that contravenes any requirement of the office of State Attorney. To the contrary, the gravamen of Governor DeSantis's complaint concerns Andrew Warren's expressions of intent to *fulfill* his official duty of "exercising discretion to not pursue criminal charges in appropriate circumstances." *ABA Criminal Justice Standards* § 3.1.2(b) (4th ed. 2017). The Order itself confirms that "state attorneys have complete discretion in making the decision to prosecute a particular defendant." ECF No. 3-4 at 2 (citing *Cleveland v. State*, 417 So. 2d 653, 654 (Fla. 1982)). As the Amicus Brief of Former Prosecutors, Attorneys General, Judges, United States Attorneys and Federal Officials, and Current and Former Law Enforcement Officials explains in detail, *see* ECF No. 14-1, Andrew Warren's alleged "actions and omissions" are entirely consistent with "[the] duties laid on him" as State Attorney, *Israel*, 269 So. 3d at 496 (quoting *Hardie*, 155 So. at 132).

6

The Order's focus on Andrew Warren's anticipated *future* charging decisions further demonstrates that the Governor lacked authority to suspend Warren. Such an application of "neglect of duty" and "incompetence" finds no support in the long history of judicial examination of these grounds for officer suspension and removal. The three cases cited in the Order as authority for Warren's suspension illustrate this point. In *Hardie*, the Florida Supreme Court concluded that three executive orders were "sufficient" to suspend an elected sheriff for "neglect of duty in office" and "incompetency" where they described prior violations of the sheriff's official duties. *Hardie*, 155 So. at 133–34. The executive orders described specific occasions on which the sheriff, for instance, "refused to listen to" a report of a particular arrest his deputies made in an "inhuman, unmanly, and cruel manner"; "refused to listen to" "facts in connection with the beating to death of an old man by masked men" "which was his duty to hear and investigate"; and "actively enter[ed] into and participate[d] in the making of plans to throw dynamite upon a certain building." *Id*. at 131–32. In *State ex rel. Hardee v. Allen*, the Court declined to overrule the 1936 suspension of an appointed solicitor for "neglect of duty in office" based on specific charging decisions made in 1934 and 1935 regarding criminal activity that had occurred in those prior years. 172 So. 222, 223–25 (Fla. 1937). Finally, in *Israel*, the Court affirmed the dismissal of a quo warranto petition challenging a sheriff's suspension for "neglect of duty" and "incompetence" where the allegations related to the sheriff's failure to implement "proper protocols" or provide for "frequent training for his deputies resulting in the deaths of twenty-two individuals." 269 So. 3d at 494. Article IV, § 7(a) is not—and has never been—a vehicle to punish elected officeholders for hypothetical future conduct.

  **B.** *Constitutional Avoidance Principles Confirm that the Grounds for Warren's Suspension Do Not Qualify as "Neglect of Duty" or "Incompetence."*

  Governor DeSantis's position flies in the face of constitutional avoidance principles as well. Constitutional avoidance counsels against interpreting a provision of law in a way that would create doubt as to the provision's constitutionality, and it is regularly applied in the context of Florida law. *See, e.g.*, *State v. Presidential Women's Ctr.*, 937 So. 2d 114, 116 (Fla. 2006) ("[W]e adhere to the settled principle that '[w]hen two constructions of a statute are possible, one of which is of questionable constitutionality, the statute must be construed so as to avoid any violation of the constitution.'" (quoting *Indus. Fire & Cas. Ins. Co. v. Kwechin*, 447 So. 2d 1337, 1339 (Fla. 1983)); *Franklin v. State*, 887 So. 2d 1063, 1073 (Fla. 2004) (explaining that acts "must be construed, if fairly possible, as to avoid unconstitutionality and to remove grave doubts on that score" (quotation marks omitted)); *Hiers v. Mitchell*, 116 So. 81, 84 (Fla. 1928) (noting that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter"). As applied here, constitutional avoidance principles counsel against an interpretation of a state constitutional provision which would create doubt as to the provision's legality under the federal Constitution. *See* 10 Fla. Jur 2d Constitutional Law § 38, Westlaw (2d ed., database updated June 2022) ("With regard to the State of Florida, the Florida Constitution is the supreme law adopted by the people, although within its sphere, the Constitution of the United States is the supreme law of the land." (footnote omitted)); *cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (observing that the Supremacy Clause "instructs courts what to do when state and federal law clash").

