UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| ANDREW H. WARREN,<br><br>Plaintiff,<br><br>vs.<br><br>RON DESANTIS, individually and in His official capacity as Governor of the State of Florida<br><br>Defendant. | Case No.: 4:22-CV-302-RH-MAF |

## PATRIOT AMICUS BRIEF

Warren's position in this litigation is concocted for litigation purposes, belied by contemporaneous documents, and foreclosed by black letter constitutional law.

### SUSPENSION IS REQUIRED BY THE FLORIDA CONSTITUTION

Article IV of Florida Constitution, Section 1(a), states that the Governor "shall take care that the laws be faithfully executed, . . ." This provision is not a mere suggestion or best practice, it is an affirmative and binding command. The Constitution is our Foundational Document controlling our Government, including the office of Governor. Article IV, Section 7(a), states that the Governor "may suspend from office any state officer not subject to impeachment, . . . any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension." Warren's official performance frustrates local law enforcement, endangers the public, and easily justifies suspension. Examples follow.

1

Just this summer, Warren's office failed to move for pretrial detention of the Fishhawk Kidnapper, and he was turned the loose on bond without protest by Warren's office, all after a hearing that lasted less than a minute. Mahsa Saedi, *Was Hillsborough's Suspended State Attorney Soft On Crime? We Look Into Case That Drew Criticism*, New Channel 8, August 24, 2022, available at: https://www.wfla.com/news/hillsborough-county/was-hillsboroughs-suspended-state-attorney-soft-on-crime-we-look-into-case-that-drew-criticism/ . The Fishhawk Kidnapper has been charged with incidents involving actual or potential children victims in Fishhawk, Lake City, and Alabama. Warren ignored repeated and well-founded pleas from another elected official to file a Motion for Detention to protect constituents. See e.g. Jeff Patterson, *State Rep. Mike Beltran Calls For Bond To Be Revoked For Suspect In Fishhawk Attempted Abduction*, News Channel 8, June 23, 2022, available at: https://www.wfla.com/news/hillsborough-county/state-rep-mike-beltran-calls-for-bond-to-be-revoked-for-suspect-in-fishhawk-attempted-abduction/

In another recent incident, Warren agreed to no jail time, and dismissal after a short interval of good behavior, for a young man who shot another Lithia, Florida youth in the back of the head after pointing a gun at him to "scare" him. Gloria Gomez, *Tampa Bay True Crime Series: The Shooting Death Of Bradley Hulett*, Fox 13 Tampa Bay, August 23, 2021, available at: https://www.fox13news.com/news/tampa-bay-true-crime-series-the-shooting-death-of-bradley-hulett (noting manslaughter charge due to avoidable nature of accident); but see *Charge Could be Expunged in Case of Lithia Teen Killed by Friend*, Spectrum News 9, November, 2, 2021, https://www.baynews9.com/fl/tampa/news/2021/11/02/charge-could-be-expunged-in-case-of-lithia-teen-killed-by-friend (noting parents' acquiesence to deal after several years

of ineffective prosecution by Warren.) Neither Warren nor any other group or person can waive the Hillsborough citizens' constitutional interest in proper enforcement of the laws, including appropriate sanctions and protections against crimes against children and homicides.

Warren affirmatively announced his refusal to prosecute serious crimes against small businesses, law-abiding citizens, women, the unborn, and even young children. Warren's six-year record justifies Gov. DeSantis' decision to suspend and replace him. Rising crime in Hillsborough results from Warren refusing, over several years, to do his job. Other cities experience ruin due to inept and ideological prosecutors. The Governor's action is the constitutionally prescribed remedy to avoid this unlawful abdication and the resulting increase in crime.

Warren's claim that "mere talk" is insufficient to justify suspension is a political question the Florida Constitution commits to the Florida Senate. Under our Constitution, elected officials include Legislators, who draft the laws; the Governor, who signs our laws; State Attorneys, who (are supposed to) file charges; and Judges, who adjudicate cases. They all do only three things: they read, write, and speak. Warren failed to perform those critical tasks consistent with his Constitutional Oath. If this Court, or the undersigned, refused to read, write, and speak in accordance with their oaths, or announced preemptively that they would violate their oaths, they, too, would expect to be removed through constitutional or legal process.

