# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

ANDREW H. WARREN,

     *Plaintiff*,

     v.                        Case No. 4:22-cv-302-RH-MAF

RON DESANTIS, individually and in his
official capacity as Governor of the State
of Florida,

     *Defendant*.

_____/

# DEFENDANT'S MOTION FOR
# <u>SECTION 1292(b) CERTIFICATION</u>

**INTRODUCTION**

It is "in the public interest" to resolve this case "as quickly as we can." T. 61 (9/19/2022 hearing). The Governor is committed to bringing this case to trial expeditiously and will soon submit a proposed schedule for discovery and trial.

But there remains a way to resolve this case without drawing multiple state offices into a costly and time-intensive trial: by concluding that Mr. Warren engaged in government speech that is not protected by the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). Though this Court has rejected that argument on the ground that *Garcetti* does not apply to elected officials, other courts have ruled differently. *See, e.g.*, *Parks v. City of Horseshoe Bend*, 480 F.3d 837, 840 n.4 (8th Cir. 2007); *Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007); *Hogan v. Twp. of Haddon*, No. 04-2036, 2006 WL 3490353, at *6 (D.N.J. Dec. 1, 2006). And because that question presents a pure issue of law that would completely resolve this case, the order deciding it should be certified for interlocutory review under 28 U.S.C. § 1292(b). While the Eleventh Circuit considers that question, the proceedings in this Court should continue in the ordinary course.

**ARGUMENT**

The Court has denied the Governor's motion to dismiss Mr. Warren's First Amendment claim. But 28 U.S.C. § 1292(b) authorizes a district court to certify an

order for interlocutory appellate review when an immediate "appeal may avoid protracted and expensive litigation" and when the order involves "a question which would be dispositive of the litigation . . . and there is serious doubt as to how it should be decided." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004). Certification under Section 1292(b) is thus proper when (1) the challenged ruling involves a controlling question of law; (2) there is substantial ground for difference of opinion on the ruling; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

Here, this Court's order denying the Governor's motion to dismiss Mr. Warren's First Amendment claim meets all three of those elements.

## I. Whether *Garcetti* applies to statements made by non-legislative elected officials speaking in their official capacities is a controlling question of law.

An order involves a "controlling question of law" when it concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine," or "an abstract legal issue" that "the court of appeals can decide quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258 (simplified); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1251–52 (S.D. Fla. 2013), *accepting review and reversing on merits*, 768 F.3d 1110 (11th Cir. 2014).

This Court's ruling on the Governor's *Garcetti* argument meets that standard. Whether the First Amendment bars the State from disciplining non-legislative elected officials for their official-capacity speech is a "pure" legal question that turns on the "meaning of a . . . constitutional provision" and the parameters of First Amendment "doctrine." *McFarlin*, 381 F.3d at 1258. And the outcome of that legal question is case-dispositive because, if the Governor is correct, Mr. Warren's joint statements were unprotected and cannot form the basis for a First Amendment retaliation action.

Courts have found First Amendment issues to be controlling questions of law in similar contexts. *See, e.g.*, *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (whether statements made at a campaign rally were protected by the First Amendment was a controlling question of law); *Hines v. Alldredge*, No. 1:13-CV-56, 2014 WL 12649849, at *1 (S.D. Tex. Mar. 27, 2014) (same for whether a party's "professional speech [was] entitled to some measure of First Amendment protection"), *accepting review and reversing on merits*, 783 F.3d 197, 200 (5th Cir. 2015). This Court should do the same.

## II.   There is substantial difference of opinion over whether *Garcetti* applies to elected officials speaking in their official capacities.

Next, there is "substantial ground for difference of opinion" when this Court and other courts, and particularly the court of appeals, are not "in 'complete and unequivocal' agreement" on the resolution of the controlling legal question.

*McFarlin*, 381 F.3d at 1258 (quoting *Burrell v. Bd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). This often occurs when "novel and difficult questions of first impression are presented." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

As the Governor has explained, the cases Mr. Warren cites in opposition dealt only with *legislative* elected officials,[1] and thus never had occasion to consider or decide whether *Garcetti* applies to elected prosecutors. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). And that distinction makes all the difference here because the principle driving those decisions—that "legislators [must] be given the widest latitude to express their views of policy," *Boquist v. Courtney*, 32 F.4th 764, 780 (9th Cir. 2022) (quoting *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966))— does not apply to non-legislative officials who are elected not to make the laws but to execute them on behalf of the State. That explains why other courts have had no

---

[1] *See, e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 774–75, 778–80 (9th Cir. 2022); *Rangra v. Brown*, 566 F.3d 515, 522–26 (5th Cir.), *vacated on mootness grounds on reh'g en banc*, 584 F.3d 206 (5th Cir. 2009); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1246–47 (10th Cir. 2000). This Court also raised *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005), at the hearing, which too involved a legislative official.

4

trouble applying *Garcetti* to non-legislative elected officials. *E.g.*, *Parks*, 480 F.3d at 840 n.4 (recognizing that *Garcetti* would apply to a city treasurer).

But even if Mr. Warren's preferred cases could be read to broadly hold that *Garcetti* is inapplicable to *all* elected officials, including executive officials like State Attorneys, then there is no doubt a "substantial difference of opinion" presented here. Indeed, that question is one of first impression in this circuit and has split the judiciary. Some courts have held that *Garcetti* does not apply to certain elected officials. *Supra* note 1.[2] Others, however, have recognized that *Garcetti* applies to elected officials when speaking pursuant to their official duties.[3] And still others have acknowledged that whether elected officials fall outside of *Garcetti* is at least subject to "substantial disagreement" and is "not clearly established." *See Werkheiser v. Pocono Twp.*, 780 F.3d 172, 177–81 (3d Cir. 2015) (declining to "decide whether *Garcetti* is applicable to elected officials' speech or not," but granting qualified immunity because the law on this point was not clearly established).

