IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW H. WARREN,

                  Plaintiff,               Case No. 4:22-cv-302-RH-MAF

v.

RON DESANTIS, individually and in
his official capacity as Governor of the
State of Florida,

                  Defendant.

_____

## MOTION TO COMPEL COMPLIANCE WITH DISCOVERY OBLIGATIONS

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), Plaintiff Andrew Warren respectfully moves to compel Defendant to abide by the Rules of Civil Procedure and immediately provide complete responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Production, as described further below. Defendant's responses were due on October 10, 2022. And the first round of depositions in this matter is set to take place **Tuesday October 18 and Wednesday October 19, 2022**. Compliance with certain specific requests, detailed below, is essential to permit those depositions to proceed efficiently. Furthermore, Plaintiff asks that the Court award him his "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Broadly, Defendant has refused to make available most of the information that would assist this Court in resolving the sole dispositive issue in this case: Defendant's subjective motivation for his conduct. In fact, Mr. Warren has disclosed more text messages of the Defendant's agents and staff, having obtained them from records requests to other officials around the state, than Defendant has disclosed himself.

Consistent with this Court's request to remain apprised of developments in discovery, Plaintiff notes that Defendant's conduct may require additional intervention by the Court, both as to specific discovery requests and potentially as to other remedies necessary to ensure the fair and efficient resolution of this case.

Late Sunday October 16, 2022, the date on which this Motion is being filed, Defendant sent a further email promising further document productions today and tomorrow. [*See* Email Thread Between Counsel (Oct. 15–16, 2022), attached as Ex.

D] Even those promises contained several evasive qualifications, including attempts to draw distinctions between custodians' "personal" and "public" accounts and devices and the conspicuous omission of the production of any records to, from, or held by the Governor's chief of staff.

Under the circumstances, with trial six weeks away and depositions beginning in less than 48 hours, and because Defendant is already overdue on his compliance, Plaintiff has filed this Motion to Compel. Of course, if Defendant fully complies with his obligations, Plaintiff will so advise the Court and withdraw the Motion without delay.

## I.    Especially in these Expedited Proceedings, Defendant Must Fulfill His Obligations to Provide Information in His Possession and Relevant to the Claims or Defenses at Issue.

The Federal Rules of Civil Procedure allow for robust discovery and reflect the "basic presumption . . . that the public is entitled to every person's evidence." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546 (11th Cir. 1985). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

"Information need not be admissible to be discoverable. When it comes to discovery, an incomplete response is no response at all. Thus, when a party who has

propounded a discovery request receives an evasive or incomplete response, and no valid objection has been made to prevent the discovery, the party may move to compel a better response." *Caravels LLC v. City of Gainesville, Fla*., No. 1:20CV45-MW/GRJ, 2020 WL 10731713, at *1 (N.D. Fla. July 9, 2020) (internal citations omitted).

## II.   Defendant's Discovery Responses to Date are Incomplete and Evasive.

Local Rule 26.1(D) requires that motions to compel, like this one, set forth "for each discovery request at issue" the request itself, the response or objection, and the "reasons why the discovery should be compelled." *See id.*

While others of Defendant's responses to date are also deficient, in an effort to maximize the chance of this dispute being resolved prior to the upcoming depositions, this Motion is directed only at the requests and responses set forth below.[1]

### A.   Plaintiff's First Set of Requests for Production

With his Rule 26(a)(1)(A) initial disclosures, the only documents produced by the Governor were already public: a copy of Executive Order 22-176, copies of the joint statements attached to this order, the "Policy Regarding Prosecution of Cases Based on Pedestrian and Bicycle Violations" (initially provided by Plaintiff himself), the March 9, 2021 "Presumption of Non-Prosecution" memo (initially provided by Plaintiff himself), the December 14, 2021 "Prosecutorial Discretion and the Mission of Criminal Justice" memorandum (initially provided by Plaintiff

---

[1]   Plaintiff reserves the right to bring further motions to compel as to other deficient responses at a later date.

himself), and an August 4, 2022 press release issued by the Governor's Office entitled "Governor Ron DeSantis suspends State Attorney Andrew Warren for Refusing to Enforce Florida Law." These documents do not meaningfully cast light on the Governor's decision-making process.

