## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ANDREW H. WARREN,

     *Plaintiff*,

     v.                             Case No. 4:22-cv-302-RH-MAF

RON DESANTIS, individually and in his
official capacity as Governor of the State
of Florida,

     *Defendant*.

_____/

## DEFENDANT'S MOTION
## <u>FOR PROTECTIVE ORDER</u>

## INTRODUCTION

Before deposing any witnesses, reviewing any discovery, or even noticing the deposition of a government representative under Rule 30(b)(6), Andrew Warren noticed depositions for two of Florida's top executive officials: the Governor and his Chief of Staff, James Uthmeier. But much more is required to justify deposing officials at the "apex" of state government. *See Florida v. United States*, No. 3:21-cv-1066/TKW/ZCB, 2022 WL 4021934, at *2 (N.D. Fla. Sept. 2, 2022). On this record, Mr. Warren can no more depose the Governor and his Chief of Staff than a plaintiff suing President Biden for an allegedly discriminatory executive action could depose the President or his Chief of Staff, Ron Klain.

Far more must be shown before a plaintiff may subject high-ranking government officers to burdensome depositions that distract from their important duties, like responding to the aftermath of a Category Four hurricane. *See* Ex. 1 at 2. At a minimum, Mr. Warren must establish that this is the "extraordinary" case in which a high-ranking official holds evidence that is not "available from alternate" sources. *In re USA*, 624 F.3d 1368, 1372 (11th Cir. 2010) (quoting *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993)). Mr. Warren has not met that burden. Though he seeks to probe the Governor's motives for suspending him, he has not tapped the well of witnesses and documents that shed light on that information. And at any rate,

he has already received substantial discovery about the Governor's deliberative process, making higher-level depositions cumulative and needlessly disruptive.

For these and the reasons below, the Court should issue a protective order barring Mr. Warren from deposing the Governor and his Chief of Staff.[1]

## LEGAL STANDARD

Although a party may "depose any person" with relevant evidence, Fed. R. Civ. P. 30(a)(1), "[h]igh-ranking government officials" are not ordinary people, *In re U.S.*, 985 F.2d at 512. They are instead entrusted to perform critical public functions, and thus "have greater duties and time constraints than other witnesses." *Id.* "[T]o protect [those] officials from the constant distraction of testifying in lawsuits," *id.*—and to avoid unnecessarily offending the separation of powers by "[c]ompelling" their "personal appearance" in "judicial proceeding[s]," *see In re USA*, 624 F.3d at 1374, 1376 (analyzing *United States v. Morgan*, 313 U.S. 409 (1941))—courts place "appropriate limitations" on bids to take their depositions, *Florida*, 2022 WL 4021934, at *2 (quoting *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007)).

Those limitations are collectively called the "apex doctrine." *See id.*

---

[1] The Governor and his Chief of Staff also request that they be granted a reply to respond to the arguments made in Mr. Warren's opposition. Mr. Warren has provided only high-level, general reasons for why he may depose the Governor and his Chief of Staff, and those officials should have the opportunity to answer any arguments that Mr. Warren will make for the first time in his opposition.

(discussing the doctrine's evolution). Under that doctrine, if a government official establishes that he is "high ranking," a "district court should rarely, if ever," force him "to testify about [official] duties or decisions." *In re USA*, 624 F.3d at 1376 (citing *Morgan*, 313 U.S. 409). A court may do so only if the party seeking the deposition shows that "extraordinary circumstances" require the deposition. *Id.* at 1372; *see also In re U.S.*, 985 F.2d at 512 (quashing subpoena to FDA Commissioner when case did not involve "extraordinary circumstances"); *see also Odom v. Roberts*, 337 F.R.D. 359, 365 (N.D. Fla. 2020) ("The party seeking to depose the official has the burden of establishing [extraordinary circumstances]."). Such circumstances do not exist unless, at minimum, "the deposition is necessary" to "obtain relevant information that cannot be obtained from any other source." *New York v. Oneida Indian Nation of N.Y.*, No. 95-CV-0554(LEK/RFT), 2001 WL 1708804, at *3 (N.D.N.Y. Nov. 9, 2001); *see also In re USA*, 624 F.3d at 1372 (no extraordinary circumstances when "testimony [i]s available from alternate witnesses" (quoting *In re U.S.*, 985 F.2d at 512)); *Bogan*, 489 F.3d at 423 (deposition of high-ranking official "is permitted only where it is shown that other persons cannot provide the necessary information"); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022) ("We cannot intrude into the workings of the executive branch and the time of that branch's leaders if there is another way to obtain the necessary information.").

