## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ANDREW H. WARREN,

    *Plaintiff*,

    v.                          Case No. 4:22-cv-302-RH-MAF

RON DESANTIS, individually and in his
official capacity as Governor of the State
of Florida,

    *Defendant*.

_____/

## DEFENDANT'S MOTION TO BAR
## <u>COMPELLED TESTIMONY</u>

**INTRODUCTION**

"Legislators ought not call unwilling judges to testify at legislative hearings about the reasons for specific judicial decisions, and courts ought not compel unwilling legislators to testify about the reasons for specific legislative votes." *Florida v. United States*, 886 F. Supp. 2d 1301, 1303 (N.D. Fla. 2012) (Hinkle, J.). The same goes for the State's chief executive and his top executive aide. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) ("[J]udicial inquiries into legislative or *executive* motivation represent a substantial intrusion into the workings of other branches of government." (emphasis added)). Few issues pose a "more serious" "threat to the separation of powers" than "compelling the personal appearance of" high-ranking executive officials "for interrogation" in federal court. *In re USA*, 624 F.3d 1368, 1373–74 (11th Cir. 2010). Yet Mr. Warren has pointedly reserved the possibility of compelling the Governor and his Chief of Staff to testify at trial. To justify that intrusion, Mr. Warren would have to show that this is the "extraordinary" case in which sufficient evidence is not "available from alternate" sources. *Id.* at 1372 (quoting *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993)).

With discovery essentially complete, it is clear that Mr. Warren cannot meet that burden. To begin with, the Governor has consented to examination of the three officials "primarily responsible" for developing Mr. Warren's suspension, *id.* at

1

1373, and this Court should "respect [the Governor's] decision" to "substitute" the testimony of himself and his Chief of Staff with that of the officials "most knowledgeable" about the suspension order, *id.* at 1373, 1376. The Governor has also approached this case with remarkable transparency, waiving his executive and attorney-client privileges, producing thousands of pages of documents reflecting his deliberative process, and answering multiple rounds of written discovery. Combined with the information that Mr. Warren has obtained through nine depositions and multiple third-party subpoenas, he has more than enough evidence to discern the Governor's motives without hauling Florida's top executive officials into court. To top it off, Mr. Warren has failed to exhaust all evidentiary avenues— as he must to establish extraordinary circumstances—by refusing to depose a Rule 30(b)(6) representative of the Governor's office, from which he could have obtained binding declarations about the Governor's motivations.

For these and the reasons below, the Court should preclude Mr. Warren from calling the Governor and his Chief of Staff at trial. In addition, given the condensed trial schedule, the upcoming Thanksgiving holiday, and the importance of this issue, the Governor asks that this Court order Mr. Warren to respond by **Thursday, November 17**, and that this Court rule by **Monday, November 21**, so

that the parties have sufficient time to seek emergency relief in the Eleventh Circuit, if necessary.[1]

## LEGAL STANDARD

Although a party may seek to compel a "person" to "testify" at trial, Fed. R. Civ. P. 45(a)(1)(A)(iii), "[h]igh ranking government officials" are not ordinary people, *In re U.S.*, 985 F.2d at 512. They are instead entrusted to perform critical public functions, and thus "have greater duties and time constraints than other witnesses." *Id.* "[T]o protect [those] officials from the constant distraction of testifying in lawsuits," *id.*—and to avoid unnecessarily offending the separation of powers[2] by "[c]ompelling" their "personal appearance" in "judicial proceeding[s],"

---

[1] The fact-intensive standard for establishing extraordinary circumstances required the Governor to wait until the end of discovery to file this motion. The Governor also would have filed yesterday—the official close of discovery—but conferral with opposing counsel, which the Governor initiated on Friday, November 11, did not conclude until today. The Governor has thus filed this motion at the earliest opportunity.

[2] Mr. Warren says that the vertical separation of powers—otherwise known as federalism—is not implicated here because the "Fourteenth Amendment's Due Process Clause is specifically intended to ensure that state officials may be held to answer in federal court for constitutional violations." DE 94 at 6 n.1. But the same is true for federal officials under the Fifth Amendment's Due Process Clause, *see* U.S. Const. amend. V, yet the apex doctrine applies to federal officials all the same, *see In re USA*, 624 F.3d at 1369; *In re U.S.*, 985 F.2d at 512. And anyway, the Fourteenth Amendment does not give federal courts free rein to interrupt the workings of state government through invasive judicial inquiry. That is why this Court recognized in *Florida v. United States* that the "respect due a coordinate branch of government" is "perhaps [the] most importan[t]" justification for protecting state officials from intrusive questioning in federal court. 886 F. Supp.

