

**Andrew H. Warren**
Office of the State Attorney
13th Judicial Circuit

February 3, 2022

Sheriff Chad Chronister
P.O. Box 3371
Tampa, FL 33601

Dear Sheriff Chronister,

    I write in response to your letter of January 25, 2022 regarding my office's policy on the prosecution of cases arising from law enforcement stopping pedestrians and bicyclists for civil traffic infractions.

    I am proud of the productive partnership my administration has had with the Sheriff's Office both prior to and since you became Sheriff. Open and honest communication has been critical to that partnership, and I appreciate your willingness to be candid on difficult issues or those where we may disagree, as I hope you have appreciated mine. In that spirit of candor, let me express that your letter comes from a fundamental misunderstanding of our pedestrian and bicycle stop policy.

    First, you incorrectly suggest that my office failed to discuss the pedestrian/bike stop policy with your agency. As we have typically done throughout our professional relationship, you and I spoke over the phone in the fall of 2021 about my intention to create this policy. At that time, I summarized to you how the issue had arisen, the research we had conducted, and the policy we were preparing to implement. You raised no objection and accurately pointed out that the policy would have limited impact on cases arising from the Sheriff's Office because your agency makes few arrests from civil bicycle (and pedestrian) infractions. Additionally, I discussed this policy at length with the Tampa Police Department before implementation because they had recommendations, whereas you did not.

    Second, your contention that this policy is a political statement creating a blanket approach to no longer prosecute certain types of cases is inaccurate. To the contrary, our policy articulates consistent criteria for handling charges that arise from civil pedestrian/bike stops, including clearly directing that we *will* file charges where there is "a direct threat to public safety, such as where an individual has suffered physical harm or where a firearm is involved." The policy is expressly limited to stops where the initial encounter resulted from only a civil traffic infraction; if an arrest is made for a crime unrelated to a pedestrian/bike stop, even if the arrest happens during such a stop, the policy does not apply.

    Third, you conclude that our policy's presumption of not filing low-level, non-violent charges that often arise from civil pedestrian/bike stops means that we will not evaluate the facts of each individual case. That conclusion is mistaken; the policy expressly states that prosecutors should consider the "facts and circumstances of the case." Furthermore, the language is similar to that contained in the Juvenile Arrest Avoidance Program, which your agency helped draft, in that there is a presumption of not filing criminal charges with broad exceptions for public safety concerns.

    Fourth, our policy has not taken any tools away from law enforcement. To the contrary, our policy expressly recognizes, "[b]icycle and pedestrian stops can be a legal and legitimate law



4:22-cv-302-RH-MAF
**PLAINTIFF'S EX**
**34**

EXHIBIT
Chronister
12
11-2-22

AW_000010

PEX 34.001

enforcement tool to promote community safety ...." With this policy in place, your agency, like other law enforcement agencies, can continue to conduct pedestrian/bike stops where there is a valid legal basis to do so, and we will continue to evaluate each arrest resulting from such stops. In fact, my office filed charges for drug trafficking and possession of paraphernalia against a defendant who was stopped for a civil bike infraction by your agency on January 13, 2022—just days after we implemented this policy.

Fifth, your letter points to a misunderstanding of the data underlying our policy, and although the data included in your letter is unclear, it appears consistent with the countywide data across all law enforcement agencies. Specifically, your chart appears to show that over 44% of arrests made by the Sheriff's Office from 2017-2019 for resisting arrest without violence based upon a pedestrian/bike stops involved Black defendants. That figure is consistent with the over-representation of Black defendants for resisting arrest without violence relative to all misdemeanor offenses that the Florida International University researchers found, as documented in our policy. Also, your data shows that the percentage of Black defendants in these types of arrests made by the Sheriff's Office has increased significantly over three years, from 23% to 60%. Lastly, your data confirms what you and I previously discussed—that, overall, your agency makes a small number of arrests from civil pedestrian/bike stops.

Although our pedestrian/bike stop policy includes background information, I am providing some additional information to correct any misunderstanding. The analysis that led to this policy started with cases where the sole charge was resisting arrest without violence. We continued that analysis by looking at a subset of cases involving pedestrian or bicycle stops for civil infractions. You may recall the United States Department of Justice was asked to review similar issues in 2016 within the City of Tampa. Ultimately, the Justice Department noted that allegations or even perceptions of racial disparities in police activities undermine trust between law enforcement and the community. The Justice Department concluded that bicycle stops did not improve public safety and had no discernible effect on crime generally. While in recent years our county has seen far fewer cases from pedestrian/bike stops as a result of intentional changes made by law enforcement, a relatively small number of cases based on these stops are still referred to our office for prosecution. We adopted this policy to ensure that we handle these cases consistently while ensuring public safety and avoiding the erosion of trust between law enforcement and the community.

As the State Attorney, I am responsible not only for ensuring the safety of the residents of Hillsborough County but also for protecting people's Constitutional rights and promoting fairness and justice within the system—goals that I know you share. My administration has implemented numerous policies and practices over the past five years to accomplish these goals, working with other partners, including the Sheriff's Office. As a result, we have reduced crime and kept our community safe. This policy is no different, and I am confident that it will further our shared goals.

As always, I thank you and your deputies for your service in protecting our community, and I look forward to continued cooperation between our two offices.

Sincerely,

ANDREW H. WARREN
State Attorney