EXHIBIT
0010
Raymond Treadwell
10.31.2022

Andrew H. Warren
Office of the State Attorney
13th Judicial Circuit

July 7, 2022

MEMORANDUM

TO: Officewide

FROM: Andrew H. Warren
State Attorney

SUBJECT: Gun Violence Unit & Prosecution Strategies

## Introduction

Gun violence is one of the most dangerous threats to the safety of our community. Our agency has a long-standing history of commitment to gun violence prosecution. Our dedicated gun violence prosecutors are specifically trained to assist the agency with the unique challenges of gun prosecution including scientific data, evidence challenges, and proving illegal possession of firearms. Reducing these crimes through the coordinated efforts of our agency and our law enforcement partners remains a top priority. To further these efforts, we have developed this memorandum to provide a detailed explanation of our prosecution strategies to help reduce gun violence, including: a history of our gun violence unit; an explanation of how this unit will be restructured to better adapt to the needs of the community; factors to consider in charging decisions; a prosecution guide for felon in possession and carrying a concealed firearm cases; guidance for juvenile gun offenders; and how to better utilize our Case Management System for effectively managing information in gun violence cases.

## History of Gun Violence Unit

The SAO established a specialized gun violence unit nearly 15 years ago in partnership with Project Safe Neighborhoods, a federal program created in 2001 to bring together federal, state, and local partners to reduce gun violence. Even after our office's Project Safe Neighborhoods grant funding expired in 2009, we continued to invest resources to have dedicated gun violence prosecutors through the creation of our Gun Violence Unit ("GVU") to aggressively prosecute the most serious gun violence cases in our community.

The GVU has consisted of a small number of experienced prosecutors coordinating with law enforcement and focusing on specific cases involving the most serious gun violence offenders. These gun violence offenders often come from a subset of offenders whose conduct shows signs of escalation and typically consists of multiple possession and/or trigger-pulling crimes. These crimes are often motivated by disputes between neighborhood groups and gangs, which frequently lead to retaliatory crimes. This specialized prosecution unit targets these offenders in whatever crimes have been charged to neutralize their ability to threaten the safety of our

4:22-cv-302-RH-MAF
PLAINTIFF'S EX
57

community. The GVU is designed to help allocate limited resources to focus on the most dangerous offenders.

**GVU Structure**

The GVU is being restructured to better respond to the increase in gun violence in our community and to provide support to firearm prosecutions at all levels of the office. We are expanding the number of prosecutors to four (Felony Division Chief, Felony Division Deputy Chief, and two Lead Trial Attorneys), increasing the level of attorney supervision for gun crime cases, and broadening our level of interaction with law enforcement on gun related crimes.

The GVU will be supervised by a designated Felony Division Chief and Felony Division Deputy Chief. These supervisors will:

1. Supervise the Lead Trial Attorneys assigned to the Gun Violence Unit;
2. Work with law enforcement agencies to identify those defendants of special concern who pose the biggest threat to our community. On these cases, these supervisors will communicate with the assigned attorneys and divisions to ensure that appropriate resources are allocated and consistent decisions are made regarding those cases;
3. For any cases identified by the Gun Violence Identification Case Tag, the GVU Chief must approve the waiver of any minimum mandatory sentence; and,
4. Coordinate and conduct annual firearm prosecution training for ASAs.

Two Lead Trial Attorneys will be assigned to the GVU, with each being assigned to four of the eight felony divisions. Within their assigned divisions, these GVU ASAs will be assigned violent 1st degree felony cases involving a firearm and which have been identified as individuals of special concern by law enforcement and non-fatal firearm cases resulting in great bodily harm (cases carrying the 25-year minimum mandatory penalties under Florida's 10-20-Life provisions in Florida Stat. §775.087) excluding domestic violence cases.

The GVU Chief may assign cases which meet these criteria to regular divisions as needed. A Gun Violence Identification Case Tag will be added to these cases in our Case Management System by the GVU Legal Assistant.

**Responsiveness to Law Enforcement**

It is imperative that law enforcement and the SAO work collaboratively in investigating and prosecuting gun violence. Prosecutors often have only the information contained in criminal report affidavits and other case-specific information when making decisions about how to handle a case. By contrast, law enforcement agencies may have access to criminal information related to unsolved cases or ongoing investigations that may not be known to prosecutors. As a result, it is imperative that law enforcement officers and prosecutors work together not only on the cases sent for criminal prosecution but also communicate and cooperate on open investigations for defendants of special concern.

Law enforcement should identify individuals of special concern based upon their heightened threat to the community, significant prior record, or connection to additional dangerous crime. The GVU ASAs, along with other senior prosecutors, will meet regularly with law enforcement to discuss individuals or defendants who pose significant safety threats to the community. Notifications of these individuals can also be sent to the Gun Violence Unit distribution list.

Upon receipt of this email, the GVU Legal Assistant will add the case tag "Gun Violence" to the case in CMS and will email the assigned ASA and his/her chief notifying him/her that s/he has a gun violence case which involves an individual of special concern, and that any offers will need to be approved by the GVU Chief or Deputy Chief.

