**Weisman, Gary S.**

| | |
|---|---|
| **From:** | Weisman, Gary S. |
| **Sent:** | Tuesday, June 21, 2022 3:49 PM |
| **To:** | SnowWaxler, Melanie; Warren, Andrew H. |
| **Subject:** | RE: Planned parenthood lawsuit topics |
| **Attachments:** | Information and Talking Points related to HB 5.docx |

I am attaching a document that mostly follows the topics from our meeting the other day. If you need any of the documents from the two pending lawsuits you can find them here: https://cvweb.leonclerk.com/public/online_services/high_profile/high_profile.asp.

I left out the current federal law, because Andrew indicated he has that research and will include it. I did include some information on the current law in Florida, the two pending lawsuits, suggested talking points on the HB 5 litigation, bullet points the status of *Roe* and *Casey* for purposes of interviews, and some suggestions on language for the agency's position on prosecuting cases under HB 5.

Generally, if Andrew is giving interviews I presume it is to talk about the status of the law, possible outcomes, and how our agency would handle any of those outcomes.

**From:** SnowWaxler, Melanie <SnowWaxler_M@SAO13th.com>
**Sent:** Monday, June 20, 2022 1:52 PM
**To:** Warren, Andrew H. <Warren_A@SAO13th.com>; Weisman, Gary S. <Weisman_G@SAO13th.com>
**Subject:** RE: Planned parenthood lawsuit topics

Projected headline(s):
- State Attorney Andrew Warren Weighs Supports Right to Privacy
- SA Warren says prosecuting medical professionals for abortions will prevent the Criminal Justice System from focusing primarily on public safety which he says is dangerous.
- SA Warren Weighs in on Statewide Planned Parenthood Lawsuit: How this lawsuit could impact the law.

## Purpose: It is wise for us to take a leadership role on this—not to have the conversation but to shape what the conversation is.

Protecting public safety:

- Right to privacy as it pertains to abortion is not a public safety issue. (It is racist, though) It's a human, personal issue. Criminalizing abortion can perpetuate the biases of the criminal legal system and <u>disproportionately criminalize</u> Black and working-class women. And since Black people experience <u>miscarriage</u> and <u>stillbirth</u> at significantly higher rates than their white or Hispanic counterparts, they're particularly exposed to the risk of criminal investigations and legal liability.

- Criminalizing pregnancy outcomes—including abortions—is a waste of public funds and contributes to <u>mass incarceration</u>'s crisis of excessive punishment. Yet the true costs lie not in the state's



Weisman000271
DEX 71.001

budget, but in the lives of everyday people, needlessly caught up in the system. A criminal conviction, with or without time behind bars, can lead to numerous collateral consequences, including lost jobs or professional licenses, compromised housing, lack of access to public benefits, political disenfranchisement and a lifetime of earnings loss. THIS can create a public safety issue or encourage desperate people to commit crimes they otherwise would not have committed.

- Many who undergo abortions already have children of their own to care for, and incarcerating parents has a cascade of detrimental impacts on their minor children. And for people who experience pregnancy loss, their trauma is compounded by a miscarriage of justice as well.

There is major physician opposition to restrictions:

- Multiple studies document physician attitudes toward other state and federal laws and programs, including the Affordable Care Act, Medicare, and the federally mandated Physicians Quality Reporting Initiative.

- Medical and public health leaders have argued against legislative interference with doctor–patient relationships and have underscored physicians' critical role in shaping health care policy. But abortion, a health care procedure involved in 25% of all US pregnancies, is often omitted from studies of physician attitudes and their potential policy influence.

- Data supports that physicians across specialties oppose restrictions on abortion health care services and policies that prohibit physician involvement in abortion care. There is substantial concern that abortion restrictions would negatively affect patient care, the patient–provider relationship, and the ability of medical institutions to attract and retain a strong physician workforce.

- Physicians both provide abortion health care and hold the public's trust, ranking above teachers, police officers, and clergy in terms of their perceived honesty and ethics.

