# Weisman, Gary S.

| | |
|---|---|
| **From:** | Warren, Andrew H. |
| **Sent:** | Tuesday, November 09, 2021 10:23 AM |
| **To:** | Weisman, Gary S.; Muratti, Renee |
| **Subject:** | Bicycle stops draft 11_08_2021 |
| **Attachments:** | Bicycle stops draft 11_08_2021.docx |

Further revisions.



1

*Office of the State Attorney, 13th Judicial Circuit, Policy Regarding Prosecution of Cases from Bicycle Stops*

*Background*

In 2016, the Tampa Police Department requested assistance from the Office of Community Oriented Policing Services within the U.S. Department of Justice to investigate charges of racial profiling and the disparate number of police stops of Black bicycle riders. The report noted that allegations or even perceptions of racial disparity in police activities undermine the trust within the communities that law enforcement serves. This investigation noted that law enforcement's use of bicycle stops was intended to promote community safety, particularly in high crime areas. Ultimately, however, the analysis revealed that these efforts disproportionately burdened Black bicyclists. The Department of Justice concluded that bicycle stops did not produce a community benefit and had no discernable effect on crime generally.[1] While law enforcement's use of bicycle stops has been reduced and transparency regarding the reasons for the stops has increased, cases based on bicycle stops are still being referred to our office for prosecution.

In 2020, our agency partnered with community representatives to form the Racial Justice Work Group. The Work Group was tasked with identifying areas where the implementation of new initiatives or processes could address issues of racial disparity as part of the agency's mission to build a safer community while promoting justice and fairness for everyone.

The Work Group identified a subset of cases involving bicycle stops with standalone criminal charges of resisting a law enforcement officer without violence or the threat of violence. A standalone criminal charge means simply that it is the only charge resulting from the stop law enforcement conducted. An analysis of these misdemeanor level cases found that, as ~~suspected~~ posited by the Work Group, Black defendants continue to be overrepresented in these types of cases when compared with all misdemeanors in general. 75% of the resisting without violence cases referred to our office in which a bicycle stop was the reason for the initial contact involved Black defendants.[2]

~~Because b~~In many instances, bicycle stops have ~~no~~ limited crime reduction benefit and disproportionally burden Black bicycle riders. Additionally, cases arising out of bicycle stops frequently involve 4th Amendment challenges that prevent successful prosecution. To address inconsistencies in how these cases are prosecuted and resolved, and to ensure that prosecutorial resources are focused on crimes that pose a demonstrable public safety threat, it is necessary to ~~change~~ memorialize our prosecution policy concerning charges arising out of bicycle stops.

<u>Filing Policy Regarding Bicycle Stops</u>

For any case referred to our office arising out of a bicycle stop, there is a presumption that our office will not prosecute the defendant. This policy is limited to our determination that a presumption exists that prosecuting charges arising from a bicycle stop does not further public safety and has a disparate impact on Black bicyclists. It is not a finding or determination concerning the reasonable

---

[1] Ridgeway, Greg, Ojmarrh Mitchell, Sheila Gunderman, Cedric Alexander, and James Letten. 2016. *An Examination of Racial Disparities in Bicycle Stops and Citations Made by the Tampa Police Department: A Technical Assistance Report.* Washington, DC: Office of Community Oriented Policing Services.
[2] This review was limited to the 2019 data as it was the most recent year that included a full year of data without being skewed by the impact of the pandemic. The most common reason for a stop/contact was the execution of a warrant on the defendant, follow by a criminal or crash investigation, an investigation of or warrant for another being impeded, or a bicycle stop.

*Draft 11/8/2021*

Weisman000103
**PEX 93.002**

suspicion or probable cause necessary to conduct a bicycle stop, and we continue to recognize that bicycle stops are a legal and legitimate law enforcement tool under the appropriate circumstances.

If, based on the facts and circumstances of the case, the public safety needs of the community outweigh the presumption to no file the case, the charge may be filed with the approval of a supervisor. The reason for the exception and the supervisor's approval will be documented in the file. This exception should be reserved for ~~serious~~ cases that pose a direct threat to public safety, such as where an individual has suffered physical harm or where a firearm is involved.

This policy does not apply to cases which arose out of a separate criminal episode~~,~~ but where the defendant was initially ~~taken into custody while~~ ~~riding a bicycle~~stopped for a non-criminal violation in connection with riding a bicycle. [WAH1]

*Draft 11/8/2021*

Weisman000104
**PEX 93.003**