**Muratti, Renee**

| | |
|---|---|
| **From:** | Muratti, Renee |
| **Sent:** | Tuesday, January 26, 2021 12:27 PM |
| **To:** | Warren, Andrew H.; Hindman, Kimberly P. |
| **Subject:** | Following up on reducing county caseload discussion |
| **Attachments:** | Challenge topic_Decriminalizing poverty in the context of DWLSR charges.docx; DL Reinstatement Checklist.pdf |

After our meeting, you asked if we had any numbers to associate with these proposals.  There were also so many multiple parts, I would like to confirm that we are on the same page.

My understanding from the meeting was that the yellow highlighted charges were likely to be approved to nol pros in response to COVID if the defendant was not on probation and did not have other pending charges not included on the list. (Currently about 500 cases open with these charges

DWLS (financial responsibility) under 324.201- OK to nol pros based on decriminalizing poverty (unrelated to COVID)- rarely charged

The following charges we would continue prosecuting assuming that we had sufficient evidence to prove the cases:
    Loitering and prowling
    Affray
    Panhandling
    Trespass at business locations

Shoplifting less than a threshold dollar amount or with recovered property- we discussed the dynamics of these charges, but not sure where we landed

FWC violations- this was more long term, but I thought you were ok with me approaching FWC and HCSO about possibly getting them on board with APAD.

DWLS- attached is the draft of ideas from the internal work group that are really directed at long term policy approaches.  We haven't discussed these, but there are a couple of ideas that could be implemented more quickly as a response to COVID caseloads.

    Screen DWLS for dismissal:  Do not prosecute if falls in the category of a suspension penalizing poverty.  This would mean entering a nol pros if current suspensions were only for child support, failure to pay, failure to appear on an infraction, or HTO based upon DWLS(not DUI), or a combination of these items.  I haven't worked out who will screen all of these or what disqualifiers we would include(prior record?  Other pending cases?  Crashes?).  This would likely greatly reduce the number of cases the are dismissed for getting a drivers license- I would suggest adding a new disposition reason to track this number (maybe something like "decriminalizing poverty initiative").  I also attached a screening checklist that I used for past DL reinstatement events.

NVDL- dismiss if unable to obtain license due to immigration issues

Battery (non-DV):  Definitely long term- you were fine with me researching restorative justice programs and we can review if I have a proposal.

I think this is all of the major areas discussed.

1

4:22-cv-302-RH-MAF
**PLAINTIFF'S EX**
**101**

Weisman000237
PEX 101.001

**From:** Muratti, Renee
**Sent:** Monday, January 11, 2021 6:38 PM
**To:** Warren, Andrew H. <Warren_A@SAO13th.com>; Hindman, Kimberly P. <Hindman_K@sao13th.com>
**Subject:** some numbers from our earlier discussion...

Snapshot for reference, so number aren't exact....

Total pending misdemeanor and traffic cases on today's date: 11084 cases

Total currently scheduled for jury trial: 1281 cases

Unregistered motor vehicle     266
Unlawful use of temp tag       1
Attaching tag not assigned     80
Non-resident restriction       10
Expired DL                     64
Permitting unauth. Driver      6
Motorcycle endorsement/lic     51
Failure to notify DMV new add  10
Disorderly conduct/intox       13


NVDL                    1036
DWLS                    1554


And VOPs are 12% of our county court warrant purges

2

Weisman000238
PEX 101.002

| Challenge topic: Decriminalizing poverty in the context of DWLS/R charges |
| --- |

**Goal:** Increase traffic safety by holding bad drivers accountable instead of penalizing individuals for financial or other non-traffic safety reasons

**Summary of current policy:** If an individual is able to reinstate their driver license, the State enters a nolle prosequi (excludes DWLS cases based on traffic safety such as DUI)

**Issue:** Are there individuals who we would be willing to dismiss their DWLS case if they got their driver license, but they are unable to get a driver license because of financial reasons or other non-traffic safety reasons?