  For the reasons articulated in Andrew Warren's complaint and memorandum in support of his motion for preliminary injunctive relief, Warren's suspension for reasons Governor DeSantis

8

has characterized as "neglect of duty" and "incompetence" was effectuated in violation of the First Amendment. *See* ECF No. 1 ¶¶ 77–104; ECF No. 3-1 at 8–16. In other words, Governor DeSantis's proposed construction of the Florida Constitution would throw Article IV, § 7(a) into doubt under the federal Constitution. Thus, even assuming that Governor DeSantis's construction of Article IV, § 7(a) is "possible" under current precedent, the "questionable constitutionality" of that construction means that the provision "must be construed" to remove any doubts on that score. *Presidential Women's Ctr.*, 937 So. 2d at 116.

Not only is constitutional avoidance a well-established doctrine in Florida courts, it was also a guiding principle in the 1997-1998 Constitution Revision Commission's debate regarding Article IV, § 7(a). In considering a proposal to expand the provision to authorize suspension for misdeeds an officeholder committed while he or she was a candidate, potential "First Amendment issues" arising from such an amendment were of significant concern to the Commission. Fla. Const. Rev. Comm'n, *Meeting Proceedings for January 28, 1998* at 32:12 (Commissioner Mills); *see id.* at 44:23–45:3 (Commissioner Scott) (declining to support the proposal because "I don't know that it is constitutional, I mean, under the Federal Constitution"); *id.* at 45:8–9 (Chairman Douglass) (inquiring into whether the proposal would "violate the First Amendment"); *id.* at 45:14–46:1 (Commissioner Brochin) (declining to support the proposal because "[t]he problem is simply the First Amendment"); *id.* at 46:6–24 (Commissioner Sundberg) (opposing the proposal because "I think you have some very, very serious First Amendment problems with this"). The proposal failed because of the Commission's concerns about creating a conflict between § 7(a) and the First Amendment.

These Commissioners' comments cannot be squared with Governor DeSantis's interpretation of § 7(a). *See* 10 Fla. Jur 2d Constitutional law § 58, Westlaw (2d ed., database

updated June 2022) (citing *City of Ft. Lauderdale v. Crowder*, 983 So. 2d 37 (Fla. 4th DCA 2008) ("In interpreting a constitutional provision, comments by the Constitution Revision Commission … as to the meaning of text are especially important.")). The First Amendment protects the speech of candidates for office and elected officeholders alike. *See, e.g.*, *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1261 (2022) ("The First Amendment surely promises an elected representative … the right to speak freely on questions of government policy"); *Bond v. Floyd*, 385 U.S. 116, 132–37 (1966) (rejecting the State's argument that the First Amendment extends greater protection to citizens than to elected officials). It is therefore inconceivable that the Commission would have roundly rejected a proposed amendment to § 7(a) because it could create First Amendment problems in the context of candidate speech if the Commission had understood § 7(a) to already suffer from equally weighty First Amendment problems in the context of officeholder speech. In reality, the Commission understood § 7(a) to authorize the suspension of state officers only for reasons unrelated to protected speech, and its understanding was correct.

## CONCLUSION

For the foregoing reasons, the Court should find that Governor DeSantis exceeded his authority in suspending Andrew Warren as State Attorney for the 13th Judicial Circuit and grant the injunctive and other relief Andrew Warren has requested.

Dated: August 31, 2022

                              Respectfully submitted,

                              /s/ Adam G. Unikowsky
                              Adam G. Unikowsky
                              Ishan K. Bhabha
                              Kathryn L. Wynbrandt
                              Jenner & Block LLP
                              1099 New York Ave., NW
                              Washington, DC 20001
                              (202) 639-6041
                              aunikowsky@jenner.com

                              *Attorneys for Amici Curiae*

## LOCAL RULE 7.1 CERTIFICATE

I hereby certify that the foregoing brief contains 3,024 words, excluding the items listed in Local Rule 7.1(F).

By: /s/ Adam G. Unikowsky
*Attorney for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida through the CM/ECF system, which will serve a true and correct copy on all counsel of record who have consented to electronic service.

By: /s/ Adam G. Unikowsky
*Attorney for Amici Curiae*

## APPENDIX A

## **LIST OF AMICI**

**Martha Barnett**
1997-1998 Constitution Revision Commission Member
Former President of the American Bar Association

**Jessica Bulman-Pozen**
Betts Professor of Law
Columbia Law School

**Robert A. Butterworth, Jr.**
1997-1998 Constitution Revision Commission Member
Former Florida Attorney General

**Erwin Chemerinsky**
Dean of Berkeley Law School
Jesse H. Choper Distinguished Professor of Law

**Ellen Freidin**
1997-1998 Constitution Revision Commission Member

**Ruthann Robson**
Professor of Law & University Distinguished Professor
City University of New York (CUNY) School of Law

**Sarah L. Swan**
Associate Professor
Rutgers Law School (Newark)

**G. Alan Tarr**
Board of Governors Professor Emeritus
Director, Center for State Constitutional Studies
Rutgers University (Camden)