As for the suggestion that an elected official may, once elected, derelict his duty with impunity, we need not venture far back into history to see seriatim efforts from Warren's sympathizers to undermine a duly elected President. Even more recently, Warren

sympathizers and others called for removal of Supreme Court Justices, who are insulated from popular opinion by constitutional design, while decrying the removal of Warren, who is not.

By attempting to exercise an extraconstitutional veto over state law, Warren disenfranchised millions of Floridians and their Legislators from across Florida, who are also duly elected. Warren abdicated his role, violated separation of powers, and left his constituents and others unprotected from violent crime. Popular election is necessary but not sufficient for continuance in office, which requires an official perform the duties he swore to perform. If Warren wishes to legislate instead of prosecute, he should have run for another office. Stated differently, Warren should consider a run for the Florida House, instead of shirking his duties at the Hillsborough Courthouse.

## **WARREN ACTIVELY UNDERMINED THE VETERANS' COURT**

Tampa's Veterans Treatment Court ("VTC") is the "Crown Jewel" of the Tampa Bay Judiciary and is nationally renowned. The VTC was created pursuant to Florida Statutes 394.47891, *Veterans Treatment Court Programs*, and Florida Statute 948.08, *Pretrial Intervention Programs*. This problem-solving court, set in a criminal court jurisdiction, is specifically designed to "address the underlying causes of a Veteran's involvement with the judicial system through the use of specialized dockets, multidisciplinary teams, and evidence-based treatment." Florida Statute Section 394.47891(1). The VTC is primarily focused on helping many Veterans whose criminal behavior is often related to a service connected (and often combat connected) condition or disability. The major issues identified and treated are PTSD, Traumatic Brain Injury (TBI), alcohol and substance abuse, and Military Sexual Trauma (MST). Tampa's VTC program

4

graduation rate exceeds 90%, heals its local Veterans, and saves millions of taxpayer dollars. As amended, Florida Statute 394.47891 now provides that the State Attorney increased authority to determine whether the defendant meets the eligibility requirements and ultimate approval for entry into this program. Warren abused this authority to impair the VTC. At the height of its program in June 2019, the VTC had over 225 defendant Veterans and was the largest program in the Nation. Warren offered Veterans with DUI charges only post-adjudicatory VTC opportunities. This decreased the VTC Veteran docket (currently at 49 Veterans), and undermines the true mission and statutorily-mandated purpose of the VTC. Furthermore, Veterans who enter in a post-adjudicatory status obviously do not obtain dismissal of their charges after successful treatment and graduation. Thus, the Veteran will continue to face challenges in employment, obtaining a personal or car loan, or even passing the security background checks required to rent an apartment. Warren's unlawfully denied Hillsborough Veterans the "opportunity to receive appropriate counseling, education, supervision, and medical and psychological treatment as available." Florida Statute 948.08. Warren abused his discretion, denied Veterans the opportunity to participate in this life-saving program, and again failed to follow the statutory mandate of the Legislature and the Governor. Warren's anti-Veteran policies stand in stark contrast to his lenience for less deserving groups, such as common criminals.

## **SUSPENSION IS A NONJUSCICIABLE POLITICAL QUESTION**

Although Warren claims he was elected, so were the officials who enacted the laws he refused to enforce. Warren overstepped his bounds and was rightfully suspended by the Governor according to his constitutional authority. Supra. Constitutional checks and balances provide Warren multiple avenues for redress. The Florida Senate must review Warren's suspension before it is final. Warren should address every argument he raises here in that proceeding instead. *See e.g. Israel, v. DeSantis*, 269 So.3d 491, 495 (Fla. 2019) ("Once the Governor suspends a public official, the Florida Senate has the exclusive role of determining whether to remove or reinstate that suspended official. Art. IV, § 7(b), Fla. Const.") Even if viable, Warren's claims are unripe for lack of exhaustion. Warren would file a quo warranto if he had any basis to do so. *See e.g. Israel, id.* at 493 (dismissing quo warranto on the merits). Instead, Warren has compounds his violation of horizontal separation of powers by violating vertical separation as well, resorting to Federal District Court on a spurious constitutional claim foreclosed by the Florida Constitution.