Though this Court has agreed with one side of the split, reasonable jurists could disagree with that decision. After all, *Garcetti* is not an employment case; it is

---

[2] *Velez v. Levy* does not fall within this category. It is a pre-*Garcetti* case, and to the Governor's knowledge, no court has held that it remains good law post-*Garcetti*.

[3] *See, e.g.*, *Parks*, 480 F.3d at 840 n.4; *Register*, 2007 WL 915193, at *6; *Hogan*, 2006 WL 3490353, at *6.

a government-speech case. It stands for a straightforward proposition: When a government official speaks for the State, the First Amendment allows the State to discipline him for that speech. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2425 (2022) (characterizing *Garcetti* as resting on the proposition that the prosecutor there was disciplined for "government speech").

That principle squarely applies to Mr. Warren. Under Florida law, State Attorneys are not roving elected free agents—they are state employees who speak and act for the State of Florida as prosecutors. *See Austin v. State ex rel. Christian*, 310 So. 2d 289, 292 (Fla. 1975) (noting that a state attorney is an "officer of the State"). And the people of Florida have made it a condition of holding the office to which Mr. Warren was elected that he not "neglect [his] duty" or be "incompeten[t]." Fla. Const., art. IV, § 7(a). When Mr. Warren disobeyed that trust, the State—acting through the Governor—was fully empowered to take corrective action, be it under the Governor's suspension authority, *see* Fla. Const., art. IV, § 7(a), or his "constitutional responsibility to take care that the laws be faithfully executed," *see Austin*, 310 So. 2d at 292 (holding that the Governor's take-care power would suffice to "authorize the assignment of a state attorney by the Governor" even without an explicit statute to that effect). As the Court held in *Garcetti*, the First Amendment does not shield Mr. Warren from these State-sanctioned disciplinary measures, because Mr. Warren's statements were made in his capacity *as the State Attorney*.

6

*See Austin*, 310 So. 2d at 292. The State, in short, does not have First Amendment protection from itself.

At the very least, the Court should conclude that there is a "substantial difference of opinion" over the question because it is exceptionally "importan[t]" to this case and, more broadly, to state government. *See* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3930 (3d. ed.) (the "level of uncertainty required to find a substantial ground for difference of opinion" is diminished when the issue is "importan[t]").

### III. An immediate appeal may materially advance the ultimate termination of the litigation.

Lastly, an immediate appeal could shuttle this case to resolution. *See McFarlin*, 381 F.3d at 1259 (the "materially advance[s]" prong is met when the appellate court's "resolution of a controlling legal question would avoid a trial or otherwise substantially shorten the litigation"). If Mr. Warren's statements qualify as unprotected government speech, his First Amendment claim fails. An immediate appeal could thus obviate the need for a costly expedited trial that would drain the resources of two state offices and distract them from performing their important work. Contentious discovery disputes also loom—for example, Mr. Warren has already announced that he will seek to depose the Governor. Finally, interlocutory review may eliminate the risk of dueling injunctions from this Court and a stay panel

of the Eleventh Circuit "yo-yoing" the leadership of the Thirteenth Judicial Circuit's State Attorney's Office after final judgment. *See* T. 17 (9/19/2022 hearing).

Nor would an interlocutory appeal interfere with this Court's proceedings. An application for interlocutory appeal "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). The Governor does not request a stay of discovery or trial pending review. And if this Court granted leave to appeal, the Governor would expeditiously pursue his appeal by doing the following:

- Petitioning the Eleventh Circuit for review within a day of this Court's order;

- Requesting an expedited briefing schedule: **seven days** for the opening brief; **seven days** for the answer brief; **four days** for the reply brief;

- Requesting that the appeal either be decided on the papers or set for the next available oral argument; and

- Seeking an expedited decision.

Under those circumstances, the Eleventh Circuit could likely resolve this significant, case-dispositive issue before this case is tried. Indeed, the Eleventh Circuit has recently shown a willingness to act with haste on time-sensitive matters of public importance. *See Trump v. United States*, No. 22-13005, 2022 WL 4366684

8

(11th Cir. Sept. 21, 2022) (granting motion for stay pending appeal filed on Sept. 16).

Given the need for expedition, the Governor also respectfully requests that the Court accelerate the deadline for Mr. Warren to respond to this motion to no later than next Monday, October 3.

## CONCLUSION

The Court should certify its order denying the Governor's motion to dismiss for interlocutory appeal while this case proceeds to trial.

Dated: September 26, 2022

Respectfully submitted,

ASHLEY MOODY
 *Attorney General*

/s/ *Henry C. Whitaker*
HENRY C. WHITAKER (FBN 1031175)
 *Solicitor General*
JEFFREY PAUL DESOUSA (FBN 110951)
 *Chief Deputy Solicitor General*
DAVID M. COSTELLO (FBN 1004952)
 *Deputy Solicitor General*

JAMES H. PERCIVAL (FBN 1016188)
 *Deputy Attorney General*
 *of Legal Policy*
NATALIE CHRISTMAS (FBN 1019180)
 *Assistant Attorney General*
 *of Legal Policy*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Governor DeSantis*

## CERTIFICATE OF CONFERRAL

Consistent with Local Rule 7.1(B), the Governor raised the issues identified

in this motion with Mr. Warren. He opposes the requested relief.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Local Rule 7.1(F) because it contains 2,007 words.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ *Henry C. Whitaker*
Solicitor General