With his first requests for production, Mr. Warren generally requested all documents relating to his suspension, including all documents from the alleged "investigation" conducted by the Governor's office. Production was due on Monday, October 10th. But despite the expedited manner of this proceeding, on October 10, 2022 at 9:50 p.m. EDT, the Governor provided only objections and promises of certain future production in response to Mr. Warren's document requests. Zero documents were produced in response to Mr. Warren's requests for production on October 10th.[2]

Specifically, the Requests and Responses were as follows:

- **Request No. 1**: All Documents relating to the Suspension, including all Communications—within Your office or with media representatives or other third parties—relating to the Suspension.

  **RESPONSE**: Defendant incorporates the above Objections to Definitions. Defendant objects that a request seeking "[a]ll Documents relating to the Suspension" is patently vague, overbroad, and does not describe with reasonable particularity each document or category of documents being requested as required under Rule 33(b)(1)(A) of the Federal Rules of Civil Procedure. Defendant further objects based on the Attorney/Client Privilege and the Work Product Doctrine.

---

[2] The Governor did produce certain documents—copies of executive orders issued by the Governor that are publicly available—in response to Mr. Warren's interrogatory No. 4 on October 10, 2022.

In response to this objection, Plaintiff reminded Defendant by email that the first round of depositions in this matter is set to take place imminently. [*See* Email Thread Between Counsel (Oct. 10–13, 2022), attached as Ex. A] Plaintiff asked the Governor to confirm that he does not intend to produce documents in response to Request No. 1. [*Id.*] By email, the Governor confirmed he would not. [*Id.*]

However, on Friday October 14, 2022 at 6:45 p.m. EDT the Governor produced 482 pages of records, in the form of 131 emails and 52 attachments. Many of these emails were communications with media representatives concerning the suspension. Many emails were sent or received by Christina Pushaw.

The Governor is aware that Plaintiff will depose Ms. Christina Pushaw on Tuesday, October 18, 2022. The Governor's initial disclosures identified Christina Pushaw as having "information concerning the social media posts the night before Executive Order 22-176 was released." Ms. Pushaw is the Governor's former Press Secretary, and author of the August 3, 2022 tweet crowing to "[p]repare for the liberal media meltdown of the year." [*See* DE1 ¶ 62]

Then, late Sunday October 16, at 6:08 p.m. EDT, the Governor made another production of documents. This production is still under review, but initial searches reveal it remains lacking.

For example, the Governor produced no records actually relating to Pushaw's critical tweet.[3] Despite Plaintiff's request plainly defining "document" as including

---

[3]     To be precise, the Governor's production included copies of two articles that report on Pushaw's "liberal media meltdown" post: Anne Geggis, *Andrew Warren's suspension draws Democrats' denunciations*, FLORIDA POLITICS (Aug. 4, 2022);

emails, correspondence, messages on any platform, and social media posts, Defendant produced only a select slate of emails. The Governor did not produce any correspondence by the Governor or his staff concerning Ms. Pushaw's responsive social media posts, even though Ms. Pushaw is a prolific user of social media. And even though Ms. Pushaw commonly uses Twitter's direct message function to conduct state business, the Governor did not produce any responsive direct messages sent or received by Ms. Pushaw. Finally, the Governor did not produce a single text message sent or received by Ms. Pushaw, whatsoever, despite text messages plainly falling within the sphere of Plaintiff's production request.

Documents to and from Ms. Pushaw are not, however, the only things conspicuously absent from Defendant's production. The Governor himself is the central actor in this case. He is the decision-maker whose subjective motivation will be the focus of trial. Yet the Defendant failed to produce *any* record to or from him or his chief of staff. He failed to produce any text messages he sent or received. He failed to produce any emails he sent or received.

**Reasons Why Discovery Should be Compelled**:   The first round of depositions in this matter is set to take place Tuesday October 18 and Wednesday October 19, 2022. Defendant has produced minimal documents responsive to this request, which is directed to the very heart of Plaintiff's claims and, presumably, Defendant's defenses. Such information will "help 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the

---

*DeSantis suspends state attorney due to refusal to enforce laws, including abortion restrictions*, WESH2 (Aug. 4, 2022).

fullest practicable extent.'" *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Lastly, to the extent Defendant has withheld certain documents subject to a claim of privilege, no privilege log or other statement providing information pursuant to Federal Rule of Civil Procedure 26(b)(5) has been produced; Mr. Warren is thus unable to assess any claimed privilege.

- **Request No. 2**: All Documents relating to the investigation, review, or other process conducted after You "asked [Your] staff in [Your] office to look around the State of Florida" at state attorneys, as You stated on August 4, 2022, when You announced the Suspension.