## ARGUMENT

The apex doctrine bars the noticed depositions here. The Governor and his Chief of Staff comprise the highest echelon of Florida's executive branch and are no doubt high-ranking officials. And Mr. Warren has not established that this is the extraordinary case in which no other evidentiary sources can provide the information he seeks.

## I.   The Governor and his Chief of Staff are high-ranking government officials.

The quintessential high-ranking government official is one at the "highest or uppermost point" of an organization's governing structure. *Florida*, 2022 WL 4021934, at *3 (citation omitted). The Governor fits that bill. He sits "atop [the state executive branch's] organizational chart," *id.* at *4, and falls right in line with other government officials that have been found sufficiently "high-ranking" for apex purposes, *see United States v. Newman*, 531 F. Supp. 3d 181, 188–89 (D.D.C. 2021) (noting that the apex doctrine has been applied to the President, cabinet-level officials, the Mayor of the District of Columbia, and United States Senators, among others). "Without a doubt," then, "Governor [DeSantis] is . . . a high-ranking state government official" under the apex doctrine. *Oneida Indian Nation*, 2001 WL 1708804, at *3 (New York's Governor was a high-ranking official); *see Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) (same for Illinois's Governor); *Coleman v. Schwarzenegger*, CIV S-90-0520,

2008 WL 4300437, at *4 (E.D. & N.D. Cal. Sept. 15, 2008) (same for California's Governor); *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) (same for Missouri's Governor), *abrogated on other grounds by O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996).

So too with the Governor's Chief of Staff, Mr. Uthmeier. A government official also qualifies as high ranking if he "reports directly to" or is otherwise "closely connected" to an organization's head. *Florida*, 2022 WL 4021934, at *4 (emphasis omitted). Mr. Uthmeier checks both boxes. He reports to only the Governor, Ex. 1 at 1, and is "intimately and inextricably involved" with the Governor's decision-making process, *Oneida Indian Nation*, 2001 WL 1708804, at *3; Ex. 1 at 1–2. He is thus of a piece with other chiefs of staff that courts have found "high ranking" for apex purposes. *See Coleman*, 2008 WL 4300437, at *4 (California Governor's Chief of Staff was a high-ranking official); *Newman*, 531 F. Supp. 3d at 189–90 (same for White House Chief of Staff); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (same for Vice President's Chief of Staff); *McNamee v. Massachusetts*, No. 12-40050, 2012 WL 1665873, at *2 (D. Mass. May 10, 2012) (same for U.S. Representative's Chief of Staff); *see also Oneida Indian Nation*, 2001 WL 1708804, at *3 (same for Secretary to New York Governor).

Finally, the policy undergirding the apex doctrine supports applying it to the Governor and his Chief of Staff. The doctrine is meant to protect "very visible

official[s]" who both are particularly "vulnerable to suit by anyone challenging [a government entity's] policies," *K.C.R. v. Cnty. of L.A.*, No. CV 13-3806 PSG SSX, 2014 WL 3434257, at *5 (C.D. Cal. July 11, 2014), and "have greater duties and time constraints than other witnesses," *In re U.S.*, 985 F.2d at 512. The Governor and his Chief of Staff match those descriptions. They are among the most public-facing officials in the State, and they are tasked with performing critical public functions, like responding to Hurricane Ian's devastating landfall in Southwest Florida. As a result, both the Governor and his Chief of Staff are plainly high-ranking officials that merit apex-doctrine protection.

## II.   Mr. Warren has not shown extraordinary circumstances.

Mr. Warren has also failed to establish extraordinary circumstances because he has not shown that the information he seeks—the Governor's motivation for issuing the suspension order—can be obtained only by deposing the Governor and his Chief of Staff. *See In re USA*, 624 F.3d at 1372 (extraordinary circumstances are not present when evidence is "available from alternate" sources (quoting *In re U.S.*, 985 F.2d at 512)); *see also Bogan*, 489 F.3d at 423–24 (affirming protective order barring deposition of city mayor, despite claim that the mayor's intent was at issue, because plaintiffs "failed to pursue discovery from other City employees who could have shed light on the Mayor's involvement"); *In re U.S. Dep't of Educ.*, 25 F.4th at 702 (barring deposition of Secretary Betsy DeVos when plaintiffs failed to show

6

that "the information sought from the secretary [could not] be obtained in any other way").