*see In re USA*, 624 F.3d at 1373–74, 1376 (analyzing *United States v. Morgan*, 313 U.S. 409 (1941))—courts place "appropriate limitations" on efforts to compel their testimony, *see Florida v. United States*, No. 3:21-cv-1066, 2022 WL 4021934, at *2 (N.D. Fla. Sept. 2, 2022) (citing *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007)).

Those limitations are collectively called the "apex doctrine." *See id.* (discussing the doctrine's evolution). Under that doctrine, if a government official establishes that he is "high ranking," a "district court should rarely, if ever," force him "to testify about [official] duties or decisions," *In re USA*, 624 F.3d at 1376 (citing *Morgan*, 313 U.S. 409), be it in a deposition, *see In re U.S.*, 985 F.2d at 512 (barring apex deposition), or in open court, *see In re USA*, 624 F.3d at 1373–77 (barring questioning of apex official at in-court proceeding). A court may do so only if the party seeking the testimony shows that "extraordinary circumstances" require the official's testimony. *Id.* at 1373; *see also In re U.S.*, 985 F.2d at 512 (granting mandamus to quash subpoena to FDA Commissioner when case did not involve "extraordinary circumstances"); *Odom v. Roberts*, 337 F.R.D. 359, 365 (N.D. Fla. 2020) ("The party seeking to depose the official has the burden of

---

2d at 1303; *see also Arlington Heights*, 429 U.S. at 268 & n.18 (stating in a challenge to state-level action that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and are "usually to be avoided" (citation omitted)).

establishing [extraordinary circumstances].”). Such circumstances do not exist, though, when sufficient evidence “is available from alternate witnesses.” *In re USA*, 624 F.3d at 1372 (quoting *In re U.S.*, 985 F.2d at 512); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022) (“We cannot intrude into the workings of the executive branch and the time of that branch's leaders if there is another way to obtain the necessary information.”); *Bogan*, 489 F.3d at 423 (similar).

## ARGUMENT

The apex doctrine bars Mr. Warren from compelling the Governor and his Chief of Staff to testify. Both are high-ranking officials who serve at the highest echelon of Florida's executive branch. And Mr. Warren cannot establish that this is the extraordinary case in which sufficient information is not obtainable from alternate sources.

## I. The Governor and his Chief of Staff are high-ranking government officials.

The quintessential high-ranking government official is one at the “highest or uppermost point” of an organization's governing structure. *Florida*, 2022 WL 4021934, at *3. The Governor fits that bill. He sits “atop [the state executive branch's] organizational chart,” *id.* at *4, and falls right in line with other government officials that have been found sufficiently “high ranking” for apex purposes, *see United States v. Newman*, 531 F. Supp. 3d 181, 188–89 (D.D.C.

2021) (noting that the apex doctrine has been applied to the President, cabinet-level officials, the Mayor of the District of Columbia, and United States Senators, among others). "Without a doubt," then, "Governor [DeSantis] is . . . a high-ranking state government official" under the apex doctrine. *New York v. Oneida Indian Nation of N.Y.*, No. 95-cv-0554, 2001 WL 1708804, at *3 (N.D.N.Y. Nov. 9, 2001) (New York's Governor was a high-ranking official); *see also Coleman v. Schwarzenegger*, No. 90-cv-0520, 2008 WL 4300437, at *4 (E.D. Cal. Sept. 15, 2008) (same for California's Governor). Mr. Warren has conceded as much. *See* DE 94 at 7 (calling this case a dispute between "two high-level government officials").