*Multi-agency Case Conferencing*

The four GVU ASAs will be responsible for participating in regularly scheduled meetings with local law enforcement partners regarding the investigation and prosecution of gun violence. These meetings include the TPD Violent Crime Unit, the quarterly CSIS meeting and the monthly multi-agency case conferencing meeting. Notes regarding specific cases should be entered into CMS Case Notes or saved to the electronic version of the file.

The multi-agency case conferencing meeting is an opportunity to discuss cases with state and federal prosecutors to determine which jurisdiction is best suited to handle particular cases. The majority of the cases discussed are open in the state court system through an arrest or the issuance of a warrant occurring close in time to the offense. Law enforcement will notify the SAO of gun violence cases that will be reviewed at this meeting by emailing notifications to GunViolenceUnit@sao13th.com. Upon receipt of this email, the GVU Legal Assistant will add the case tag "Gun Violence" to the case in CMS and will email the assigned ASA and his/her chief notifying him/her that s/he has a gun violence case which is being reviewed by federal authorities for possible federal prosecution. No ASA may resolve a gun violence case that has been identified for federal review until federal authorities complete that review and any offers must be approved by the GVU Chief or GVU Deputy Chief.

*GVU Duty*

The four GVU ASAs will serve in a duty rotation to take calls from law enforcement at any time to approve search or arrest warrants or respond to investigative questions from law enforcement on cases involving non-fatal shootings. A dedicated duty phone is assigned to the GVU, and the duty coverage schedule will be published to local law enforcement as part of the regular duty schedule. Search warrants and arrest warrants involving gun violence may still be reviewed and approved by any supervisory ASA who is authorized to approve warrants. This duty rotation allows law enforcement to begin working with the GVU at the investigative stage on cases likely to be prosecuted by the GVU.

**Additional Firearm Offenses**

Gun violence cases that do not involve an overt act of violence will be handled through our felony letter divisions. These charges include felon in possession of a firearm, possession of a firearm by a delinquent felon, and carrying a concealed firearm. As with any category of crimes, the threat to public safety depends on the particular facts of the case and the defendant's criminal history, and the fact that these charges do not involve an overt act of violence does not mean that a defendant charged with one of these offenses does not pose a public safety threat. As always, prosecutors should consider the defendant's threat to public safety in handling these cases. Prosecutorial resources are available to support our ASAs in the preparation of their cases, as well as promote consistency in how our agency handles these matters. These resources include:

- Annual training focused on the prosecution of firearm charges prepared by GVU
- Availability of the members of the GVU to consult on individual gun cases
- Publication of a Legal Quick Guide to Illegal Possession of Firearms
- Implementation of written prosecutorial standards contained in this policy to promote a consistent and informed approach to prosecutions of gun cases

**Charging Decisions**

When making filing decisions regarding gun charges, there will be a presumption that the charging document will include the "actual possession" language whenever the facts and evidence support such filing. There will also be a presumption that felon in possession charges will be filed in the same charging document as other charges arising out of the same case with the understanding that severance may be appropriate for trial.

Whether reviewing a case for intake, completing discovery, or preparing for trial, the assigned ASA should prepare the case thoroughly, including preparing for potential evidentiary challenges and identifying supplemental avenues of investigation. The assigned ASA should also be cognizant of factors which are indicative of an increased danger to the community whether based upon the prior actions of the defendant or based on facts which connect the charged offense to a pattern of dangerous criminal conduct within the community. This may include:

- Jail Phone Calls/Jail Visitation
- Witness Statements / Sworn Statements
- Fingerprint Analysis of Firearm (including related magazine and ammunition if possible)
- Social Media Investigations
- Information received from ShotSpotter
- ATF eTrace of Firearms Recovered
- NIBIN Associations: Related Reports
- Defendant's Prior Law Enforcement Contacts Related to Firearms

**Felon in Possession Cases, Fla. Stat. 790.23**

When evaluating a felon in possession case, the assigned ASA and the Division Chief should consider any aggravating factors when extending an offer. **Where a minimum mandatory sentence is applicable[1], there is a presumption that the assigned ASA will seek enforcement of that minimum mandatory. Offers below the guideline minimum or waiving the three-year minimum mandatory should not be made absent substantial mitigation and must be clearly documented within the file.**

---

[1] Fla.Stat. 775.087(2)(a): "except that a person who is convicted for possession of a firearm by a felon or burglary of a conveyance shall be sentenced to a minimum term of imprisonment of 3 years if such person possessed a "firearm" or "destructive device" during the commission of the offense. However, if an offender who is convicted of the offense of possession of a firearm by a felon has a previous conviction of committing or attempting to commit a felony listed in s. 775.084(1)(b) 1. and actually possessed a firearm or destructive device during the commission of the prior felony, the offender shall be sentenced to a minimum term of imprisonment of 10 years."