Higgins, J. A., Schmuhl, N. B., Wautlet, C. K., & Rice, L. W. (2021). The Importance of Physician Concern and Expertise in Increasing Abortion Health Care Access in Local Contexts. *American journal of public health, 111*(1), 33–36. https://doi.org/10.2105/AJPH.2020.305997

- SAO stance on prosecution: Therefore, is important to describe the process, the lawsuit, how long this could take to make through the medical system and the criminal justice system. It's too early for us to give the SAO stance, we simply do not know enough about where this is going.
- AW stance: I believe it is okay to interject your personal opinion here, as they are sure to ask. If you do provide it, bring it back to family, privacy and personal choice—and making those choices are hard. Another way to move away from your response quickly is to talk about all the REAL criminals you have put away who raped a girl or trafficked them. Cases of incest, etc.… This will allow you to be you and be honest about your opinion but remind people you are tough as hell on the true criminals here.
- Tough topics/questions to anticipate: I think the biggest topic is how will each SAO handle these cases if the law goes into effect on July 1 and especially if Roe is overturned. They will also be curious

Weisman000272
DEX 71.002

about how a case like this could even be prosecuted—that's when you go back to just how in-depth, time consuming, and difficult it will be to prosecute, and we still have no clear-cut idea when/how this will be executed if it does become law. Perhaps mention the rabbi's suing here, too. There is religious issue with criminalizing abortion as well on the other side of those whose religion believes it is immoral.

Describe lawsuit and the lengthy path it can/will take:

If Roe is overturned: devastating abortion access across large parts of the country and causing potentially severe health, financial and emotional consequences for people, especially those in marginalized communities.
DATA:
• In 2017, some 73% of Florida counties had no clinics that provided abortions, and 24% of Florida women lived in those counties.

| U.S. State | Abortion rate (the no. of abortions per 1,000 women aged 15-44), by state of residence, 2017 [a] | No. of abortions, by state of residence, 2017 [a] |
|---|---|---|
| Florida | 17.9 | 68,640 |
| Sources | Sources: 1 | Sources: 1 |

*Notes*
    a. Rates are the number of abortions per 1,000 women aged 15-44; numerator includes all abortions to residents of each state, regardless of age at outcome.

    b. **u** = unavailable

    c. **n/a** = not applicable

*Sources*
1. Maddow-Zimet I and Kost K, *Pregnancies, Births and Abortions in the United States, 1973–2017: National and State Trends by Age,* New York: Guttmacher Institute, 2021, https://www.guttmacher.org/report/pregnancies-births-abortions-in-united-states-1973-2017

All these road's lead to the same destination: the criminalization of people seeking reproductive health care, and of doctors and nurses who seek to provide it. If and when that does happen, our digital privacy will matter more than ever. (Another element of this I find interesting and might be asked about)
The fact that we are about to take one of the biggest strides backwards in our country's history is sad and prevents us from moving forward with much bigger issues.

MEDICAID:
33 states and the District of Columbia follow the federal standard and provide abortions in cases of life endangerment, rape and incest.
    o 4 of these states also provide state funds for abortions in cases of fetal impairment.
    o 4 of these states also provide state funds for abortions that are necessary to prevent grave, long-lasting damage to the person's physical health.
- 1 state provides abortions only in cases of life endangerment, in apparent violation of the federal standard.
- 16 states have a policy that directs Medicaid to pay for all or most medically necessary abortions.
    o 7 of these states provide such funds voluntarily.

Weisman000273
DEX 71.003

- o 9 of these states do so pursuant to a court order.
- Medicaid is a government-run insurance program, funded together by both the federal and state governments. **In Florida, the Medicaid health insurance program does not cover abortion costs.**

RIGHT TO PRIVACY:

- In the 1973 landmark case Roe v. Wade, the Supreme Court applied the core constitutional principle of privacy and liberty to a woman's ability to terminate a pregnancy. In Roe, the Court held that **the constitutional right to privacy includes a woman's right to decide whether to have an abortion.**

- The state constitution guarantees a right to privacy, and this standard was cited by Florida Supreme Court justices more than three decades ago to overturn a state law requiring parental consent for abortion.