- Practical consideration: Most of these ideas involve some level of screening. The more complicated or extensive the driving record, the more difficult and time consuming the screening process is. These charges are traditionally handled by the least experienced ASAs. Developing a consistent screening process early in the court process will reduce the impact of these cases on the court system and the individual, as well as insure fair application. Thought should be given to who can conduct this screening and whether this can be a support staff function.
- Ideally, this screening would occur prior to the case landing on the prosecuting attorney's desk. A review of the Driver History should reveal if a suspension or non-licensure is due financial punishment, immigration status, drug use, or driving safety issues. If driving safety is the basis for suspension/revocation, the types of charges and age of tickets should be considered before being moving forward with prosecution.

<u>Child support suspensions:</u> Expand current policy to include child support suspension cases as they are not traffic safety related. The financial obligation is due to the Department of Revenue, not directly to the child or custodial parent. As part of this process, the defendant should also be provided with educational materials about <u>how to reinstate a child support suspension through a written agreement.</u>

    Practical consideration: When providing educational materials to a defendant, our office needs to avoid providing legal advice. But, without noticing the defendant that their license is still suspended and guidance on how to work toward reinstating the license, we would be perpetuating a cycle of re-arrests. Should our position be that we are only concerned with the pending criminal matter or should we also be looking at providing information that will possibly reduce future contacts with the system?

<u>Drug-related suspensions:</u> Reconsider whether suspensions based upon drug suspensions are traffic safety- related and whether they should be prosecuted (driving or non-driving related offenses). Should the nature of the substance (marijuana v. other drugs) be considered?

Weisman000239
PEX 101.003

Florida is out of step nationally with regard to license suspensions for drug related issues. See https://www.prisonpolicy.org/driving/FLfactsheet.pdf. Florida is one of 5 states that suspends licenses for drug convictions (Virginia has since repealed that type of suspension, along with financial suspensions: https://www.washingtonpost.com/opinions/local-opinions/virginia-finally-ends-unjust-drivers-license-suspensions/2020/06/04/3190832c-a511-11ea-bb20-ebf0921f3bbd_story.html).

Immigration issues:  Because of their legal status, there are individuals who are legally unable to get a license, but who are also not being removed from the country by federal authorities.  They may be charged with DWLS, NVDL, or expired DL. Should these cases be prosecuted at all or should we set criteria to nol pros these cases looking at traffic safety issues on their record (DUI, crashes)?

If the goal is to encourage people to come into compliance with driving regulations for purposes of safety, prosecuting those who are unable to get licenses because of immigration status does not promote this goal. Undocumented immigrants are exploited for Florida's economy (https://www.pewresearch.org/hispanic/interactives/u-s-unauthorized-immigrants-by-state/) , especially for Hillsborough county's vital strawberry industry (https://edis.ifas.ufl.edu/fe1013) . Moreover, prosecution of these seemingly "low level" crimes can cause collateral consequences for undocumented residents who try to reach citizenship.

Weisman000240
**PEX 101.004**

Financial suspensions[1]:

If license is suspended for Child Support, failure to pay, failure to appear, HTO from DWLSRs (i.e. not HTO from too many points). This should be NPed at arraignment.

> Do not differentiate between DWLS and DWLS (HTO) if the basis for the suspension is financial- failure to pay or failure to appear on an infraction or DWLS convictions based on those suspension.

> Use of a pro se docket. This is currently done in some courtrooms and is useful for those who need a little extra time to get a license. Negative is that there are still a lot of individuals who do not have the financial resources to clear up their tickets and that clearing up tickets can be complicated and expensive. If infractions are not pulled from collections, they are even more expensive. Identifying which tickets need to be addressed and which order they need to be handled in without incurring a points suspension can also be complicated.

> DL reinstatement events can be useful, but are limited in how many people can be assisted and are only held a few times of year at most. We have not yet determined how to hold one during COVID.

> Regular DL reinstatement dockets: A regularly scheduled docket that qualifying defendants can be pushed to. Would allow the court to address Hillsborough citations with the defendant. At reinstatement events, the judges pull cases from collections, lift suspensions, waive fines, and create payment plans. Participation in docket could result in a nol pros of the DWLS[2].