Warren's theory that elected officials may derelict their duties with impunity without recourse according to State Constitutional checks and balances is novel, to put it mildly. *C.f. Ayala v. Scott*, 224 So.3d 755 (Fla. 2017) (approving reassignment of cases from prosecutor who announced she would not seek death penalty). As stated in *Israel*:

> As we recently stated, the judiciary has a "limited role in reviewing the exercise of the suspension power, which the Constitution commits to the governor and which inherently involves `judgment and discretion.'" Jackson v. DeSantis, No. SC19-329, 268 So.3d 662, 663, 2019 WL 1614572 (Fla. Apr. 16, 2019) (quoting State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 133 (1934)). Where an executive order of suspension "names one or more of the grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause of suspension, it is sufficient." Hardie, 155 So. at 133. Similarly, the Senate's judgment of removal or reinstatement "is

> final, and will not be reviewed by the courts," as under the constitutional process for suspension and removal, the "Senate is nothing less than a court provided to examine into and determine whether or not the Governor exercises the power of suspension in keeping with the constitutional mandate." Id. at 134. Assuming that the office of the suspended officer falls under one of the constitutionally enumerated categories and the Governor has filed the executive order of suspension with the custodian of records, the plain language of the Constitution excludes the judiciary from involving itself in the suspension and removal process save for a limited exception.

*Israel v. DeSantis*, 269 So.3d 491, 495 (Fla. 2019). Instead, the Constitution commits review of the Governor's suspension order to another political branch, the Senate, and not to a Federal District Court 200 miles from his former jurisdiction.

Nor does the removal of an elected official for "mere talk" violate the Constitution. Some elected officials are, as the saying goes, quite literally, "all talk." Supra. It does not follow, therefore, that they cannot be removed. Moreover, the Governor may suspend for misconduct committed at any time, notwithstanding an intervening election. *See generally Jackson v. DeSantis*, 268 So.3d 662, 663 et seq. (Fla. 2019) (Lagoa, J., concurring)

In *State Ex Rel. Hardie v. Coleman*, 155 So. 119 (Fla. 1934), the sheriff, like Warren here, refused to receive or respond to complaints about violent crime from upstanding members of the community. *Id*. at 122-125. The Governor removed him. In affirming the removal, the Court noted that "[t]t is not material whether the neglect be willful, through malice, ignorance or oversight, when such neglect is grave and the frequency of it is such as to endanger or threaten the public welfare . . ." *Id*. at 126. Like in *Israel*, the Court noted that suspension "involves judgment and discretion on the part of the Governor, including the power to hear and decide; and the rule seems well settled that so long as the Governor acts within his jurisdiction as charted by organic law, his action may not be reviewed by the Courts." *Hardie, id*. at 127. Thus, the standard of review of

7

the Governor's suspension, if any, is extremely deferential. *Id*. at 128-129.[1] Any review should be conducted by the Senate. Such review is final and unreviewable by the Judiciary as a political question. *Id*. at 130, *see also State ex rel. Kelly v. Sullivan,* 52 So.2d 422, 425 (Fla. 1951) ("It is the function of the Senate, and never that of the Courts, to review the evidence upon which the Governor suspends an officer in the event the Governor recommends his removal from office.") This understanding that executive removal is unreviewable also comports with the federal constitution. *See e.g. Hardie, id*. at 130-134, *citing Myers v. United States*, 272 U.S. 52 (U.S. 1926). This constitutional balance was intended by the framers and should not be upset by spurious claims by a disenchanted former official.

## **ABSTENTION PROHIBITS THE COURT FROM HEARING THIS CASE**

*Younger v. Harris*, 401 U.S. 37 (1971), is based on the principle of equitable restraint and "comity" now described as "*Younger* abstention." Comity includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Graham v. Wigginton,* 818 F.Supp. 336, 338 (M.D. Fla. 1993). *Younger* abstention applies to claims for injunctive relief, as well as claims for declaratory judgment that would effectively enjoin state proceedings. *Old Republic Union v. Tillis Trucking,* 124 F.3d 1258, 1261 (11th Cir. 1997), *Watson v. Florida JQC*, 618 Fed.Appx. 487, 491 (11th Cir. 2015). *Younger* abstention bars this Court from

---

[1] Even Justice Labarga, who was most skeptical of the suspension, noted that a Court's review is "not a demanding standard." *Israel, id*. at 498 (concurring in result only).

interfering in on-going state proceedings when (1) the action constitutes an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Younger, Id*.