**RESPONSE**: Defendant incorporates the above Objections to Definitions. Defendant objects that a request seeking "[a]ll Documents" relating to the investigation, review, or other process" is patently vague, overbroad, and does not describe with reasonable particularity each document or category of documents being requested as required under Rule 33(b)(1)(A) of the Federal Rules of Civil Procedure. Defendant further objects based on the Attorney/Client Privilege and the Work Product Doctrine. Notwithstanding the forgoing objections, Defendant will produce responsive and non-privileged documents that were gathered by the Governor's staff as its response to this Request.

On October 11, 2022, Plaintiff reminded Defendant by email that the first round of depositions in this matter is set to take place Tuesday October 18 and Wednesday October 19, 2022. [*See* Ex. A] Plaintiff asked the Governor to confirm that he would produce all responsive material no later than October 12, 2022 at 5:00 p.m. EDT. [*Id.*] The Governor advised that he expected all responsive records concerning this request to be produced in a rolling fashion, with full completion by close of business Friday, October 14. [*Id.*]

On October 14, 2022 at 6:45 p.m. EDT, the Governor produced 482 pages of records, in the form of 131 emails and 52 attachments. Many of these emails were communications with media representatives concerning the suspension.

Then, late Sunday October 16, at 6:08 p.m. EDT, the Governor made another production of documents. This production is still under review, but initial searches reveal it remains lacking. While this latest incremental production appears to contain various drafts of the Executive Order suspending Mr. Warren and it appears to contain a memorandum written by the Governor's Office about suspending Mr. Warren, no documents produced to date appear to be records of the investigation and review of State Attorneys that the Governor claims to have conducted. *See, e.g.*, Fox News, *Ron DeSantis Blasts Leftist Prosecutor*, YOUTUBE.COM (Aug. 4, 2022) (DeSantis states "I asked my staff to review all State Attorneys in the State of Florida," and "we did a thorough review"). The Governor is aware that Plaintiff will depose Mr. Larry Keefe on Wednesday, October 19, 2022. Mr. Keefe is the Governor's Public Safety Czar. The Governor's initial disclosures identified Mr. Keefe as having "[i]nformation concerning the background investigation and initial draft [of] Executive Order 22-176." Logically, Plaintiff expects any production of documents relating to an investigation leading to the suspension of Plaintiff to include substantial communications sent and received by Larry Keefe.

In fact, Plaintiff's own initial disclosures to Defendant contained a substantial volume of text messages and emails between Mr. Keefe and other officials

concerning Plaintiff's suspension.[4] [*See* Excerpts of L. Keefe text messages and emails, attached as Ex. B, at Bates Nos. SAO20_AW_000043–SAO20_AW_000059; SAO19_AW_000415; SAO19_AW_000083] Mr. Keefe seems to utilize text messages as a primary means of communication. But the Governor has inexplicably produced zero text messages, from Mr. Keefe (or any other person).[5] It is indefensible for Mr. Warren to have produced more of Mr. Keefe's text messages to the Governor, than the Governor has produced to Mr. Warren.

The Governor has acknowledged that a number of law enforcement personnel, including Sheriffs Chad Chronister, Chris Nocco, and Grady Judd, had foreknowledge of Plaintiff's suspension. Furthermore, the Governor's response to Plaintiff's first set of interrogatories provides that Mr. DeSantis or his representatives have communicated with "nearly all Sheriff[s] that attended the Florida Sheriff Association's winter convention[.]" Plaintiff naturally expects any production of documents relating to an investigation leading to the suspension of Plaintiff to include communications exchanged between these law enforcement personnel and the Governor's Public Safety Czar—and the Governor himself. But in discovery, the Governor has only produced one single such email exchange: a

---

[4]    Plaintiff obtained these records through Sunshine Act requests made to various public officials, including Sheriffs and other State Attorneys.

[5]    In an email this evening Defendant's counsel represented that such text messages are forthcoming. They have not yet been received. If they are, undersigned counsel will of course promptly notify the Court.

single email from Sheriff Chronister's personal email account to Mr. Keefe's personal email account.