1. To begin with, Mr. Warren has far from exhausted the pool of witnesses who can speak to the Governor's motivations. *See In re U.S.*, 197 F.3d 310, 314 (8th Cir. 1999) ("If other persons can provide the information sought, discovery will not be permitted against such an official."). The Governor did not decide to suspend Mr. Warren in a silo. Like virtually all executives, the Governor acted through his staff. Multiple members of the Governor's team collectively developed the suspension action, briefed the Governor on its basis, and facilitated its execution. *Cf. Hernandez v. Texas Dep't of Aging & Disability Servs.*, No. A-11-CV-856 LY, 2011 WL 6300852, at *3 (W.D. Tex. Dec. 16, 2011) ("Obviously, the governor delegates matters such as those addressed in the DOJ reports to his staff and to agency staff to handle."). These lower-level officials therefore know just as much about the reasons driving Mr. Warren's suspension as either the Governor or an official as high-ranking as Mr. Uthmeier. *See Oneida Indian Nation*, 2001 WL 1708804, at *1, *4 (barring New York Governor's deposition, even when the Governor's alleged bad faith was at issue and even though the Governor was a "principa[l] in the decision making process," when lower-level officials' knowledge would "be similar if not greater than the Governor's" on the matter).

For just that reason, the Governor has disclosed to Mr. Warren scores of people who may have information relevant to his claim. Ex. 2 at 2–5, 12–14, 22–25; DE 84 at ECF pp. 30–39. Yet to date, Mr. Warren has noticed only five depositions—just two of which are of lower-level officials from the Governor's Office—and has completed only the deposition of Christina Pushaw, a staffer who was wholly uninvolved with the decision to suspend Mr. Warren. Ex. 2 at 12–14 (listing all who were involved in preparing the suspension order and not including Ms. Pushaw). And despite the drastic step that deposing the Governor and Chief of Staff would represent, Mr. Warren noticed their depositions before deposing anyone else or receiving any paper discovery or documents. That refusal to engage with and rule out less-intrusive discovery alternatives is reason alone to bar the apex depositions. *See Oneida Indian Nation*, 2001 WL 1708804, at *4; *see also Coleman*, 2008 WL 4300437, at *4 (barring deposition of California Governor when "plaintiffs ha[d] not carried their burden" to show that discovery from other sources would not suffice); *Bogan*, 489 F.3d at 424 (similar for city mayor).

On top of that, Mr. Warren has not even tried to obtain binding statements from the Governor about his motivations through a Rule 30(b)(6) deposition. Recall, Mr. Warren has sued the Governor in his official capacity as the holder of a state

governmental office.[2] Mr. Warren may therefore depose the Governor as a government entity under Federal Rule of Civil Procedure 30(b)(6) and question the Governor's representative, who will be educated on all identified topics and authorized to take official positions "on [the Governor's] behalf." Indeed, this Court appeared to contemplate that very procedure in its scheduling order. *See* DE 69 at 2 ("[A]ny [motion for protective order] should be filed as soon as efforts to resolve or narrow the dispute—including *through a Federal Rule of Civil Procedure 30(b)(6) deposition* or depositions of other individuals—have broken down." (emphasis added)). Mr. Warren's failure to explore this basic evidentiary avenue, too, is grounds to bar the apex depositions. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 704 (plaintiffs could not establish extraordinary circumstances when they "never took a Rule 30(b)(6) deposition"); *Greer v. Cnty. of San Diego*, No. 19-CV-378-JO-DEB, 2022 WL 2134601, at *3 (S.D. Cal. June 14, 2022) (similar); *Gauthier v. Union Pac. R. Co.*, No. 1:07-CV-12, 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008) (similar); *cf. In re USA*, 624 F.3d at 1375 (quashing order requiring the EPA Administrator to personally attend a judicial proceeding when the EPA offered an

---

[2] Mr. Warren has also sued the Governor in his individual capacity. But as explained in the Governor's motion to dismiss, Mr. Warren has sued the Governor for actions taken in his official capacity and has asked this Court to order relief (reinstatement) that the Governor could carry out only in his official capacity. DE 30 at 18 n.6. As this Court recognized when it rejected Mr. Warren's *Pennhurst* argument, "Mr. Warren's suspension was an official action of the State of Florida." DE 68 at 6. So this is an official-capacity case, not an individual-capacity case.

alternative representative because it is the executive branch's "prerogative" to "designate which of its high-ranking officials should appear as its representative in a proceeding of the judicial branch").