The same is true for the Governor's Chief of Staff, James Uthmeier. A government official also qualifies as high ranking if he "reports directly to" or is otherwise "closely connected" to an organization's head. *Florida*, 2022 WL 4021934, at *4 (emphasis omitted). Mr. Uthmeier checks both boxes. He reports to only the Governor, DE 91-1 at 1, and is "intimately and inextricably involved" with the Governor's policymaking process, *Oneida Indian Nation*, 2001 WL 1708804, at *3; DE 91-1 at 1–2. He is thus of a piece with other chiefs of staff that courts have found "high ranking" for apex purposes. *See Coleman*, 2008 WL 4300437, at *4 (California Governor's Chief of Staff was a high-ranking official); *Newman*, 531 F. Supp. 3d at 189–90 (same for White House Chief of Staff); *In re*

*Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President's Chief of Staff); *McNamee v. Massachusetts*, No. 12-cv-40050, 2012 WL 1665873, at *1–2 (D. Mass. May 10, 2012) (U.S. Representative's Chief of Staff); *see also Oneida Indian Nation*, 2001 WL 1708804, at *3 (Secretary to New York's Governor). Mr. Warren did not contend otherwise in his response to the Governor's Motion for Protective Order. *See generally* DE 94.

## II. Mr. Warren cannot show extraordinary circumstances.

Mr. Warren has also failed to establish extraordinary circumstances to compel Florida's highest-ranking executive official and his Chief of Staff to testify. Mr. Warren has not shown that the information he seeks—the motivations underlying the suspension order—cannot be obtained from "alternate" sources. *See In re USA*, 624 F.3d at 1372 (extraordinary circumstances are not present when sufficient evidence is "available from alternate" sources (quoting *In re U.S.*, 985 F.2d at 512)); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 703 (compelling high-ranking testimony unnecessarily "upset[s] the proper balance of powers" when "the record in th[e] case contain[s] 'sufficient evidence'" (citation omitted)).

1. As the Eleventh Circuit has made clear, a party cannot show that evidence is "[un]available from alternate" sources when a government entity "substitute[s]" the testimony of a high-ranking official with the testimony of other high-ranking officials who were "primarily responsible" for developing the challenged

government action. *In re USA*, 624 F.3d at 1372–73. For example, in *In re USA*, a trial court ordered the EPA Administrator—the highest-ranking official in the EPA—to personally appear at a hearing because the court needed to find out whether the EPA was "sincere[ly] commit[ted]" to an agency action. *Id.* at 1371. The Eleventh Circuit, however, issued a writ of mandamus quashing the order because the EPA had offered an adequate substitute: the "senior Agency official . . . responsible for preparing the [action]." *Id.* Because the official was both "high-ranking" and "responsible for [the action's] preparation," he was sufficiently "knowledgeable" to answer whether the agency was "sincere[ly] commit[ted]" to its execution. *Id.* at 1373. The district court's refusal to accept such a "reasonabl[e]" substitute in place of the EPA's top decisionmaker was thus a "serious encroachment on the separation of powers" and on the "prerogative [of the executive branch] to designate which of its high-ranking officials should appear as its representative in a proceeding of the judicial branch." *Id.* at 1373–75.

That analysis controls here. Mr. Warren has alleged that a particular government action—his suspension—was tainted by unconstitutional motive. But rather than divert his attention from more pressing matters (like managing back-to-back hurricane effects), the Governor has "exercised [his] prerogative" to "substitute" his and his Chief of Staff's testimony with that of the high-ranking "official[s] primarily responsible" for developing the suspension order, *id.* at 1373:

his General Counsel Ryan Newman; his Chief Deputy General Counsel Raymond Treadwell; and his Senior Advisor for Public Safety Larry Keefe. *See* Exs. 1–3.

Those important executive officials cultivated the suspension order from start to finish. Mr. Keefe identified the bases for the order and completed an initial draft. Ex. 2 at 5, 9–10, 13, 16; Ex. 3 at 5, 7–9, 11–12, 14–15, 19, 23, 29–30. Mr. Newman and Mr. Treadwell analyzed and refined the bases for the suspension. Ex. 2 at 15, 20–22, 25–27, 29, 33; Ex. 3 at 11–12, 14–15, 26–27. Mr. Newman then presented those bases to the Governor. Ex. 1 at 4–9; Ex. 2 at 10, 37; Ex. 3 at 19–22, 31. And both Mr. Newman and Mr. Treadwell drafted the final order, Ex. 1 at 11; Ex. 2 at 15, 17, 18, 27; Ex. 3 at 9, 29–30; and incorporated the Governor's edits, Ex. 1 at 11–14; Ex. 2 at 18, 36–37. So they are no doubt the "most knowledgeable official[s] about" the suspension order because they were "responsible for its preparation," *In re USA*, 624 F.3d at 1373, and are thus "adequate substitutes" for the State's top executive official and his highest-ranking aide, *id.* at 1369.