If a defendant is charged with felon in possession (either an adult or juvenile delinquency conviction) and has a prior conviction for any of the following offenses—murder, manslaughter, sexual battery, carjacking, home invasion robbery, robbery, arson, kidnapping, aggravated assault with a firearm, aggravated battery, aggravated stalking, shooting or throwing a deadly missile, armed burglary where the defendant arms him/herself prior to entry — that defendant should be considered a high risk of danger to the community with a demonstrated pattern of reoffending and the offer extended in the case should reflect this high risk of danger to public safety.

Additional aggravating factors include but are not limited to:

Illegal Activity

- Illegal controlled substance(s) found on defendant's person or in the vehicle that was the subject of the stop[2]
- Defendant is the driver or passenger in a stolen vehicle
- Defendant is also arrested for felony offense in same transaction/occurrence

Firearms Characteristics

- Firearm is listed as stolen
- Firearm has NIBIN associations with a shooting

Defendant and/or Case Characteristics

- Aggravating circumstances exist regarding defendant's conduct with law enforcement
- Aggravating circumstances exist regarding defendant's conduct with firearm before police response
- Defendant qualifies as a criminal gang associate as defined by Fla. Stat. §874.03.
- Defendant has on his/her person or in his/her possession indicia of criminal involvement, including, but not limited to, ski mask, stolen property, gang identifiers/clothing
- Defendant is the subject of a Risk Protection Order proceeding. Fla. Stat. §790.401.

Defendant's Criminal History

- Defendant has a prior violent or firearm felony arrest[3]
- Defendant, 24 years of age or older, has a prior violent or firearm felony juvenile delinquency adjudication
- Defendant has a prior withhold of adjudication on a felony offense (Not including bad checks)
- Defendant has a prior domestic violence conviction
- Defendant is the subject of an active injunction, or the defendant was arrested and convicted contemporaneous with the prior injunction.

---

[2] Not including lawfully possessed medical marijuana.

[3] Such qualifying prior felony arrests include those for Murder, Manslaughter, Sexual battery, Carjacking, Home-invasion robbery, Robbery, Arson, Kidnapping, Aggravated Assault with a Firearm, Aggravated Battery, Aggravated Stalking, Shooting or Throwing Deadly Missiles, Armed Burglary, Battery on a Law Enforcement Officer, Resisting with Violence, Burglary to a Dwelling.

**Carrying a Concealed Firearm, Fla. Stat. 790.01**

The charge of carrying a concealed firearm ("CCF") covers a broad spectrum of circumstances and dangers. Although in some cases this charge may be the only viable criminal charge on which our agency is able to proceed, the circumstances surrounding the crime are indicative of a course of conduct that poses a substantial risk of harm to the community or is part of an ongoing course of criminal conduct. Those cases may be identified by the investigative agency, or the aggravating factors referenced above may be identified which demonstrate substantial risk of danger to the community. When determining an offer to be made on these cases, there will be a presumption that our agency will seek an adjudication of guilt and seek incarceration in order to neutralize the defendant's ability to harm the community.

Some CCF cases involve defendants with no aggravating factors and no substantial risk to the community. These defendants may be merely irresponsible, negligent and/or uninformed regarding firearm laws. They may be amenable to education and rehabilitation given their demonstrated poor firearm training or a lack of responsible firearm education. These defendants may be appropriate candidates for diversion, which includes sanctions other than prison or jail. The ASA and Division Chief should evaluate the case and any mitigation factors that are present. A defendant is not required to meet all the mitigation criteria for a CCF diversion, and no defendant is automatically entitled to lesser sanctions merely because of the presence of mitigating factors.

As with all gun cases, the substantial risk to the community is the paramount factor in determining appropriate sanctions. Even if multiple criteria are present in a case, the prosecutor must still evaluate the specific facts of the case. If circumstances surrounding the case or related to the defendant indicate that diversion is not appropriate, then it should not be offered. In addition to an evaluation of the stated criteria, a defendant must meet all statutory eligibility requirements to participate in Pre-Trial Intervention. A CCF Mitigation Form must be completed and included as part of the case file for a referral to diversion on a CCF case. In addition to each of the standard conditions of PTI, the PTI contract will also contain the following special firearm related conditions:

1. No firearm possession (except defendant may possess a firearm while participating in an approved Firearms Safety Course).
2. Completion of a Firearms Safety Course pursuant to Florida Statute 790.06 or approved by the Florida Department of Agriculture.
3. No early termination until NIBIN results are confirmed.

**Supervision Sanctions**

Except as otherwise indicated within this memo, there will be a presumption in any gun case where the defendant is being placed on supervision for any portion of their sentence, that **the assigned ASA will request as a special condition that the defendant cannot possess any firearms or replica firearms**. This includes juvenile cases.

The suggested language for this condition is:

> The defendant shall not possess any weapons, or the replicas of any weapons, during the term of probation. The defendant shall refrain from making any social media postings that depict, involve, or mention firearms or replica firearms or that depict the

defendant posing with a firearm or replica firearm. The defendant shall refrain from making any social media postings that depict, involve, or mention any act of violence during the term of probation.