- **State lawmakers have since approved a series of increasingly tougher abortion restrictions, but the right to privacy has been affirmed by the court.**

SIDENOTES/TP's:

- Republicans CANNOT win the cultural battle, so they are focusing on changing policy. Criminalizing medical care…obtaining medical records…all of this will take forever and just further clog the criminal justice system while limiting healthcare availability when it is already too expensive for many and in some cases not even attainable.

- If we sacrifice privacy here, where do we stop?

- Any sensible person would believe and even the state constitution says it is no one's business if/how/when a woman gets an abortion.

- We have the highest STD rates, HIV diagnoses…so let's criminalize Planned Parenthood for providing healthcare on these issues. (it's ridiculous) So we want to criminalize the service but not the act? How is this a public safety issue? Answer: It's not and it makes zero sense to classify it as one. "The U.S. continues to have the highest STD rates in the industrialized world," says David Harvey, executive director of the National Coalition of STD Directors, "and it preys on the most vulnerable among us."

**From:** Warren, Andrew H. <Warren_A@SAO13th.com>
**Sent:** Wednesday, June 15, 2022 4:15 PM
**To:** SnowWaxler, Melanie <SnowWaxler_M@SAO13th.com>; Weisman, Gary S. <Weisman_G@SAO13th.com>
**Subject:** Planned parenthood lawsuit topics

Weisman000274
DEX 71.004

Here's my list with notations for who will put together first draft of talking points/summary. Gary, please add other suggested topics. Mel, you don't need to organize TPs exactly like this; I'm just listing topics we need to cover.

- Current federal law (AW)
- Current state law (AW)
- Florida lawsuits -- Planned Parenthood and Boynton Beach synagogue (GW)
- Impact of upholding Florida law, overturning Roe -- eg, what happens next? (MW)
    - Criminalizing medical decisions
    - Protecting public safety
    - Judicial activism
- SAO stance on prosecution (MW)
- AW Personal position (MW)
- Tough topics/questions to anticipate (MW)

ANDREW H. WARREN
State Attorney
Thirteenth Judicial Circuit
419 N. Pierce Street
Tampa, Florida 33602
(813) 274-1900
Warren_A@sao13th.com
www.sao13th.com
@SAO13th| Facebook |Twitter | YouTube

Information and Talking Points related to HB 5, pending litigation, federal law

### I.     **Current Federal Law**

### II.    **Current State Law**

- Florida law permits termination of a pregnancy with some statutory restrictions. There are criminal penalties in place for anyone who willfully performs or actively participates in termination of a pregnancy in violation of Section 390..0111 and 390.01112
- *In Re TW, 551 So.2d 1186(FL 1989)* – struck down a parental consent statute that required a minor to obtain parental consent or convince a court that she is sufficiently mature to make the decision for herself. The Florida Supreme Court relied largely on Article 1 Section 23 of the Florida Constitution. It held that Floridians' right to privacy is much broader in scope than that of the Federal Constitution. The Florida Supreme Court adopted the compelling state interest standard, which shifts the burden to the State to prove that an intrusion on the right to privacy serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. "Florida's privacy provision is clearly implicated in a woman's right to continue her pregnancy."
- *Gainesville Woman Care, LLC v. State of Florida (FL 2017)* – The Florida Supreme Court struck down the 24-hour waiting period on women seeking to terminate their pregnancies. The Florida Supreme Court specifically held that this mandatory delay statute implicated Florida's expressed, fundamental right to privacy and was therefore subject to strict scrutiny.