---

[1] Rationale:

Most suspensions are unrelated to traffic safety, penalize poverty, and disproportionately affect BIPOC. A 2019 study that finds 72% of Florida DL suspensions are financial and unrelated to driving, and that black Floridians are one and half times more likely to have there licenses suspended for financial reasons: https://finesandfeesjusticecenter.org/articles/driving-on-empty-florida-drivers-license-suspension-fines-fees/.

Here is the full report upon which the summary is based: https://finesandfeesjusticecenter.org/content/uploads/2019/11/florida-fines-fees-drivers-license-suspension-driving-on-empty.pdf

Moreover, ability to pay off tickets is tied to a job market which does not provide reasonable transportation alternatives. Here is another proposal from Prison Policy Initiative (PPI) that details in section III that the Tampa Bay's public transit only reasonably allows 16.3% of low-income employees to access their job, which creates a necessity for people to drive/be driven to work to pay off these fees: https://www.prisonpolicy.org/driving/national.html

Here is a helpful one-pager from PPI with stats for FL suspensions https://www.prisonpolicy.org/driving/FLfactsheet.pdf

[2] This application may be problematic because it holds out the criminal charge as a stick for people who we believe may be able to get their license. For example, someone who has 2 outstanding tickets may be deemed

Pro bono assistance program: Develop a partnership with a law school or BALS that would provide advice and assistance to individuals who are not able to navigate a license reinstatement alone.

DHSMV reinstatement fees: Currently, there is no legal mechanism to waive the DHSMV reinstatement fees. Can we push for a change to the law? Can we find a local agency to partner with that can raise funds to assist drivers with license reinstatement fees?

❷ Practical consideration: How much is too much? Do we set other disqualifiers as a matter of policy? Crashes? Too many tickets? Certain prior records?

Considerations for "Bad driving" records

Records littered with "red light camera" tickets should not be considered "bad driving." These are civil citations applied to the owner of a vehicle, not necessarily the person driving. Also, the argument that red light cameras make roads safer has been called into question: https://www.scientificamerican.com/article/red-light-cameras-may-not-make-streets-safer/.

Age of infractions -- If someone has had a clean record for a certain number of years, but has not had their license reinstated (because it was revoked or there are outstanding financial obligations), then it should be NP'ed as a financial suspension. This should be a brightline rule for sake of application, even if the number seems arbitrary. For a starting point, I suggest 10 years, as this is when enhanced punishments for subsequent DUIs are avoided. Not that those are necessarily related, but just trying to make it seem not entirely arbitrary.

---

by our office to be "eligible" for reinstatement, whereas someone who has 7 tickets, all for DWLSR (e.g. 20-CT-12257) and failure to pay on those would end up with an NP and no new court dates. For uniformity and equity, any financial suspension should be sent to a docket where their tickets can be pulled from collections and then provided a community resource to help reinstate their license, while not having to continually appear at court.

If concerns exist about people continuing to drive on a suspended license, that concern should only extend to whether or not that person is a danger to the community. Moreover, defendants are encouraged to reinstate their licenses as they can still be arrested for new violations.

Weisman000242
PEX 101.006

**Driver's License Reinstatement Event SAO Screening Checklist**

1. Review driving record & determine reason(s) for *current* suspension(s)

    a. Is the suspension for any of the following reasons:
        - ☐  Child support
        - ☐  HTO
        - ☐  DUI
        - ☐  Drug conviction
        - ☐  Felony-related traffic offense
        - ☐  Permanent or medical revocation
        - ☐  Tickets outside of Hillsborough County



    > If yes to any, individual is disqualified- attach driving record to this sheet and place in disqualified folder

2. Check for open cases or active probations or warrants- are there any?

    ☐  No                    ☐  Yes ⟹ Attach driving record and CMS printout to this sheet, date and initial, and provide to supervisor for review.

3. Check prior record- any prior felony charges?

    ☐  No ⟹ Individual qualifies.  Attach driving record to this sheet, date and initial, and place in approved folder.

    ☐  Yes ⟹ Attach driving record and CMS printout to this sheet, date and initial, and provide to supervisor for review.