The first issue is resolved in favor of *Younger* abstention. Both *Israel* and *Hardie* hold that the Senate sits as a "Court" to review a suspension and render a decision. *Israel, id.* at 495; *Hardie, id*. at 130. As such, normal abstention doctrines apply in federal courts. See *Younger v. Harris*, 401 U.S. 37 (1971) (federal courts to refrain from hearing constitutional challenges to state action when federal action would be regarded as an improper intrusion on the state's authority to enforce its laws in its own courts); *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941) (federal courts to defer to state court proceedings). Further, the Governor's suspension of a State Attorney is an important state interest. Lastly, Warren is absolutely entitled to raise all constitutional challenges before the Florida Senate. Thus, each of the *Younger* factors are easily met.

*Rooker-Feldman* also applies here, because if federal district courts should not review a completed state case, they certainly should not interrupt the Florida Senate sitting as a Court in a pending proceeding.[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (federal courts may not sit in review of state court decisions) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983) (same); *citing Prentis v. Atlantic Coast Line*, 211 U.S. 210 (1908) (finding that the State Corporation Commission was a "court").

---

[2] Undersigned counsel is informed that the Senate has abated his review pending resolution of this case. This case should be dismissed and the Senate should review and promptly and permanently affirm Warren's suspension after the election.

9

Lastly, the Anti-Injunction Act applies because the Florida Senate is sitting as a Court to review Warren's suspension. *Id.* The Anti-Injunction Act, 28 U.S.C. § 2283 reads:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

No enactment here requires any stay of the Florida Senate's review of Warren's suspension from office. Warren nor his amici cite any Congressional enactment, or any other authority other than law review articles, empty policy arguments, and bluster. Nor is any injunction necessary to aid any jurisdiction (which does not exist), or to effectuate any judgment (which has not been rendered.) Even if Warren and his amici deem DeSantis' Executive Order egregious (it is heroic), the Court proceeds at its peril under *Rooker-Feldman* and the Anti-Injunction Act. *See e.g. Brennan v. Scientology*, 645 F.3d 1267, 1276-1277 (11th Cir. 2011) (reversing federal district court which issued injunction to prevent "grave injustice" arising from enforcement of illegal practice restriction by state court and disruption of federal proceeding).

## **CONSTITUITIONAL SEPARATION OF POWERS**

The Constitution of the State of Florida is the only consent of the people for Government. The people are the only delegators of authority and responsibility to elected representatives. (Article 1 Section 1: "All political power is inherent in the people.") The oath of office for all elected representatives ties that representative to the solemn promise to "support, protect, and defend the Constitution and Government of the United States and of the State of Florida . . ." (Article II, Section 5) Because the people are the creators of State and Local Government through the Constitution, and that delegation requires the Governor to promise to the people to "support, protect, and defend" the Constitution of the

State of Florida, the Governor must support, protect, and defend the Constitution by enforcing Article IV section 7(a) to fulfil his obligation as an essential check and balance on the abuse of power exercised by Warren. As stated by James Madison:

> It may be a reflection on human nature, that such devices [checks and balances] should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself. A dependence on the people is, no doubt, the primary control on the government; but experience has taught mankind the necessity of auxiliary precautions.

Federalist 51. Here, the Governor, unable to oblige Warren to control himself, exercised the only remaining auxiliary precaution, that of suspension and replacement pending Senate Trial.

Warren's refusal to enforce laws was not based upon any conscientious objection rooted in the text of Constitution, but rather upon his own personal will. Warren did not seek or await constitutional adjudication of any law at issue in the Supreme Court. Instead, he preemptively announced he would, under no circumstance, enforce certain laws, in apparent solidarity with other political actors who are not bound by the Florida Constitution. This exercise of personal will obliges the Governor to engage in the check and balance contemplated by Article IV section 7(a). As Alexander Hamilton notes in Federalist 78, the essential principle of Constitutional Supremacy dictates that any decision by a representative of the people based upon the "exercise [of] WILL instead of [constitutional] JUDGEMENT," makes that person subject to the necessary checks and balances resulting from that exercise of usurped power. Federalist 78. ("[I]f they should be

11

disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body.")