Finally, despite the Governor identifying Mr. Keefe as having "[i]nformation concerning the background investigation and initial draft [of] Executive Order 22-176," the only report produced by the Governor in response to Plaintiff's request for production was an August 3, 2022 memorandum entitled *The Soros Plan* prepared by Kyle Lamb—an individual previously undisclosed as a person likely to have discoverable information in this case. Evidently this memorandum was placed in "the front pocket" of the Governor's binder related to the suspension. [*See* Email Thread regarding "The Soros Plan," attached as Ex. C, at DEF 000401–DEF 000407] The *Soros Plan* memorandum catalogues a host of ideological tropes, many of which Defendant repeated during his press conference suspending Mr. Warren. The memorandum claims "Warren specifically has been a loyal advocate of the Soros agenda." [*Id.* at DEF000405]

To effectively depose Mr. Keefe on October 19, 2022, Plaintiff is entitled to, among other things, all documents Mr. Keefe created, sent, and received regarding his background investigation of Mr. Warren.

Furthermore, as noted above and previously, despite public comments that he ordered a review across Florida of State Attorneys, the Governor has failed to produce any records about it. The Governor failed to produce any text messages he sent or received. The Governor failed to produce any emails he sent or received.

**Reasons Why Discovery Should be Compelled:**  Defendant has produced minimal documents responsive to this request, which is directed to the very heart of

Plaintiff's claims and, presumably, Defendant's defenses. Such information will "help 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Furthermore, to the extent Defendant has withheld certain documents subject to a claim of privilege, no privilege log or other statement providing information pursuant to Federal Rule of Civil Procedure 26(b)(5) has been produced; Mr. Warren is thus unable to assess any claimed privilege.

- **Request No. 3**: All Documents You reviewed or relied upon to conclude that Plaintiff Andrew Warren committed "neglect of duty" or demonstrated "incompetence" as stated in the Executive Order.

    **RESPONSE**: Defendant incorporates the above Objections to Definitions. Defendant objects that a request seeking "[a]ll Documents" that Defendant reviewed or relied upon to conclude that Plaintiff Andrew Warren committed "neglect of duty" or demonstrated "incompetence" is vague and ambiguous and does not describe with reasonable particularity each document or category of documents being requested as required under Rule 33(b)(1)(A) of the Federal Rules of Civil Procedure. For example, because of the Definition "You" and "or" which is given "its broadest possible meaning," the request would require Defendant to produce every document of every employee that was ever reviewed, even if the document reviewed was not relied upon to support the facts set forth stated in the Executive Order. Defendant further objects based on the Attorney/Client Privilege and the Work Product Doctrine. Notwithstanding the forgoing objections, Defendant will produce responsive and non-privileged documents that were relied on by the Governor to conclude Plaintiff Andrew Warren committed "neglect of duty" or demonstrated "incompetence" for its response to this Request.

    **Reasons Why Discovery Should be Compelled:** Defendant has produced no documents responsive to this request, which is directed to the very heart of Plaintiff's claims and, presumably, Defendant's defenses. Such information will "help 'make

11

a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Furthermore, to the extent Defendant has withheld certain documents subject to a claim of privilege, no privilege log or other statement providing information pursuant to Federal Rule of Civil Procedure 26(b)(5) has been produced; Mr. Warren is thus unable to assess any claimed privilege.

- **Request No. 4**: All Documents relating to Plaintiff Andrew Warren's performance as State Attorney for the 13th Judicial Circuit of the State of Florida.

    **RESPONSE**: Defendant incorporates the above Objections to Definitions. Defendant further objects based on the Attorney/Client Privilege and the Work Product Doctrine. Notwithstanding the forgoing objections, Defendant will produce responsive and non-privileged documents related to Plaintiff Andrew Warren's performance for its response to this Request.

    **Reasons Why Discovery Should be Compelled:**  Defendant has produced minimal documents responsive to this request, which is directed to the very heart of Plaintiff's claims and, presumably, Defendant's defenses. Such information will "help 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). The Governor has provided only emails containing media reports, and the August 3, 2022 memorandum prepared by Kyle Lamb. To the extent Defendant has withheld certain documents subject to a claim of privilege, no

privilege log or other statement providing information pursuant to Federal Rule of Civil Procedure 26(b)(5) has been produced; Mr. Warren is thus unable to assess any claimed privilege.

### B.    Deficient Responses to Plaintiff's First Set of Interrogatories

Defendant's responses to the First Set of Interrogatories are similarly deficient. To begin, Defendant has not verified his responses. *See* Fed. R. Civ. P. 33(b)(1)(A) & (b)(3). Instead, Defendant has provided a verification by an individual named Raymond Treadwell, who is not the defendant but rather "Chief Deputy General Counsel" of the Office of the Governor.