The Governor understands Mr. Warren to have two bases for refusing to explore these alternative evidentiary avenues. First, Mr. Warren apparently believes that he need not rule out alternate sources to depose the Governor because the Governor is a named party and named parties are inherently subject to deposition. But the apex doctrine would be a dead letter if it could be overcome simply by suing the high-ranking official that the plaintiff seeks to depose. That is why the Eleventh Circuit rejected a similar argument in *In re USA*. There plaintiffs sought to defend a district-court order forcing the Administrator of the EPA to personally attend a judicial hearing. To distinguish *In re U.S.*—in which the Eleventh Circuit held that only "extraordinary circumstances" warrant subjecting a high-ranking government official to judicial process, 985 F.2d at 515—the plaintiffs argued that the official in *In re U.S.* was not a named party, whereas "the Administrator [was] a named party," *In re USA*, 624 F.3d at 1374. The Eleventh Circuit rejected that distinction, however, citing a litany of circuits that have refused to "compe[l] the testimony of a high-ranking official" even "where either the official or his agency was a party to the litigation." *Id.* (collecting cases). That holding controls here, so the Governor's party status plays no role in the analysis.

10

Second, Mr. Warren has suggested that the Governor (and apparently his Chief of Staff) must testify because the Governor was the final decisionmaker, and so his "subjective motivation" is at issue. *See, e.g.*, DE 81 at 16. But courts routinely expect parties to establish an official's intent without forcing busy "decisionmaker[s] [to take] the stand." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). Were it otherwise, constant "judicial inquiries" into the official's "motivation" could "substantial[ly]" hinder the "workings of other branches of government." *Id.*; *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019). Parties must therefore make their case through other means, like citing "statements" made by the official to others, *Arlington Heights*, 429 U.S. at 268; relying on documentary evidence, like "minutes of [official] meetings[] or reports," *id.*; or piecing together the "sequence of events leading up to the challenged decision" to "shed some light on the decisionmaker's purposes." *Id.*; *see also City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743, at *3 (S.D. Fla. Mar. 7, 2012) (barring deposition of city manager, even when his "motivations and actions" were allegedly at issue, because plaintiffs had failed to show that they could not prove their case through less-burdensome means).

And compiling secondary evidence is no fruitless exercise—such sources may no doubt establish a decisionmaker's intent even without the decisionmaker's testimony. *See Dep't of Com.*, 139 S. Ct. at 2574. In *Commerce*, for instance, the

Supreme Court stayed a district-court order compelling the deposition of Secretary Wilbur Ross even though the Secretary made the final decision that the plaintiffs challenged (the addition of a citizenship question to the 2020 census). *Id.* at 2564. Yet the plaintiffs were still able to establish that the Secretary's justification for adding the citizenship question was pretextual—even without the Secretary's testimony—by developing an expansive "administrative record," built brick-by-brick through documentary evidence and the testimony of lower-level officials. *See id.* at 2574–76. The parties can do the same here to prove their respective claims and defenses.

Nor does an official's alleged malintent make a case "extraordinary." If that were so, high-ranking officials (not guarded by a privilege) would be obliged to testify in every *Arlington Heights* case. *Contra Arlington Heights*, 429 U.S. at 268 & n.18 (noting that many claims will not be "extraordinary" enough to warrant the "substantial intrusion" of deposing an official about his "motivation[s]"). Similarly, a case is not "extraordinary" just because the decisionmaker was "personally and directly involved in the decision." *Compare New York v. Dep't of Com.*, 333 F. Supp. 3d 282, 285–92 (S.D.N.Y. 2018) (compelling Secretary Ross to testify on that basis), *with In re Dep't of Com.*, 139 S. Ct. 16, 17 (2018) (staying the order compelling Secretary Ross to testify on that basis). Rather, extraordinary circumstances arise in the rare case in which evidence truly is not "available from alternate" sources. *In re*

*USA*, 624 F.3d at 1372 (quoting *In re U.S.*, 985 F.2d at 512); *Bogan*, 489 F.3d at 423 (similar). Because Mr. Warren cannot show "that the information [he] seek[s] . . . is unobtainable in any other way," those circumstances are not present here. *In re U.S. Dep't of Educ.*, 25 F.4th at 704.