Mr. Warren's arguments to the contrary are unpersuasive. He says that no one but the Governor (and apparently his Chief of Staff) can speak to the Governor's "subjective motivations" for the suspension because the Governor "alone" was "empowered to suspend Mr. Warren." DE 94 at 5, 9. But subjective motives are often (if not typically) proven through objective, circumstantial

evidence. After all, it is "difficult . . . to obtain direct evidence of [an] official's intentions." *United States v. Tex. Educ. Agency (Austin Indep. Sch. Dist.)*, 564 F.2d 162, 167 n.6 (5th Cir. 1977). So "[f]requently the most probative evidence of intent will be *objective evidence* of what actually happened." *Washington v. Davis*, 426 U.S. 229, 253 (1976) (Stevens, J., concurring) (emphasis added). Thus, plaintiffs and defendants in discrimination cases may prove their claims and defenses inferentially using only objective, circumstantial evidence. *See, e.g.*, *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (A plaintiff may prove discriminatory motive using "circumstantial evidence," like a comparator or a suspicious string of events.); *Burrell v. Bd. of Trs. of Ga. Mil. Coll.*, 125 F.3d 1390, 1395 (11th Cir. 1997) (explaining how an employer may prove the same-decision defense through objective evidence). And the same is true in many other legal contexts. *See, e.g.*, *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (to establish a claim for prosecutorial vindictiveness, a defendant must "affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus"); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) ("Courts focus on objective evidence revealing the intent of the parties to determine if an implied license exists . . . .").

*In re USA* also rejected the premise that extraordinary circumstances are present simply because a final decisionmaker's subjective motives are at issue.

There, as here, subjective motives were paramount: The district court needed to know whether the EPA was "sincere[ly] commit[ted]" to a particular action, a question that ultimately turned on the subjective motivations of the EPA's final decisionmaker, its Administrator. Yet still the Eleventh Circuit quashed an order compelling the Administrator's personal appearance because the EPA offered an "adequate substitute"—the senior "official primarily responsible" for developing the challenged action. *In re USA*, 624 F.3d at 1369, 1373, 1375. The same is true here.[3]

That tracks how the Eleventh Circuit resolved its only other apex case: *In re U.S.*, 985 F.2d 510. There, criminal defendants moved to dismiss an indictment on the ground that the FDA had engaged in selective prosecution, *id.* at 511, which required that the defendants prove the agency's discriminatory intent, *see United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). To develop their claim, the district court allowed the defendants to depose the FDA Commissioner—the

---

[3] *In re USA* also forecloses any argument that the apex doctrine applies only to depositions, not to trial testimony. The court's rule there was unequivocal: To "compe[l] the appearance of a high-ranking officer in a *judicial proceeding*," the party seeking the testimony must show extraordinary circumstances. *In re USA*, 624 F.3d at 1372 (emphasis added). The Eleventh Circuit thus applied that rule to quash an order compelling *in-court* testimony about the EPA's intentions. *See id.* at 1373. And the policy driving the apex doctrine—protecting high-ranking officials from distracting and time-intensive judicial process—applies equally (if not with more force) to compelling a high-ranking official's testimony in open court. The case's current procedural posture therefore does not alter the analysis.

person ultimately responsible for the FDA's actions. But the Eleventh Circuit again issued a writ of mandamus quashing the deposition, reasoning that the deposition was inappropriate when "testimony was available from alternate witnesses" who were well-versed in how the FDA investigates and prosecutes cases. *See In re U.S.*, 985 F.2d at 512.[4] The takeaway is this: A party has no right to question a government entity's highest-ranking officials in open court when a different high-ranking official is "the most knowledgeable about" the government action. *See In re USA*, 624 F.3d at 1373.