**Juvenile Cases**

A key component of Florida's juvenile criminal justice system is rehabilitation. The Department of Juvenile Justice ("DJJ") plays an active role as it relates to prosecuting juvenile offenders. The juvenile criminal justice system is focused on prevention, intervention, and treatment services that will re-direct troubled kids. Often juvenile offenders are assigned sanctions under Florida law with the goal of steering them away from crime rather than seeking retribution or incarceration. These sanctions must also be weighed against the necessity of maintaining public safety. As a result, gun crimes involving juvenile offenders present some of the most difficult cases for prosecutors, judges, case workers, social workers, and other stakeholders.

Each case must be evaluated on its specific facts, which include how best to keep a young person away from the criminal justice system while also keeping our community safe. DJJ officials and judges typically work collaboratively to find appropriate solutions for a juvenile offender, even in cases involving gun crimes. In addition to the information and resources provided throughout this policy, there are specific resources and processes for juvenile cases. These include:

1. *Identification of juveniles of special concern.*

Law enforcement may identify juveniles of special concern based upon their heightened threat to the community, significant prior record, or connection to additional dangerous crime. The GVU prosecutors, as well as senior prosecutors, will meet regularly with law enforcement to discuss juveniles who pose significant safety threats to the community. In addition, notifications of these juveniles should be sent to the Gun Violence Unit email distribution list (GunViolenceUnit@sao13th.com). Upon receipt of this email, the GVU Legal Assistant or the Juvenile Chief will add the case tag "Gun Violence" to the case in our Case Management System. If the case remains in juvenile court (as opposed to being transferred to adult court), the Juvenile Chief or Deputy Chief will monitor the progress of the case and provide updates to law enforcement. The Juvenile Chief or Deputy Chief must approve all offers on juvenile felony cases. If the juvenile is transferred to adult court, the case will be monitored by and offers will be approved by the GVU Chief and Deputy Chief.

2. *Identification and staffing of gun violence cases at intake*

All juvenile cases involving a firearm will be identified when assigned for intake. An internal staffing will occur with juvenile supervisors and assigned ASAs that will include discussions about filing decisions, appropriate resources available for the juvenile offender, and the preferred outcome for the case.

3. *Use of juvenile-specific statutes relating to secure detention*

Any juvenile charged with a crime that involves the possession of a firearm must be held in secure detention and have a hearing within 24 hours of being taken into custody. See Fla. Stat. 790.22(8). Our office will request continued detention if the juvenile qualifies for continued detention and the safety needs of the community require it.

For any firearm offense, the Petition should include a reference to Fla. Stat. §790.22 in addition to the substantive charge to provide the juvenile with notice regarding any potential secure detention sanctions.

Any juvenile convicted of a first offense for Minor in Possession of a Firearm, Fla. Stat. §790.22(3), ***may*** be ordered to serve up to three (3) days in secure detention (15 days for a second or subsequent violation). In addition. The juvenile ***must*** perform 100 community service hours and may have their driving license or privilege suspended or delayed issuance for up to one year.

Any juvenile convicted of a felony firearm offense and charged under Fla. Stat. §790.22(9) as well as the substantive offense ***must*** serve 15 days in secure detention and complete 100 community service hours unless committed to a residential commitment program.

## CMS Resources and Processes

### Gun Violence Case Tag

The Gun Violence Case Tag is intended to be used for:

- Cases that are being handled by the GVU prosecutors
- Cases that meet the criteria to be handled by the GVU prosecutors, but are assigned by the GVU Chief to be handled by Division ASAs
- Gun cases which have been identified by law enforcement as high-risk individuals of special concern
- Gun cases which are being considered for federal prosecution and which should not be resolved prior to that determination being made.

In these cases, offers should be reviewed and approved by the GVU Chief or Deputy Chief. Upon receipt of an email from law enforcement identifying a case involving an individual of special concern or a case being considered for federal prosecution, the GVU Legal Assistant will add the Gun Violence Case Tag to a case. This identification case tag is not intended to be added to all cases involving a gun. Rather, it should be used for identifying cases for handling consistent with the goals and information outlined in this memo.

### Reports

The use of the Gun Violence Case Tag allows the GVU Chief and Deputy Chief to track GVU cases more easily and assists our office in providing follow up communication with law enforcement regarding these cases.

### Workload – Case Tag: Gun Violence

On the Report page, Workload – Case Tag: Gun Violence provides a sortable list of all GVU cases with upcoming court dates providing a quick look at case status, including court date, division, assigned attorney, and discovery/subpoena status.

### Case-Gun Violence

On the Report page, the Case-Gun Violence report provides a mechanism for checking the status of all GVU cases for a particular year (the year is determined by the case number). The first section lists all open cases for the given year and their filing status providing a mechanism for tracking intake cases.