### III.   **Florida lawsuits related to HB 5**

*Planned Parenthood of Southwest Florida et. al. v. State of Florida et. al.*

- Filed in Leon County
- Plaintiffs: Chapters of Planned Parenthood in Southwest, Central, South, East, and North Florida; Gainesville Woman Care (d/b/a Bread and Roses Women's Health Center; A Woman's Choice of Jacksonville; Indian Rocks Woman's Center (d/b/a Break and Roses; St. Petersburg Women's Health Center; Tampa Women's Health Center; Shelly Hsiao-Ying Tien M.D.
- The Plaintiffs all currently provide abortion care in Florida after 15 weeks.
- Defendants: State of Florida; Florida Department of Health; Joseph Ladapo, Secretary of Health for Florida; Florida Board of Medicine; David Diamon (Chair of the FL Board of Medicine); FL Board of Osteopathic Medicine; Sand Schwemmer D.O. (Chair of the FL Board of Osteopathic Medicine); Florida Board of Nursing; Maggie Hansen (Chair of the FL Board of Nursing); AHCA; Simone Marstiller (Secretary of AHCA)
- The Defendants are all state agencies or actors, and all represented through the Attorney General's Office.
- Remedy Sought: Plaintiffs seek a declaratory judgment, temporary injunction, and permanent injunction to prevent HB 5 from going into effect. Plaintiffs argue HB 5 violates the right to privacy of women seeking and obtaining abortions in the state of Florida. Without an injunction, Plaintiffs will be prevented from providing pregnant Floridians with critical medical care that they are constitutionally entitled to receive. Patients denied an abortion under HB 5 with be faced

with serious burdens and harms. HB 5 will prevent Floridians from exercising their fundamental constitutional right to decide whether to have an abortion prior to viability.

- Current law
  - Fla. R. Civ. P. 1.610 – a temporary injunction requires immediate and irreparable injury, loss, or damage to the movant
  - To obtain injunctive relief, Plaintiffs must demonstrate a substantial likelihood of success on the merits, no adequate legal remedy, irreparable harm, and the injunctive relief will serve the public interest.
  - Florida law already bans abortions after a fetus attains viability, which is defined as "the stage of fetal development when the life of a fetus is sustainable outside the womb through standard medical measures." § 390.011(13); § 390.01112
  - Florida law already establishes the framework for the provision of abortion care, including abortions be performed prior to the 3rd trimester of pregnancy, only by physicians, and only after obtaining informed consent from the patient.
  - Right to Privacy - Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law. *Florida Constitution Article 1 Section 23.* Adopted in 1980
- HB 5
  - Prohibits and criminalizes abortion care after 15 weeks as dated from the first day of a woman's last menstrual period (Plaintiffs argue this is two months before any pregnancy is viable).
  - Provides an exception to the Act if termination of a pregnancy is necessary to save the pregnant woman's life or avert a serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman other than a psychological condition.
  - Two physicians must certify in writing that the conclusion necessary for the exception to apply or a single physician must certify that the risks are imminent, and another physician is not available. (this certification requirement tracks the language in the current statute)
  - Provides an exception to the Act where the fetus has not achieved viability and two physicians certify in writing that the fetus has a fatal fetal abnormality (the Act defines this term as having a terminal condition that regardless of any life-saving treatment is incompatible with life outside the womb and will result in death upon birth or imminently thereafter)
  - A violation of HB 5 is a third-degree felony (5 years in prison, $5000 fine, 5 years probation). Current violations of Section 390.0111 and 390.01112 has the same punishment.
  - Any person who *willfully performs*, or *actively participates in*, a termination of pregnancy is in violation of the Act. Current violations of Section 390.0111 and 390.01112 identify the same people
  - Physicians and other health care professionals are subject to disciplinary action for violations of the Act including revocation of their licenses and administrative fines up to $10,000
  - Abortion clinics may be prevented from renewing their clinic licenses.
  - The Act takes effect on July 1