The State Attorney is part of the executive branch. Warren's duty was the execution of the laws. It is the sole duty of the legislative branch to legislate upon the political will of the people. Article III, Section 1 ("The legislative power of the state shall be vested in the legislature of the State of Florida.") When Warren acted upon political will instead of executing the Constitution and the law, he violated the Florida Constitution. Article II, Section 3 ("The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.")

When an elected official so egregiously violates and disregards the Florida Constitution, it affects every citizen of his district, not just those who voted for him. One segment of the electorate, especially a slim majority, cannot authorize an elected official to disregard the rights of others. This is the whole purpose of a Constitutional Republic, as opposed to local mob rule. The Florida Constitution states that all Floridians are "equal before the law," not just those who voted for Warren. Article 1 Section 2. Warren is not a legislator, nor is he authorized to charge or dismiss cases based upon political or ideological leanings. Warren's position demanded that he refrain from political charging decisions and instead constitutionally serve the people of Hillsborough County.

## **THE COURT SHOULD DENY WARREN'S MOTION AND DISMISS**

The framers created the suspension provision of Article IV, Section 7(a) for a purpose. If Warren does not qualify, then Article IV, Section 7(a) is effectively dead letter. For the reasons stated herein, Warren's Motion should be denied, this case should be dismissed with prejudice, and the Court should tax attorney fees and costs against Warren and in favor of Governor DeSantis.

Filed:   September 9, 2022.

Respectfully Submitted,

/s/ Paul Hawkes
Paul Hawkes, Esq
Fla. Bar No. 564801
*Coauthor and Former DCA Judge/Representative*

/s/ Michael Paul Beltran
Michael P. Beltran, Esq.
Fla. Bar No. 93184
Beltran Litigation, P.A.
1101 East Cumberland Ave. #712
Tampa, FL 33602
813-870-3073 (o)
mike@beltranlitigation.com
*Attorney for Patriot Amici*

/s/ Gregory Paul Holder
Gregory Paul Holder, Esq.
Fla. Bar No. 339326
Hillsborough Resident
*Coauthor and Former Circuit Judge and Veteran*

/s/ Kris Anne Hall
Kris Anne Hall, Esq.
Fla. Bar No. 729450
Hillsborough Resident
*Coauthor and Former Prosecutor*

/s/ Charbel Barakat
Charbel J. Barakat, Esq.
Florida Bar No. 54227
Hillsborough Resident
*Patriot Lawyer Amicus*

/s/ Thomas Hyde
Thomas Newcomb Hyde, Esq.
Florida Bar No. 192758
Hillsborough Resident
*Patriot Lawyer Amicus*

/s/ Jeff Albinson
Jeff Albinson, Esq.
Florida Bar No. 525261
Hillsborough Business Address
*Patriot Lawyer and Former Prosecutor*

/s/ Charles B. Kelly
Charles B. Kelly, Esq.
Florida Bar No. 1032186
Hillsborough Resident
*Patriot Lawyer Amicus and Veteran*

***Nonlawyer Amici:***

Jim Waurishuk, Chairman, Hillsborough County Republican Party, Col. USAF, Retired, former Staff to the National Security Council.

Jeanne Webb, Secretary, Hillsborough County Republican Party.

Robert Emerson, President, Apollo Beach Republican Club.

Ursula and Moe Joyal, Sun City Center, Both Former Longtime FAA Employees.

## CERTIFICATE OF SERVICE

    I will file a copy of the foregoing on the Court's electronic system, which will send a copy to all counsel of record.

/s/Michael Paul Beltran<br>Michael P Beltran

## CERTIFICATE OF WORD COUNT

    I certify that the foregoing memorandum contains less than 4000 words, excluding the items listed in Local Rule, 7.1(F).

/s/Michael Paul Beltran<br>Michael P Beltran