The only Defendant in this lawsuit is the person who took adverse action against Mr. Warren—Ron DeSantis. And a central issue for trial, perhaps the only issue seriously in dispute at this point, is whether Mr. DeSantis will attempt to meet *his* burden under *Mt. Healthy* to show that even in the absence of Mr. Warren's protected speech, Mr. DeSantis still would have suspended Mr. Warren from office for a permissible reason. [*See, e.g.*, Tr. of Sept. 19, 2022 Hearing at 67:12–16 (THE COURT: "The governor hasn't submitted any evidence at all. . . . The governor hasn't cited or even discussed *Mt. Healthy*.")] That burden is personal to the Defendant; to meet it he must show that he, not someone or some collection of people in his office, "would have made the same decision anyway." *Id.* at 66:6–10*; see also, e.g.*, *Waters v. Churchill*, 511 U.S. 661, 677 (1994) (discussing *Mt. Healthy* and holding that in context of § 1983 claim for retaliatory discharge in violation of First Amendment, decisionmaker must not only have had "good faith" belief that

decision was based on permissible grounds but also that such belief must be "reasonable").

Courts have a "duty to assure to the greatest degree possible, . . . equal treatment for every litigant before the bar." *Coppedge v. United States*, 369 U.S. 438, 446–47 (1962). In this case, Defendant has acted against a fellow constitutional officer. Defendant's "office" did not act against Mr. Warren; the office's chief deputy general counsel did not act against Mr. Warren. And Defendant has cited no authority for the proposition that, in this matter, he can shield himself from having to answer for his actions, including by delegating his obligations under the Rules of Civil Procedure to whatever staff member he chooses.[6]

Presently, Plaintiff seeks to compel a proper answer to one specific Interrogatory. "Interrogatories may relate to any matter that can be inquired into under Rule 26(b)." *LLB Convenience & Gas, Inc. v. Se. Petro Distributors, Inc*., No. 6:18-CV-914-ORL-40TBS, 2019 WL 1586732, at *2 (M.D. Fla. Apr. 12, 2019).

- **Interrogatory No. 3**: Identify all means of Communication and all communications devices You have used, including specific applications like Signal, WhatsApp, etc., from January 1, 2022 through the present, to send or receive Communications relating to the Suspension. For mobile phones,

---

[6]     Even though such delegation might be appropriate in a more "run of the mill" tort action, it is inappropriate under the circumstances presented here, including that this case tests a personal decision of the Defendant, about which Defendant has himself spoken *at length* for his own perceived political benefit, each time taking personal credit for the decision. *Cf. Kimberly Regenesis, LLC v. Lee Cnty.,* No. 2:19-CV-538-SPC-NPM, 2021 WL 5285093, at *6 (M.D. Fla. Sept. 29, 2021) ("[T]he apex doctrine rarely, if ever, shields a lead official from discovery when the official is directly involved in the event at issue and has ***personal knowledge*** about it.").

tablets, and similar devices, identify the last four digits of the phone number associated with such devices.

**ANSWER:** Defendant incorporates the above Objections to Definitions. Defendant further objects to this Interrogatory as overbroad, harassing, and unduly burdensome because Defendant would need to interview and confer with potentially hundreds of individuals and collect the last four digits of each of their phone numbers. This Interrogatory is not proportionate to the needs of this First Amendment case.

**Reasons Why Discovery Should be Compelled:** Mr. Warren is entitled to receive communications by Defendant and Defendant's agents relating to Mr. Warren's suspension. In order to request such communications and to ensure that all responsive records are obtained, Mr. Warren has sought to identify all means used by Defendant to communicate about his suspension.[7] In an email to Defendant's counsel seeking to resolve the dispute as to this issue, undersigned counsel suggested that Defendant's response could be limited "to encompass only the specific

---

[7]     The degree to which Defendant complies with recordkeeping and record production obligations specifically as to himself and his chief of staff has been recently challenged by the Florida Center for Government Accountability in a suit filed in the Circuit Court. *See* Gary Fineout, *Lawsuit Accuses DeSantis of Withholding Records Over Migrant Flights*, POLITICO (Oct. 10, 2022), https://www.politico.com/news/2022/10/10/lawsuit-ron-desantis-withholding-records-migrant-flights-00061119 Given Defendant's refusal in this case and seemingly in others to produce important records pursuant to lawful public records requests, it is especially appropriate for Mr. Warren to seek through discovery to learn of the various ways Defendant communicated with his advisors and others about Mr. Warren's suspension.

individuals listed in your response to Interrogatory Request No. 1."[8] [*See* Ex. B] Still Defendant objects.