2. Even putting aside Mr. Warren's failures to pursue less-invasive procedures, he has also failed to show that he does not already have all the information necessary to discern the Governor's intent.

At the outset, the Governor's motives are fully expressed within the four corners of the suspension order itself, DE 1-1, so additional documentary evidence is unnecessary, *see Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 587 (D.C. Cir. 1985) (barring plaintiff from deposing high-ranking officials about their motivations for an action when all that information could be found in "published reports and available agency documents"); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (barring apex deposition when plaintiffs had "not demonstrated a need for [the official's] testimony beyond what is already in the public record"). But even if other documentary evidence were probative, the Governor has already waived all privileges related to the suspension and has produced troves of documents reflecting his office's deliberative process. Ex. 2 at 32–33; Ex. 3 (emails producing thousands of pages of documents). He has also answered written discovery to the best of his knowledge. *See Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir.

13

1979) (no error when district court barred deposition of high-ranking official and instead ordered him "to answer interrogations in lieu of a deposition"); *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *4 (N.D. Cal. Feb. 2, 2012) (barring apex deposition because party had "not established that other less intrusive means of discovery, such as interrogatories, have been exhausted without success"). And Mr. Warren has started (and will soon finish) the deposition[3] of a staff member (Larry Keefe) who was instrumental in first identifying the potential bases for Mr. Warren's suspension. *See In re USA*, 624 F.3d at 1373 (quashing order mandating personal appearance of the EPA Administrator when another EPA official was "the most knowledgeable" on the challenged action because "he was responsible for its preparation").

Mr. Warren has far from shown that this wealth of discovery is insufficient to identify the reasons for his suspension. So he has not established that this is the extraordinary case in which apex depositions are warranted.

\*     \*     \*

Lastly, no adverse "inference properly could, [or] should, be drawn" from the Governor's decision to focus his energies on fulfilling his important duties rather

---

[3] Mr. Keefe's deposition was started on October 19, 2022, *see* Ex. 2 at 37, continued by order of the Court, *see* DE 90, and subsequently noticed for November 4, 2022, *see* Ex. 2 at 40.

than on preparing and sitting for a deposition. *See* DE 69 at 3 (inviting the parties to address whether a party's lack of testimony should warrant an adverse inference).

For one thing, the Governor as a party is willing to testify through a Rule 30(b)(6) representative. Again, Mr. Warren has not sued the Governor for actions he took as an individual; he has sued the Governor for actions he took as the holder of a state governmental office. Mr. Warren may therefore depose the Governor's representative in a Rule 30(b)(6) deposition. And when that representative testifies, he or she will be testifying *as the Defendant*. *See* Fed. R. Civ. P. 30(b)(6) (authorizing government entity to designate representative "to testify on its behalf"); *see QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (an entity "appears vicariously through its designees" in the Rule 30(b)(6) procedure). Thus, no adverse inference should be drawn from the Governor's personal refusal to testify.

Nor would it be appropriate to draw an adverse inference—known as a "missing-witness inference"—against the Governor for refusing to testify personally. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 (11th Cir. 1988) (explaining the missing-witness inference). At the threshold, the missing-witness doctrine has lost considerable force over the years. *Id.* at 659 n.4 (questioning the doctrine's continued vitality given updates to the Federal Rules of Evidence). Courts therefore have good reason to take a "conservative approach" to applying such an

inference, as doing so may well be "erroneou[s]" and grounds for retrial. KENNETH S. BROUN ET AL., 2 MCCORMICK ON EVID. § 264 (8th ed.) (collecting cases).