Mr. Warren protests that any substitution would deprive him of the Governor's and Chief of Staff's "first-hand knowledge" about the Governor's motivations. DE 94 at 8–12. But when Mr. Warren moved for a preliminary injunction, a lack of that supposedly critical evidence did not stop him from claiming that he could show a substantial likelihood of success. *See* DE 3-1. And at any rate, although final decisionmakers invariably have first-hand knowledge

---

[4] The Eleventh Circuit also granted the writ because the FDA Commissioner did not hold that post when the defendants' case was first investigated by the FDA. *See In re U.S.*, 985 F.2d at 512–13. But that was an independent basis for granting the writ. As the Eleventh Circuit later made clear, the availability of alternate witnesses in *In re U.S.* sufficed to defeat a finding of extraordinary circumstances standing alone. *See In re USA*, 624 F.3d at 1372 ("In *In re United States*, we concluded that the record failed to support a finding of special need for compelling the Commissioner to testify because the record disclosed that testimony was available from alternate witnesses." (simplified)).

about why they made their decisions, courts routinely bar parties from probing them about those decisions. *See In re USA*, 624 F.3d at 1369, 1373. The Supreme Court did just that in *Department of Commerce v. New York*, where it stayed the deposition of Commerce Secretary Wilbur Ross, even though his motivations for adding a citizenship question to the 2020 census were directly relevant to the plaintiffs' claim that his addition was improperly motivated. *See* 139 S. Ct. 2551, 2573–74 (2019).

This Court has explained why the law precludes parties from prodding decisionmakers about their motives even when those motives are uniquely in the decisionmakers' possession. Intrusive "judicial inquiries" into an official's "motivation" can "substantial[ly]" hinder the "workings of other branches of government." *Florida*, 886 F. Supp. 2d at 1303 (quoting *Arlington Heights*, 429 U.S. at 268 n.18). Given the "burden that being compelled to testify would impose on state [officials], the chilling effect the prospect of having to testify might impose on [officials] when considering proposed [action] . . . , and perhaps most importantly, the respect due a coordinate branch of government," *id.*, parties must generally establish an official's intent without forcing busy "decisionmaker[s] [to take] the stand," *id.* (quoting *Arlington Heights*, 429 U.S. at 268 n.18); *see also Commerce*, 139 S. Ct. at 2573.

That principle is "particularly relevant" where, as here, the decisionmaker exercises a "prosecut[orial]" power (like the suspension power). *In re U.S.*, 985 F.2d at 512. A prosecuting official may account for many factors when indicting a defendant (or suspending a wayward official). But if such officials were "asked to testify in every case [they] prosecuted, [their] time would be monopolized by preparing and testifying in such cases." *Id.* The "cumulative effect" of preparing and providing that testimony would be not only a "considerable" burden, *see id.* at 512 n.2; it would also "chil[l]" the Governor's performance of his duty by forcing him to pay a testimony tax to exercise a state constitutional power—exactly the result this Court sought to avoid in *Florida*. 886 F. Supp. 2d at 1303.

Plaintiffs like Mr. Warren may instead make their case through other means, like citing "statements" made by the official to others, *Arlington Heights*, 429 U.S. at 268; relying on documentary evidence, like "minutes of [official] meetings[] or reports," *id.*; piecing together the "sequence of events leading up to the challenged decision" to "shed some light on the decisionmaker's purposes," *id.* at 267; or examining the "official[s] primarily responsible" for preparing the action from beginning to end, *In re USA*, 624 F.3d at 1373. And compiling that secondary evidence is no fruitless exercise—such sources can certainly establish a decisionmaker's intent even without the decisionmaker's testimony. *See Jenkins*, 26 F.4th at 1249 (circumstantial evidence can be used to prove discriminatory

14

motive); *Burrell*, 125 F.3d at 1395 (same to prove same-decision defense); *see also Dep't of Com.*, 139 S. Ct. at 2574. In *Commerce*, for instance, the plaintiffs were still able to establish that the Secretary's justification for adding the citizenship question was pretextual—even after the Supreme Court stayed the Secretary's deposition—by developing an expansive "administrative record," built brick-by-brick through documentary evidence and the testimony of lower-level officials. *See id.* at 2574–76. The parties here had the chance to build the same kind of record during discovery and can use it to prove their respective claims and defenses.

Finally, it does not matter that this "dispute turns on whether [the Governor] acted with improper motive in a decision he personally made." DE 94 at 9 (simplified). If a final decisionmaker's personal involvement and alleged malintent justified his inquisition, high-ranking officials would be obliged to testify in every discriminatory-motive case, *but see Arlington Heights*, 429 U.S. at 268 & n.18 (most claims will not be "extraordinary" enough to warrant the "substantial intrusion" of deposing an official about his "motivation[s]"); the EPA Administrator would have been bound to "personal[ly] appea[r]" in district court, *but see In re USA*, 624 F.3d at 1373–74; and Secretary Ross would have been deposed, *but see In re Dep't of Com.*, 139 S. Ct. 16, 17 (2018) (staying order compelling Secretary Ross to testify when he was personally involved in a decision). A decisionmaker's involvement or alleged malintent therefore does not

establish an extraordinary need for his testimony. Rather, extraordinary circumstances arise in the rare case in which important evidence is altogether "[un]available from alternate" sources. *In re USA*, 624 F.3d at 1372 (citation omitted). Because the Governor has provided three "high-ranking" and "knowledgeable" alternates who were "primarily responsible" for the suspension order, that is not the case here. *See id.* at 1369, 1373.