The second section lists all closed GVU cases for a given year, the date of disposition, whether the disposition was at trial or pre-trial, and the nature of the disposition (plea, verdict, nolle prosequi, dismissal).

Disposition

When a disposition is entered on a Gun Violence case, an email notification will be sent to the GVU Chief and the rest of GVU allowing them to stay abreast of cases as they resolve and facilitating timely follow up communication with law enforcement on the resolution of GVU cases.

| Highest Charge | Offender of special concern/identified for possible federal prosecution? | GV Case Tag | Assigned Prosecutor | Approval of any waiver of minimum mandatory sentence |
|---|---|---|---|---|
| Non-fatal firearm cases resulting in GBH excluding DV | Not applicable | Yes | GVU Prosecutor* | GVU Chief |
| Violent 1st degree felony firearm case | Yes | Yes | GVU Prosecutor* | GVU Chief |
| Violent 1st degree felony firearm case | No | Yes | Letter Division | GVU Chief |
| All other firearm charges | Yes | Yes | Letter Division | GVU Chief |
| All other firearm charges | No | No | Letter Division | Division Chief |

*Preference will be to assign these cases to the GVU Prosecutor. Based on staffing or case load needs, the case may be assigned an appropriate experienced prosecutor within the assigned letter division. The case will still be supervised by the GVU Chief.

MITIGATION FORM FOR UNLICENSED CARRYING OF A CONCEALED FIREARM

Defendant: ______________________________

Case Number: ____________________________

After review of the facts and circumstances surrounding this case, the defendant appears to be an appropriate candidate for diversion.

- ☐ The defendant meets the statutory requirements for PTI.

In addition, the following mitigation factors are present[4]:

- ☐ Firearm was acquired legally
- ☐ Defendant readily advised law enforcement of the presence of the firearm, and responded appropriately to the officer's questions concerning the firearm and the recovery of the firearm
- ☐ If the firearm was brandished, the defendant did so in response to a plausible threat
- ☐ If the firearm was not securely encased as defined by statute, it was possessed in a manner that was not readily accessible by the defendant
- ☐ Defendant has military or other formal training in firearms
- ☐ Defendant has a valid reason for carrying a firearm, such as one related to business or occupation
- ☐ Defendant took steps to obtain a concealed weapons permit such as registering or completing an approved firearm safety class prior to arrest.

In addition to each of the standard conditions of PTI, the PTI contract will contain the following special conditions:

1. No firearm possession (except defendant may possess a firearm while participating in an approved Firearms Safety Course).
2. Completion of a Firearms Safety Course pursuant to Florida Statute 790.06 or approved by the Florida Department of Agriculture.
3. No early termination until NIBIN results are confirmed.

______________________________ ______________________________

ASA Date Division Chief Date

[4] A defendant is not required to meet all the mitigation criteria for a CCF diversion, and no defendant is entitled to participate in such diversion. Even if multiple criteria are present in a case, the prosecutor must still evaluate the specific facts of the case; if circumstances surrounding the case or related to the defendant indicate that diversion is not appropriate, diversion should not be offered.

**Legal Quick Guide to Illegal Possession of Firearms**

Weapons and Firearms, F.S. 790

- What is a firearm?
  - Any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon, any firearm muffler or firearm silencer, any destructive device, or any machine gun.
- What is not a firearm?
  - A BB gun[5] or an antique firearm is not a firearm (unless used in the commission of a crime).
- What is possession?
  - Possession = knowledge + ability to control.[6] Possession may be actual or constructive.
  - When found in an area over which the defendant had exclusive possession, defendant's knowledge of the contraband and ability to maintain control over it may be presumed.[7]
- Prima facia case of constructive possession
  - Defendant is the sole occupant and in exclusive possession of a vehicle, and the firearm is found in the backseat.[8]
  - Defendant is the sole occupant and driver of car but not the owner.[9]
- Facts that do not support constructive possession
  - A firearm is found between mattresses in the bedroom of the defendant's home occupied by another, and there is touch DNA of the defendant (charge: felon in possession).[10]
  - A vehicle is jointly occupied, and there is only mere proximity of the defendant.[11]
  - A defendant driver and two other occupants flee from a car; a firearm is found on driver seat, but the defendant's prints are not on it.[12]
  - The defendant is the driver Jointly occupied vehicle, and a firearm wrapped in a handkerchief is in a car.[13]

---

[5] *J.M.P. v. State*, 43 So. 3d 189 (Fla. 4th DCA 2010); *Petz v. State*, 917 So. 2d 381 (Fla. 2d DCA 2005); *Wilson v. State*, 901 So. 2d 885 (Fla. 4th DCA 2005); *Mitchell v. State*, 698 So. 2d 555 (Fla. 2d DCA 1997), decision approved, 703 So. 2d 1062 (Fla. 1997).

[6] *Sinclair v. State*, 50 So. 3d 1223 (Fla. 4th DCA 2011); *Williams v. State*, 724 So. 2d 1214 (Fla. 4th DCA 1998).