- The lawsuit notes that in 2012, Floridians rejected a ballot initiative that would have amended the state constitution to overturn state court decisions construing the right to privacy broadly and would have prohibited state courts from interpreting the Florida Constitution to provide stronger protection for abortion than the federal constitution.
- Statements of Fact included in the lawsuit
    - No fetus is viable at 15 weeks of pregnancy
    - While most abortions in Florida occur prior to 14 weeks of pregnancy, nearly 5,000 patients obtain abortion care after 14 weeks of pregnancy in Florida each year (FL's AHCA)
- Highlights of State's Response to Plaintiff's Motion for Emergency Temporary Injunction
    - Plaintiffs do not have standing to challenge HB 5 because none of them assert a personal right to privacy. The Plaintiffs instead are abortion clinics and one abortion doctor. The Plaintiffs seek to vindicate the privacy rights of their patients. To establish third-party standing they must show 1) injury in fact 2) a close relationship to the third-party 3) that the third party cannot protect his or her own interest.
    - Plaintiffs admit they will not face the penalties under the Act because if the Act goes into effect, they plan to stop providing abortions after 15 weeks. As a result, they cannot establish an injury in fact.
    - Plaintiffs admit that most abortions in Florida occur prior to 15 weeks
    - In 2021, 79,817 abortions were performed in Florida. Of those, 74,967 were performed in the first trimester, or within 13 weeks.
    - HB 5 will have no effect at all for most women seeking an abortion.
    - HB 5 would likely be subject to strict scrutiny under current precedent, but the State preserves for further review that strict scrutiny is the wrong standard and that, *as a matter of original public meaning*, the right to privacy does not include the right to obtain an abortion.
    - HB 5 protects maternal health by ensuring abortions occur earlier and it protects children in utero who, by 15 weeks, are conscious and can feel pain. Both are compelling state interests and advanced through the least restrictive means.
    - As a result, a temporary injunction would not serve the public interest.
    - If a temporary injunction is granted, Plaintiffs must post a bond. The state seeks a bond of $1 million dollars. The state argues that Planned Parenthood of Southwest and Central Florida earned almost $23.4 million in revenue in the last reported year (which was 2019).
    - The State makes reference to the fact that the U.S Supreme Court may soon overturn *Roe*. The State notes that as a result the Florida Supreme Court may also revisit its precedent on privacy and abortion. The State noted that clearly erroneous precedent should generally be revisited absent significant reliance interests. These developments, the State argued, call into question the continuing viability of Florida's abortion precedents or at least highlight the State's likelihood of prevailing on their argument that the right to privacy cases should be revisited.

*Generation to Generation, Inc. v. State of Florida et. al.*

- Filed in Leon County
- Plaintiff: Generation to Generation, Inc. d/b/a Congregation L'Dor Va-Dor
  https://www.ldorvador.org/

Weisman000278
DEX 71.008

- Plaintiff is a religious non-profit corporation operating in Palm Beach County for 25 years. The Plaintiff indicates in the filing that the lawsuit was filed on behalf of itself, its congregants, its members, its supporters, the Jewish community, religious minorities, and *on behalf of those whose ethics, values, morals, beliefs are in conflict with the religious views and assumptions that are reflected in the Act and inspired by its passage and who wished to impose their religious views upon all others who they consider morally inferior and thus not deserving of the right to exercise autonomy over their bodies in matters related to abortion, child birth, and family, and must be threatened with severe penalties if they attempt to make their own decisions in this regard.*
- Defendants: State of Florida; Ron DeSantis; Jack Campbell; Dave Aronberg; Ashley Moody; Florida Department of Health; Joseph Ladapo, Secretary of Health for Florida; Florida Board of Medicine; David Diamon (Chair of the FL Board of Medicine); FL Board of Osteopathic Medicine; Sand Schwemmer D.O.(Chair of the FL Board of Osteopathic Medicine); Florida Board of Nursing; Maggie Hansen(Chair of the FL Board of Nursing); AHCA; Simone Marstiller(Secretary of AHCA)
- Remedy sought: Plaintiff seeks a declarator judgement, temporary and permanent injunction to prevent the violation of Floridians' constitutional rights. In addition to the arguments in *Planned Parenthood et. al. v. State of Florida et. al.*, the Plaintiff argues that HB 5 establishes as the law of Florida a particular religious view about abortion and when life begins, which is contrary to the views of the Plaintiffs and many other Floridians.
    - Additional current law: Article 1 Section 3 of the Florida Constitution provides there shall be no law respecting the establishment of religion or prohibiting or penalizing the free expression thereof
    - Plaintiffs make the point that this provision specifically goes farther than the U.S. Constitution by prohibiting the establishment of laws that *penalize* the free exercise of religion.
- The lawsuit largely mirrors the *Planned Parenthood et. al. v. State of Florida et. al.* Some additional arguments are noted below:
    - The Act requires extensive reporting requirements not required for any other similar procedure in the State of Florida, such as detailed information about each abortion performed and the number of abortion regimens prescribed or dispensed.
    - These reporting requirements require providers to become informers against their own patients
    - These reporting requirements are a further violation of Article 1 Section 23
    - In Jewish law, abortion is required if necessary to protect the health, mental or physical well-being of the woman, or for many other reasons not permitted under the Act. Therefore, the Act prohibits Jewish women from practicing their faith free of government intrusion.
    - The Act serves no governmental interest
    - The Act is unconstitutionally void for vagueness (does not identify properly who can be prosecuted i.e those who provide a ride to the clinic, are staff at a clinic, provide rabbinic counseling, someone who gives directions to the abortion clinic, etc). As a result, the ACT is a violation of due process.
    - The Act is arbitrary and capricious. There is nothing in the act that supports the determination that after 15 weeks of pregnancy a fetus becomes a human being.
    - The Act is a violation of equal protection. There is no rational basis or compelling state interest to ignore the psychological harm inflicted on women who are forced to carry a