The information sought by this Interrogatory is within the scope of Rule 26 and has been routinely required to be produced by courts. *E.g.*, *Ramirez Estrada v. Pao Pao, Inc.*, No. 19 C 5006, 2021 WL 4395814, at *4 (N.D. Ill. Apr. 15, 2021) (finding language in Rule 33 interrogatory "more than suffices to encompass WeChat records" and ordering production of such chat records).

## III.   Defendants Are Refusing to Comply Meaningfully with the Discovery Process

While relief on the specific requests detailed above is critical, Plaintiff notes that Defendant's refusal to comply with those requests is emblematic of his broader approach to the discovery process. As the Court is aware, this case turns on one question: what was Defendant's "subjective motivation" for removing Plaintiff from his position as the elected State Attorney for the 13th Judicial Circuit? Yet Defendant has indicated neither he nor his chief of staff will sit for a deposition or testify at trial; he has refused to provide any written communications between him and anyone else on this topic; and he has strongly suggested that he will claim privilege over any oral communications he had on the topic. In short, Defendant intends to deny this Court any information probative of whether he possessed any subjective motivation for his conduct other than the obvious retaliatory one. If that remains Defendant's

---

[8]     Interrogatory No. 1 asked Defendant to identify "everyone with whom You discussed the Suspension, excluding those persons who learned of the Suspension only through a public announcement made by You."

approach, Plaintiff will seek further relief from this Court necessary and appropriate to the orderly, just, and swift resolution of this case.

## Conclusion

This Motion should be granted, and Defendant should be ordered to provide proper responses and information as set forth above no later than 5:00 p.m. EDT on Monday October 17, 2022. Furthermore the Court should "direct the party whose conduct necessitated the motion, 'or the attorney advising that conduct, or both,' to compensate the movant for 'reasonable expenses incurred in making the motion, including attorney's fees[.]'" *LLB Convenience & Gas, Inc.*, 2019 WL 1586732, at *2 (quoting Fed. R. Civ. P. 37(a)(5)(A)).

Dated:  October 16, 2022

**PERKINS COIE LLP**

By:  */s/ Jean-Jacques Cabou*

    Jean-Jacques Cabou (AZ #022835)*
    Alexis E. Danneman (AZ #030478)*
    Matthew R. Koerner (AZ #035018)*
    Margo R. Casselman (AZ #034963)*
    2901 N. Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788
    JCabou@perkinscoie.com
    ADanneman@perkinscoie.com
    MKoerner@perkinscoie.com
    MCasselman@perkinscoie.com
    602.351.8000

**AND**

    David B. Singer (FBN 72823)
    Matthew T. Newton (FBN 111679)
    101 E. Kennedy Blvd., Suite 2800
    Tampa, FL 33602
    dsinger@shumaker.com
    mnewton@shumaker.com

**DEBEVOISE & PLIMPTON LLP**

    David O'Neil*
    801 Pennsylvania Ave NW, Suite 500
    Washington, D.C. 20004
    (202) 383-8000
    daoneil@debevoise.com

    Alexandra P. Swain**
    650 California Street
    San Francisco, CA 94108
    apswain@debevoise.com

    Samantha B. Singh (FBN 1036051)
    919 Third Avenue
    New York, NY 10022
    sbsingh@debevoise.com

\* *Pro Hac Vice*
\*\* *Pro Hac Vice* pending

**ATTORNEYS FOR PLAINTIFF**

**LOCAL RULE 7.1(B) CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Local Rule 26.1(G), counsel for Plaintiff attempted in good faith to resolve the issues raised herein, including through emails sent after reviewing Defendant's production overnight, on Saturday October 15, 2022.  Those emails are attached hereto as Exhibit D.

*/s/ Jean-Jacques Cabou*

**LOCAL RULE 7.1(F) CERTIFICATE OF COMPLIANCE**

I certify that this Motion and Supporting Memorandum contains 4,442 words, with such word count incorporating all portions of this document subject to the word limitations imposed under Local Rule 7.1(F).

*/s/ Jean-Jacques Cabou*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2022, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF System for filing.

*/s/ Indy Fitzgerald*