No such inference should follow here. A missing-witness inference is warranted only if the party seeking the inference shows that "the potential testimony [sought] would be . . . noncumulative." *United States v. Boston*, 194 F. App'x 890, 892 (11th Cir. 2006) (quoting *Jones*, 861 F.2d at 659). But as explained above, Mr. Warren has not and indeed cannot show that testimony from the Governor would add significant value—many officials participated in the decision to suspend Mr. Warren, and many besides the Governor therefore know as much about the justifications for Mr. Warren's suspension. *Supra* 7; *see also Chuhak v. Chi. Transit Auth.*, 504 N.E.2d 875, 881 (Ill. App. Ct. 1987) (missing-witness inference was unwarranted when other witnesses with similar knowledge were available to testify). And again, any evidentiary gaps can be filled by the Governor's 30(b)(6) representative, who can be educated on the Governor's decision-making process. *See Labit v. Santa Fe Marine, Inc.*, 526 F.2d 961, 962–63 (5th Cir. 1976) (affirming refusal to issue a missing-witness instruction when the requesting party had obtained the witness's deposition before trial); *United States v. Warwick*, 695 F.2d 1063, 1069 (7th Cir. 1982) (similar when witness's trial testimony would likely be "cumulative" of his deposition testimony).

More fundamentally, a missing-witness instruction is inappropriate when there is good cause for the witness's absence. *See Latin Am. Music Co. v. Am. Soc'y of Composers Authors and Publishers*, 593 F.3d 95, 102 (1st Cir. 2010) ("When deciding whether to issue a missing witness instruction the court must consider the explanation (if any) for the witness's absence[.]"); *see also United States v. Pitts*, 918 F.2d 197, 200 (D.C. Cir. 1990) (defendant had good reason not to produce a witness at trial when that witness was likely to invoke his Fifth Amendment privilege). And there is good cause here. The Governor is the highest-ranking official in Florida's executive branch, is tasked with "tak[ing] care that the [State's] laws be faithfully executed," Fla. Const., Art. IV, § 1(a), and is responding to a natural calamity in Southwest Florida, alongside his many other executive obligations. So this is not a case in which a party has "fail[ed] to call an available witness with important and relevant knowledge" because "he has something to fear in the witness' testimony." *United States v. Tucker*, 552 F.2d 202, 210 (7th Cir. 1977).

Applying a missing-witness inference when a high-ranking official invokes the apex doctrine would also vitiate the doctrine. Rather than safeguard busy government officials from the burdens of discovery, that hobbled version of apex would present a Hobson's choice: submit to a burdensome deposition or lose your case. The result would be a judicial encroachment on the very decision that the apex doctrine protects: the executive branch's "prerogative" to "designate which of its

17

high-ranking officials should appear as its representative in a proceeding of the judicial branch." *In re USA*, 624 F.3d at 1375.

## CONCLUSION

Compelling the Governor of the State of Florida and his top executive aide to "personal[ly] appea[r] . . . for interrogation" in a federal proceeding is a "serious encroachment on the separation of powers," *In re USA*, 624 F.3d at 1374, and a substantial distraction from the executive branch's weighty obligations. Because Mr. Warren has not shown that extraordinary circumstances warrant such "intrusive discovery," *In re Cheney*, 544 F.3d at 314, the Court should issue a protective order barring Mr. Warren from deposing the Governor and his Chief of Staff.[4]

---

[4] Even if the Court were otherwise inclined to agree with Mr. Warren, at the very least it should limit any depositions to written questioning under Federal Rule of Civil Procedure 31. *See Brennan v. City of Phila.*, 388 F. Supp. 3d 516 (E.D. Pa. 2019) (barring apex deposition when plaintiff had "not shown that a limited deposition by written questions pursuant to Federal Rule of Civil Procedure 31 would not be effective in obtaining the information that plaintiff seeks").

Dated: October 20, 2022

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*

/s/ *Henry C. Whitaker*
HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*
JEFFREY PAUL DESOUSA (FBN 110951)
  *Chief Deputy Solicitor General*
DAVID M. COSTELLO (FBN 1004952)
  *Deputy Solicitor General*

JAMES H. PERCIVAL (FBN 1016188)
  *Deputy Attorney General*
  *of Legal Policy*
NATALIE CHRISTMAS (FBN 1019180)
  *Assistant Attorney General*
  *of Legal Policy*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

GEORGE T. LEVESQUE (FBN 555541)
JEFF AARON (FBN 123473)

GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32302
(850) 577-9090
*george.levesque@gray-robinson.com*

*Counsel for Governor DeSantis*

## CERTIFICATE OF CONFERRAL

Consistent with Local Rule 7.1(B), the Governor raised the issues identified

in this motion with Mr. Warren. He opposes the requested relief.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Local Rule 7.1(F) because it contains 4,402 words.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ *Henry C. Whitaker*
Solicitor General