2. The availability of knowledgeable substitutes alone defeats the notion that Mr. Warren has a "special need" to question the Governor and his Chief of Staff, *see id.* at 1372, but the wealth of supplementary evidence Mr. Warren has accumulated throughout this case confirms the point. For one thing, the Governor's motives are fully expressed within the four corners of the suspension order itself, DE 1-1 at 1–11, so little (if any) additional evidence is necessary, *see Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 587 (D.C. Cir. 1985) (barring plaintiff from deposing high-ranking officials about their motivations for an action when all that information could be found in "published reports and available agency documents"); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (barring apex deposition when plaintiffs had "not demonstrated a need for [the official's] testimony beyond what is already in the public record"); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006) ("[D]ecisionmaking" of the "executive" branch is entitled to a "presumption of regularity.").

But even apart from that, the Governor has already waived all privileges related to the suspension, exhibiting an unprecedented level of openness in an effort to resolve this case "as quickly as we can." T. 61 (9/19/2022 hearing). He has produced thousands of pages of documents reflecting his office's deliberative process. DE 91-3; *see also* Ex. 4. He has also answered multiple rounds of written discovery. *See Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (no error when district court barred deposition of high-ranking official and instead ordered him "to answer interrogations in lieu of a deposition"); *Groupion, LLC v. Groupon, Inc.*, No. 11-cv-0870, 2012 WL 359699, at *4 (N.D. Cal. Feb. 2, 2012) (barring apex deposition because party had "not established that other less intrusive means of discovery, such as interrogatories, have been exhausted without success"). And that evidence only adds to the information Mr. Warren has obtained over the course of nine depositions and through several subpoenas to third parties with relevant information. Combined with testimony from the three high-ranking officials discussed above, those alternative evidentiary sources more than suffice to identify the Governor's intent. *See City of Fort Lauderdale v. Scott*, No. 10-cv-61122, 2012 WL 760743, at *3 (S.D. Fla. Mar. 7, 2012) (barring deposition of city manager, even when his "motivations and actions" were allegedly at issue, because plaintiffs had failed to show that they could not prove their case through alternative means).

3. And even putting all that evidence to the side, Mr. Warren failed to exhaust an evidentiary alternative that could have provided him binding statements about the Governor's motivations: a Rule 30(b)(6) deposition. *See In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("Exhaustion of all reasonable alternative sources is required" to justify apex testimony.). Recall, Mr. Warren has sued the Governor in his official capacity as the holder of a state governmental office.[5] Mr. Warren therefore had the opportunity to depose the Governor as a government entity under Federal Rule of Civil Procedure 30(b)(6) and question the Governor's representative, who would have been educated on all identified topics and authorized to take official positions "on [the Governor's] behalf." Indeed, this Court appeared to contemplate that very procedure in its scheduling order. *See* DE 69 at 2 ("[A]ny [motion for protective order] should be filed as soon as efforts to resolve or narrow the dispute—including *through a Federal Rule of Civil Procedure 30(b)(6) deposition* or depositions of other individuals—have broken down." (emphasis added)). And it repeated the point in its Order on Depositions of

---

[5] Mr. Warren also purported to sue the Governor in his "individual capacity." But as this Court recognized when it rejected Mr. Warren's *Pennhurst* argument, "Mr. Warren's suspension was an official action of the State of Florida." DE 68 at 6. So this is an official-capacity case, not an individual-capacity case. And it seems Mr. Warren has accepted that: He did not cite his individual-capacity claim as justification for failing to depose a 30(b)(6) witness in his response to the Governor's Motion for Protective Order. DE 94 at 16–17.

the Governor and Chief of Staff. *See* DE 98 at 3 ("This order does not bar Mr. Warren from conducting *a Federal Rule of Civil Procedure 30(b)(6) deposition* . . . ." (emphasis added)). Had Mr. Warren taken such a deposition, he could have admitted that testimony at trial. *See* Fed. R. Civ. P. 32(a)(3) (adverse parties may use Rule 30(b)(6) depositions "for any purpose"). Yet Mr. Warren refused, and because discovery has closed, he may not take the deposition now.