[7] *Barlatier v. State*, 26 So. 3d 29 (Fla. 3d DCA 2009); *Hunter v. State*, 914 So. 2d 985 (Fla. 4th DCA 2005).

[8] *Sinclair v. State*, 50 So. 3d 1223 (Fla. 4th DCA 2011).

[9] *Henderson v. State*, 88 So. 3d 1060 (Fla. 1st DCA 2012), review denied, 163 So. 3d 509 (Fla. 2015).

[10] *Miller v. State*, 107 So. 3d 498 (Fla. 2d DCA 2013).

[11] *Watson v. State*, 961 So. 2d 1116 (Fla. 2d DCA 2007).

[12] *Williams v. State*, 724 So. 2d 1214 (Fla. 4th DCA 1998).

[13] *Daniels v. State*, 718 So. 2d 1274 (Fla. 2d DCA 1998).

Carrying a Concealed Firearm, F.S. 790.01

- Elements:
  1. Defendant knowingly carried on or about his or her person a firearm.
  2. The firearm was concealed from the ordinary sight of another person.
  3. At that time, defendant was not licensed to carry a concealed firearm.

- "On or about his or her person" means physically on the person or readily accessible to him or her.[14]
- "Ordinary sight of another person" means the casual and ordinary observation of another in the normal associations of life. A firearm need not be completely hidden, but it is not concealed if, although not fully exposed, its status as a firearm is detectable by ordinary observation.[15]
- A firearm can be in "open view" for purposes of search and seizure and concealed for purposes of the offense of carrying a concealed weapon.[16]
- Possession of multiple concealed firearms can support multiple convictions.[17]
- The amended unlicensed carrying of a concealed firearm statute requires the state to prove that the defendant did not have a license to carry a concealed firearm at the time of carrying.[18]
- A person over 18 can possess a concealed firearm within a vehicle without a license if it is for a lawful purpose and the firearm is securely encased or not otherwise readily accessible for immediate use.[19] Securely encased means in a glove compartment, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access. This includes a zippered pouch,[20] hanging from the dashboard in a plastic pouch with a flap over it,[21] or in a closed center console between the two front seats of car underneath papers and other objects in the console.[22] If an unloaded firearm is found in a vehicle and no ammunition is found, the defendant is entitled to dismissal on CCF; if ammunition is found in the vehicle, the exception no longer applies and a factual determination must be made on a case-by-case basis.[23] When an unsecured firearm located inside a vehicle is not

---

[14] *N.H. v. State*, 111 So. 3d 950 (Fla. 2d DCA 2013).
[15] *Mackey v. State*, 83 So. 3d 942 (Fla. 3d DCA 2012), aff'd on other grounds, 124 So. 3d 176 (Fla. 2013); *Ensor v. State*, 403 So. 2d 349 (Fla. 1981) (holding modified on other grounds by, *Dorelus v. State*, 747 So. 2d 368 (Fla. 1999)); *State v. Hinkle*, 970 So. 2d 433 (Fla. 4th DCA 2007).
[16] *Ensor v. State*, 403 So. 2d 349 (Fla. 1981).
[17] *C.S. v. State*, 638 So. 2d 181 (Fla. 3d DCA 1994).
[18] *Jackson v. State*, 289 So. 3d 967 (Fla. 4th DCA 2020).
[19] Fla. Stat. §790.25(5).
[20] *Alexander v. State*, 477 So. 2d 557 (Fla. 1985).
[21] *Urquiola v. State*, 590 So. 2d 497 (Fla. 3d DCA 1991).
[22] *Bell v. State*, 636 So. 2d 80 (Fla. 2d DCA 1994).
[23] *Ashley v. State*, 619 So. 2d 294 (Fla. 1993).

loaded, a court must consider the location and accessibility of both the firearm and the ammunition in determining whether the firearm is readily accessible.[24]

*"Readily accessible"*

- Generally, includes the interior of an automobile and the vehicle's glove compartment.[25]
- Under the driver's seat, and ammunition and a fully loaded clip were under the passenger's seat.[26]

*Not "readily accessible"*

- At the time of the arrest, the firearm was under the driver's seat of the defendant's locked vehicle, and the defendant was in his carport trying to find a way to enter his locked home.[27]
- The defendant is involved in a shooting and after leaving the scene put a firearm underneath the passenger seat. The defendant was outside of car and admitted that the firearm was under the front seat of the car.[28]
- An unloaded firearm is under front passenger seat.[29]
- An unloaded firearm wedged between the front seats of defendant's vehicle where ammunition was inside a closed center console of the vehicle; and the defendant would have had to retrieve the firearm, open the center console, retrieve the ammunition magazine, and load the firearm before he could use it.[30]
- A firearm is located inside a locked, unattended vehicle.[31]

---

[24] *State v. Weyant*, 990 So. 2d 675 (Fla. 2d DCA 2008).