pregnancy to term. The Act discriminates against those who suffer mental illness or may suffer mental distress as a result of the Act.

## IV. Talking points on HB 5 litigation

- The Plaintiffs seek to stop HB 5 from going into effect on July 1(similar to the parental consent challenge and the 24 hour waiting period challenge)
- The hearing is scheduled for June 27, and a ruling will be issued prior to July 1
- If the Plaintiffs win: 1) HB 5 will not go into effect on July 1,  2) The Attorney General's lawyers will seek an appeal to the 1st DCA 3) Ultimately this will end up in the Florida Supreme Court
- If the Defendant's win: 1) HB 5 will go into effect on July 1 2) the Plaintiffs will seek an appeal to the 1st DCA 3) Ultimately, this will end up in the Florida Supreme Court
- We expect the AG's lawyers will argue either in this lawsuit or on appeal, that the Florida Constitution's privacy right does not extend to abortion.
- The state constitution guarantees a right to privacy, and this guarantee has been implicated in finding other abortion restrictions unconstitutional
- *HB 5 criminalizes early medical decisions*
    - Florida law already restricts abortion in the 3rd trimester
    - HB 5 identifies as criminals those who perform abortions or actively participate in abortions after the 15th week of pregnancy and subjects them to the punishment of a 3rd degree felony.
    - To be clear that is the doctor, the patient, the nurse, the person who books the appointment, the person who gives directions to the health center, the person who counsels someone to seek abortion services, and any number of other people
    - The AG's lawyers argue that HB 5 will not harm the plaintiffs in the lawsuit because the medical clinics admit they will not perform abortions after 15 weeks if the law goes into effect
- *HB 5 does not protect public safety*
    - The bill arbitrarily chooses 15 weeks as the moment the State criminalizes private medical decisions
    - The bill never identifies a public safety or compelling state interest that would justify government's intrusion on a Floridian's right to privacy

## V. Status of Roe and Casey Decisions

- At the moment *Roe* and *Casey* are settled law as it relates to the U.S. Constitution.
- A draft opinion is not law.
- In the draft opinion, the writer says the right to abortion is no implied by any provision of the U.S. Constitution. That is not the case in the Florida Constitution where the right to privacy is guaranteed.

## VI. SAO position on prosecution under HB 5

- The law takes effect July 1 unless an injunction is granted.
- The termination of a pregnancy is a complicated legal issue involving a woman's personal and medical decisions.

- If an injunction is not granted, we will not pre-judge the arrests law enforcement makes under this new law. We will review the facts and circumstances of each case law enforcement sends us.
- We will make decisions on how we prosecute cases consistent with the laws of Florida and our responsibilities as prosecutors to protect public safety and ensure justice.

Weisman000281
DEX 71.011