Mr. Warren claims that a Rule 30(b)(6) deposition would have been inadequate. He speculates that he would have been unable to test the Governor's motivations using the crucible of cross-examination in such a deposition. *See* DE 94 at 16–17. But that was no excuse for failing to try. And in any event, that is always true when a plaintiff challenges a final decisionmaker's motivations. The very point of the apex doctrine is that, barring the most extraordinary circumstances, parties cannot "interrogat[e]" high-ranking officials in federal court, even about their subjective intentions. *In re USA*, 624 F.3d at 1374; *see also Arlington Heights*, 429 U.S. at 268 n.18. To prove that such circumstances exist, parties must "exhaust all other means of discovery," including a Rule 30(b)(6) deposition. *In re U.S. Dep't of Educ.*, 25 F.4th at 704 (plaintiffs could not establish extraordinary circumstances when they "never took a Rule 30(b)(6) deposition"). And without pursuing that avenue, a party cannot say in good faith that sufficient evidence is "[un]available from alternate" sources, *In re USA*, 624 F.3d at 1372

(citation omitted)—a key "requirement" to establish extraordinary circumstances that Mr. Warren has "not met here," *see In re U.S. Dep't of Educ.*, 25 F.4th at 704; *Greer v. County of San Diego*, No. 19-cv-378, 2022 WL 2134601, at *3 (S.D. Cal. June 14, 2022) (no extraordinary circumstances when party failed to take Rule 30(b)(6) deposition); *Gauthier v. Union Pac. R.R. Co.*, No. 1:07-cv-12, 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008) (similar).

### III. No adverse inference should follow from the Governor's and Mr. Uthmeier's refusal to testify.

Lastly, no adverse "inference properly could, [or] should, be drawn" from either the Governor's or Mr. Uthmeier's decision to focus their energies on fulfilling their important duties rather than on preparing and providing live testimony. *See* DE 69 at 3 (inviting the parties to address whether a lack of testimony from either side should warrant an adverse inference).

To start, the Governor as a party was willing to testify through a Rule 30(b)(6) representative. Again, Mr. Warren has not sued the Governor for actions he took as an individual; he has sued the Governor for actions he took as the holder of a state governmental office. Mr. Warren therefore could have deposed the Governor's representative in a Rule 30(b)(6) deposition, who would have testified *as the Defendant*. *See* Fed. R. Civ. P. 30(b)(6) (authorizing government entity to designate representative "to testify on its behalf"); *see QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (an entity "appears vicariously

through its designees" in the Rule 30(b)(6) procedure). So no adverse inference should be drawn against the Governor for Mr. Warren's refusal to pursue all viable avenues to the Governor's testimony.

But lack of a Rule 30(b)(6) deposition aside, it would still be inappropriate to draw an adverse inference—also known as a "missing-witness inference"—simply because the Governor or his Chief of Staff declines to testify. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 658–59 (11th Cir. 1988) (explaining the missing-witness inference). Under the missing-witness rule, a court may assume that an absent witness's testimony "would be unfavorable" when a "party has it peculiarly within his power to produce [the] witnes[s]" but does not. *Id.* at 658–59 (citation omitted). The rule, however, has lost considerable force over the years. *See id.* at 659 n.4 (questioning the doctrine's continued vitality given updates to the Federal Rules of Evidence). Courts thus have good reason to take a "conservative approach" to applying such an inference, as doing so may well be "erroneou[s]" and grounds for retrial. KENNETH S. BROUN ET AL., 2 MCCORMICK ON EVID. § 264 (8th ed.) (collecting cases). And to justify the inference, the party seeking the inference must establish two critical elements, neither of which is present here.