[25] *U.S. v. Archer*, 531 F.3d 1347 (11th Cir. 2008); *State v. Hinkle*, 970 So. 2d 433 (Fla. 4th DCA 2007); *Wallace v. State*, 964 So. 2d 722 (Fla. 2d DCA 2007); *Gehring v. State*, 937 So. 2d 169 (Fla. 2d DCA 2006).

[26] *Ridley v. State*, 621 So. 2d 409 (Fla. 1993).

[27] *Lamb v. State*, 668 So. 2d 666 (Fla. 2d DCA 1996).

[28] *Brunson v. State*, 211 So. 3d 96 (Fla. 4th DCA 2017).

[29] *Strikertaylor v. State*, 997 So. 2d 488 (Fla. 2d DCA 2008).

[30] *State v. Weyant*, 990 So. 2d 675 (Fla. 2d DCA 2008).

[31] *Wallace v. State*, 964 So. 2d 722 (Fla. 2d DCA 2007).

Felons Carrying a Concealed Weapon or Possessing a Firearm, Ammunition, or an Electronic Weapon or Device

- Elements:
    1. Defendant had been convicted of a felony.
    2. After the conviction, defendant knowingly owned or had in his/her care, custody, possession, or control a firearm, an electric weapon/device or ammunition or carried a concealed weapon.
- A felony conviction requires proof of adjudication of guilt.[32] If a defendant offers to stipulate to the convicted felon element, this satisfies the State's burden on this element and the stipulation should be accepted.[33] The jury must be instructed on the stipulation.[34] This charge does not require a bifurcated trial.[35] If additional charges arise out of the same criminal episode, the Court should grant defense's motion to sever the other counts.[36] This statute does not apply to someone whose civil rights and firearm authority have been restored.
- This is a continuing crime; each period of uninterrupted possession of the same firearm is punishable only once.[37]
- Possession of multiple firearms or a firearm and ammunition during a single criminal episode is a single count of possession of a firearm or ammunition by a convicted felon.[38]
- Possession of firearm by convicted felon is a lesser of possession of firearm by violent career criminal.[39]
- CCF and possession of firearm can arise out of the same incident and conviction for both charges is not a double jeopardy violation.[40]
- Stand Your Ground law does not apply to a person engaged in unlawful activity, so does not apply to a defendant who was a felon in possession of firearm at the time of a shooting.[41]
- Necessity defense may apply.[42]

---

[32] *Clarke v. U.S.*, 184 So. 3d 1107 (Fla. 2016).

[33] *Pierce v. State*, 734 So. 2d 399 (Fla. 1999); *Brown v. State*, 719 So. 2d 882 (Fla. 1998).

[34] *Milton v. State*, 19 So. 3d 1143 (Fla. 1st DCA 2009).

[35] *Syder v. State*, 921 So. 2d 871 (Fla. 4th DCA 2006).
[36] *State v. Vazquez*, 419 So. 2d 1088 (Fla. 1982).
[37] *Rogers v. State*, 113 So. 3d 960 (Fla. 2d DCA 2013).
[38] *Hill v. State*, 711 So. 2d 1221 (Fla. 1st DCA 1998); *Bell v. State*, 122 So. 3d 958 (Fla. 2d DCA 2013); *Strain v. State*, 77 So. 3d 796 (Fla. 4th DCA 2011); Francis v. State, 41 So. 3d 975 (Fla. 5th DCA 2010).

[39] *Mathis v. State*, 53 So. 3d 1089 (Fla. 1st DCA 2011); *Pryor v. State*, 48 So. 3d 159 (Fla. 1st DCA 2010).
[40] *Galloway v. State*, 680 So. 2d 616 (Fla. 4th DCA 1996); *Freeman v. State*, 684 So. 2d 251 (Fla. 2d DCA 1996).
[41] *Harrell v. State*, 150 So. 3d 858 (Fla. 2d DCA 2014), review denied, 177 So. 3d 1266 (Fla. 2015).
[42] *Wade v. State*, 610 So. 2d 664 (Fla. 1st DCA 1992); *Marrero v. State*, 516 So. 2d 1052 (Fla. 3d DCA 1987); *Knight v. State*, 187 So. 3d 307 (Fla. 5th DCA 2016); *Arnold v. State*, 37 So. 3d 963 (Fla. 1st DCA 2010).