First, a missing-witness inference is warranted only if "the potential testimony" sought from the missing witness would be "noncumulative." *United States v. Boston*, 194 F. App'x 890, 892 (11th Cir. 2006) (quoting *Jones*, 861 F.2d

at 659). But as explained above, the Governor specifically declined to protect sensitive deliberations over the decision to suspend Mr. Warren through waiving privilege, permitting discovery of thousands of pages of documents and numerous depositions probing those deliberations, including of the three officials primarily responsible for the suspension order. *Supra* 7–17; *see also Chuhak v. Chi. Transit Auth.*, 504 N.E.2d 875, 881 (Ill. App. Ct. 1987) (missing-witness inference was unwarranted when other witnesses with similar knowledge were available to testify). Neither the Governor's nor Mr. Uthmeier's testimony would add anything meaningful to that wealth of information. And if any gaps remain, they were born of Mr. Warren's refusal to depose the Governor's 30(b)(6) representative, who could have been educated on the Governor's decision-making process and on Mr. Uthmeier's role in it. *Cf. Labit v. Santa Fe Marine, Inc.*, 526 F.2d 961, 962–63 (5th Cir. 1976) (affirming refusal to issue a missing-witness instruction when the requesting party had obtained the witness's deposition before trial); *United States v. Warwick*, 695 F.2d 1063, 1069 (7th Cir. 1982) (similar when witness's trial testimony would likely be "cumulative" of his deposition testimony).

Second, a missing-witness inference is inappropriate when there is good cause for the witness's absence. *See Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers*, 593 F.3d 95, 102 (1st Cir. 2010) ("When deciding whether to issue a missing witness instruction the court must consider the

explanation (if any) for the witness's absence." (simplified)); *see also United States v. Pitts*, 918 F.2d 197, 200 (D.C. Cir. 1990) (defendant had good reason not to produce a witness at trial when that witness was likely to invoke his Fifth Amendment privilege). And there is good cause here. The Governor is the highest-ranking official in Florida's executive branch and is tasked with "tak[ing] care that the [State's] laws be faithfully executed." Fla. Const., Art. IV, § 1(a). And his Chief of Staff is the highest-ranking non-elected official in the Governor's office and is charged with helping the Governor perform his many executive obligations, DE 91-1, like responding to two natural calamities in as many months. So this is not a case in which a party has "fail[ed] to call an available witness with important and relevant knowledge" because "he has something to fear in the witness' testimony." *United States v. Tucker*, 552 F.2d 202, 210 (7th Cir. 1977).

More fundamentally, applying a missing-witness inference when a high-ranking official invokes the apex doctrine would vitiate the doctrine. Rather than safeguard busy government officials from the burdens of appearing in court, that hobbled version of apex would pose a Hobson's choice: submit to burdensome questioning or lose your case. The result would be a judicial encroachment on the very decision that the apex doctrine protects: the executive branch's "prerogative" to "designate which of its high-ranking officials should appear as its representative in a proceeding of the judicial branch." *In re USA*, 624 F.3d at 1375.

## CONCLUSION

Compelling the Governor of the State of Florida and his top executive aide to "personal[ly] appea[r] . . . for interrogation" in a federal proceeding is a "serious encroachment on the separation of powers," *id.* at 1373–74, and a substantial distraction from the state executive's weighty obligations. Because Mr. Warren cannot show that extraordinary circumstances warrant such intrusive questioning, the Court should bar Mr. Warren from calling the Governor and his Chief of Staff at trial.

Dated: November 15, 2022

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*

/s/ *Henry C. Whitaker*
HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*
JEFFREY PAUL DESOUSA (FBN 110951)
  *Chief Deputy Solicitor General*
DAVID M. COSTELLO (FBN 1004952)
  *Deputy Solicitor General*

JAMES H. PERCIVAL (FBN 1016188)
  *Deputy Attorney General*
  *of Legal Policy*
NATALIE CHRISTMAS (FBN 1019180)
  *Assistant Attorney General*
  *of Legal Policy*

ZACHARY GROUEV (FBN 1038629)
  *Solicitor General Fellow*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

GEORGE T. LEVESQUE (FBN 555541)
JEFF AARON (FBN 123473)
GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32302
(850) 577-9090
*george.levesque@gray-robinson.com*

*Counsel for Governor DeSantis*

## CERTIFICATE OF CONFERRAL

Consistent with Local Rule 7.1(B), the Governor raised the issues identified in this motion with Mr. Warren. He opposes the requested relief and the proposed briefing and decisional schedule.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Local Rule 7.1(F) because it contains 5,851 words.

/s/ *Henry C. Whitaker*
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ *Henry C. Whitaker*
Solicitor General