- Lack of knowledge regarding felony conviction not a defense.[43]

*DNA and Felon in Possession Charges*

- Although DNA can be strong evidence to establish possession, courts have found that DNA by itself is often insufficient to rebut a reasonable hypothesis of innocence.
  - "Evidence was not sufficient to support defendant's conviction for being felon in possession of a firearm or ammunition; although handgun was found in defendant's apartment and his DNA was on the handgun and magazine, State's witness could not determine when the DNA was put on the gun, and even more significantly, she testified that secondary DNA transfer was possible, and since there were additional inferences needed, that defendant's DNA was put on gun by him, and that it was put under the mattress by him, in order to believe that defendant possessed handgun, the DNA evidence was circumstantial, and defendant's theory was that it was the burglar, who put the handgun in his apartment, and state did not present any evidence inconsistent with this theory."[44]
  - "Defendant's DNA found on firearm's magazine at the time it was seized by law enforcement did not show, by itself, whether defendant committed or participated in the crime of possession of a firearm by a felon, after officer conducted traffic stop, observed suspect running, and found firearm near the car, and thus circumstantial evidence standard of review applied to the ruling on defendant's post-trial renewed motion for judgment of acquittal; DNA evidence presented the possibility DNA was transferred to the firearm without defendant being in possession of it or touching it."[45]
  - "Evidence was insufficient to support finding that defendant constructively possessed gun found between mattress and box spring in bedroom of defendant's home which was occupied by defendant's sister, as would support felon in possession of firearm charge, even though State presented DNA evidence establishing that defendant had touched gun at some undetermined point in past; there was no evidence whatsoever that defendant knew gun was located in that spot or that defendant had ability to exercise any control over gun at that time."[46]

---

[43] *Burkett v. State*, 518 So. 2d 1363 (Fla. 1st DCA 1988).
[44] *Finley v. State*, 139 So.3d 940 (Fla. 4th DCA 2014).
[45] *State v. Sephes*, 262 So.3d 811 (Fla. 4th DCA 2019).
[46] *Miller v. State*, 107 So.3d 498(Fla. 2d DCA 2013).

Additional Charges Relating to Illegal Possession of Firearm

| | | |
|---|---|---|
| Possession of firearm or ammunition by violent career criminal | F1 with 15-year min/man | Fla. Stat. §790.235 |
| Delinquents in possession of firearms, ammunition, or electric weapons or devices[47] | F2 | Fla. Stat. §790.23 |
| Possession of short-barreled rifle, short-barreled shotgun, or machine gun[48] | F2 | Fla. Stat. §790.221 |
| Possession of a firearm while under a Risk Protection Order | F3 | Fla. Stat. §790.401 |
| Possession of firearm or ammunition while under a final injunction for protection for domestic violence, stalking or cyberstalking | M1 | Fla. Stat. §790.233 |
| Open carrying of firearm | M2 | Fla. Stat. §790.053 |
| Carrying concealed firearm in prohibited location[49] | M2 | Fla. Stat. §790.06(12) |

[47] Must be under 24 years of age and must have been found delinquent for a charge that would be a felony if they were an adult at the time

[48] Not an antique and must be operable or readily made operable

[49] Includes courthouse, schools, polling places, jails and police stations, airport terminal, bars

Firearm Mandatory Minimums

| Statute | Sentence |
|---|---|
| 775.087 (2)(a) 1—Actual possession of a firearm in enumerated felonies a-q[50] | 10 year m/m |
| 775.087 (2)(a) 1—Discharge a firearm in enumerated felonies a-q | 20 year m/m |
| 775.087 (2)(a) 1—Discharge a firearm in enumerated felonies a-q and cause great bodily harm or death | Minimum of 25 years and up to life |
| 775.087 (2)(a) 1—Felon in possession of a Firearm[51] | 3 year m/m |
| 775.087 (2)(a) 1-Felon in possession of a Firearm with a prior felony conviction for a specified felony[52] AND a firearm was used in that crime | 10 year m/m |
| 775.087 (3)(a) 1--Actual possession of a semiautomatic firearm and a high-capacity detachable box magazine or machine gun[53] | 15 year m/m |
| 775.087 (3)(a) 2—Discharge of a semiautomatic firearm and a high-capacity detachable box magazine or machine gun | 20 year m/m |
| 775.087 (3)(a) 3—Discharge of a semiautomatic firearm and a high-capacity detachable box magazine or machine gun and causes great bodily harm or death | Minimum of 25 years and up to life |
| 790.235 Actual possession of a firearm by a Violent Career Criminal (under 774.084(1)(d) | 15 year m/m |

[50] Murder, Sexual Battery, Robbery, Burglary, Arson, Aggravated Battery, Kidnapping, Escape, Aircraft Piracy, Aggravated Child Abuse, Aggravated Abuse of Elderly or Disabled Person, Unlawful throw/place/discharge destructive device or bomb, Carjacking, Home-Invasion Robbery, Aggravated Stalking, Trafficking in specified substances and Possession of a Firearm by a Convicted Felon.

[51] Proof of actual possession is required to impose minimum mandatory

[52] Arson, Sexual Battery, Robbery, Kidnapping, Aggravated Child Abuse, Aggravated Abuse of Elderly or Disabled Person, Aggravated Assault with a Deadly Weapon, Murder, Manslaughter, Aggravated Manslaughter of an Elderly or Disabled Person, Aggravated Manslaughter of a Child, Unlawful throw/place/discharge destructive device or bomb, Armed Burglary, Aggravated Battery, Aggravated Stalking,

[53] Same enumerated felonies in Footnote 1

DEF 001558

**PEX 57.019**